Law Office of
HERNANDEZ & HAMILTON, PC
The Johnson House Offices
455 West Paseo Redondo
Tucson, Arizona 85701-8254
CLAY HERNANDEZ (AZ 010917)
Email: Clay@Hernandez-Hamilton.com
Telephone: (520) 882-8823
Fax: (520) 882-8414
Attorney for Defendant/Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

          Plaintiff/Respondent,

          v.

Howard Wesley Cotterman,

          Defendant/Petitioner.

Case No: 4:16-CV-00667-TUC-RCC-1

**PETITIONER'S AMENDED MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

## INTRODUCTION

Howard Cotterman's Motion raises seven claims, which encompass claims of ineffective assistance of trial and appellate counsel in violation of his Sixth Amendment rights, and claims of plain error arising from the waiver of his right to a jury trial, his right to testify, and from his sentencing proceedings. He will demonstrate that (1) his trial and appellate counsel's representation fell below an objective standard of reasonableness and (2) he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984) (to establish ineffective assistance of counsel, defendant must show deficient performance and resulting prejudice). To establish deficient performance, he will show counsel's errors were unreasonable "under prevailing professional norms." *Id.* at 688.

Cotterman must also show that trial and appellate counsel's performances were so defective that it undermined the confidence in the outcome of his trial and appeal. *Id.* at 694. Though a defendant usually has to demonstrate some form of prejudice to prove a *Strickland* claim, the kind of prejudice that must be proved depends on the nature of the ineffective assistance claim, and is "not meant to be applied in a 'mechanical' fashion." *Weaver v. Massachusetts*, ___ U.S. ___, ____, 137 S. Ct. 1899, 1911 (2017), *quoting Strickland*, 466 U.S. at 696; *Lee v. United States*, ___ U.S. ___, ___, 137 S. Ct. 1958, 1965 (2017) (prejudice inquiry differs in cases where attorney error occurred "***during*** the course of a legal proceeding"—e.g., counsel's failure to raise objection at trial—as opposed to cases where attorney error ***caused*** defendant to forfeit entire proceeding) (emphasis added).

The Supreme Court has interpreted *Strickland*'s traditional prejudice requirement far more broadly in certain contexts, particularly where, as here, an unprofessional error resulted in the loss of an entire proceeding or constitutionally guaranteed procedure. *See Lee*, 137 S. Ct. at 1965. In some limited circumstances, the Supreme Court has deemed counsel's deficient performance so likely to prejudice the accused that prejudice is presumed. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (presuming prejudice where accused denied counsel at critical stage in proceedings or where counsel failed to subject prosecution to meaningful adversarial testing); *see also Toomey v. Bunnell*, 898 F.2d 741, 744 n.2 (9th Cir. 1990) (*Cronic* presumes prejudice where there was breakdown in adversarial process).

In the instant case, Cotterman will show that his trial and appellate counsel's performances were so constitutionally deficient and prejudicial that they "undermine[d]

the outcome[s]" of his trial and appeal. *Strickland*, 466 U.S. at 694; *Evitts v. Lucey*, 469 U.S. 387, 393, 396 (1985) (applying *Strickland* to evaluate ineffective assistance of appellate counsel); *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (defendant may bring *Strickland* claim based on appellate counsel's failure to raise particular claim on appeal).

Additionally, Cotterman contends the district court committed plain error with respect to explaining and accepting his waivers of his right to a jury trial and to testify, and in failing to credit him with a sentencing adjustment for acceptance of responsibility. *United States v. Olano*, 507 U.S. 725, 732-37 (1993). To prove plain error, Cotterman must show (1) an error, (2) that is plain, (3) and that affected his substantial rights. *Id.*; *see also Bearchild v. Cobban*, 947 F.3d 1130, 1153 (9th Cir. 2020) (if all three conditions are met, courts should exercise discretion and correct plain error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'"), *quoting C.B. v. City of Sonora*, 769 F.3d 1005, 1016 (9th Cir. 2014) (en banc).

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

On April 6, 2007, Cotterman and his wife crossed the Mexican-United States border through the Lukeville, Arizona port of entry ("POE") after an extended vacation in Mexico. Their vehicle was searched and several of their possessions were seized at the border. Their laptops and a digital camera were then transported to Tucson, Arizona to be forensically searched. *See generally United States v. Cotterman*, 709 F.3d 952, 957-59 (2013). Before Cotterman was notified of the search results, he departed to Australia.

On June 27, 2007, Cotterman was charged by federal indictment with two counts of production of child pornography (counts 1 and 2), and one count each of transportation of

child pornography (count 3), receipt of child pornography (count 4), possession of child pornography (count 5), importation of obscene material (count 6), transportation of obscene material (count 7), and flight to avoid prosecution (count 8). (Ex. A, Indictment).[1] The government also filed a notice of prior conviction alleging that his 1992 California convictions exposed him to mandatory life imprisonment and increased penalties on all counts, pursuant to 18 U.S.C. § 3559(e). (Ex. Q, Notice of Prior Convictions). Trial counsel did not object to the notice or file any pretrial motion to dismiss the prior convictions. Had trial counsel adequately researched the issue, he would have learned that the 1992 prior convictions could not be used to enhance Cotterman's sentence.

Cotterman was arrested in Australia on September 8, 2007. He waived extradition and returned to Tucson, Arizona soon thereafter. He retained attorney Skip Donau ("trial counsel") to represent him throughout the case in the District Court for the District of Arizona (CR07-01207-TUC-RCC (CRP)). On April 21, 2008, trial counsel filed a perfunctory notice of motions, which included a number of anticipated pre-trial motions, but he only followed through with filing a motion to suppress. (Ex. B, Notice of Motions).

Prior to filing the motion to suppress, trial counsel engaged in plea negotiations with Assistant United States Attorney (AUSA), Judson Mihok. During those negotiations, the AUSA made a 12- to 20-year plea offer; however, Cotterman maintains that trial counsel never conveyed that offer to him. (Ex. D, Letter from Mihok to Donau, 6/27/08; Ex. E,

---

[1]Cotterman has attached all of the exhibits that he relies upon in support of his claims to his Second Amended Motion. All of the exhibits have already been entered into the record, and are only included as attachments to this Motion for clarity purposes.

Cotterman Affidavit, ¶ 3).  Had Cotterman known of the offer, he would have accepted it. (Ex. E, ¶¶ 2-3).  Instead, trial counsel unilaterally dismissed the offer because he viewed it as tantamount to a life sentence, given Cotterman's age, and counteroffered to plead him to 90 months. (*Id.* ¶ 3; Ex. F, Letter from Donau to Mihok, 7/2/08).  Without Cotterman's knowledge or permission, trial counsel told the AUSA that 90 months was his final offer and that, if it was not accepted, "[t]here will be no other offers to dispose of this matter prior to [the] motions hearing."  (Ex. E, ¶ 2-3; Ex. F).

Trial counsel moved to suppress the evidence gathered from Cotterman's laptop. The motion centered on whether the seizure and subsequent search of the computer fell under the border search exception and, to a much lesser extent, on whether there was reasonable suspicion to seize and search the computer.  The magistrate granted the motion after concluding that the seizure and search did not fall under the border search exception and was not supported by reasonable suspicion.  (Ex. C, Magistrate's Report and Recommendation, 9/12/08).  This Court adopted the magistrate's ruling, and the government filed a notice of interlocutory appeal.

Cotterman hired new counsel for the interlocutory appeal only.  (Ex. G, Attorney Kirchner's substitution of counsel, 8/24/09).  In the year between the magistrate's ruling and the substitution, trial counsel did nothing to further plea negotiations and never inquired into whether the government would be willing to offer a more favorable plea agreement in light of Cotterman's more favorable bargaining position.  Ultimately, the Ninth Circuit, in a final *en banc* opinion, determined there was reasonable suspicion to

seize and search Cotterman's computer, and remanded the case for further proceedings. *Cotterman*, 709 F.3d at 968, 970. (<u>Ex. H</u>, 9th Cir. Mandate).

On remand, trial counsel seemed surprised that he was expected to represent Cotterman for the remainder of the trial proceedings. Trial counsel only visited him sporadically, and Cotterman wrote him numerous letters inquiring about the status of his case. Once the motion to suppress was lost, trial counsel's attitude was that everything was a waste of time and that Cotterman's guilt was all but a foregone conclusion. Immediately before trial, trial counsel visited Cotterman several times and demanded that he sign a trial stipulation, which contained many factual and legal contentions that the government otherwise would have had to prove at trial. (<u>Ex. E</u>, ¶¶ 4, 9; <u>Ex. J</u>, Stipulation, 6/6/14). The stipulation was very harmful to Cotterman and was tantamount to an admission of guilt. Without it, the government would have had the difficult and laborious task of having to prove the contents of the eight-paged stipulation. (<u>Ex. J</u>).

Trial counsel later advised Cotterman to agree to a bench trial because he erroneously thought it was necessary to avoid the imposition of a sentencing enhancement pursuant to 18 U.S.C. § 3559(e), which, if applicable, would have resulted in a mandatory life sentence if Cotterman was convicted of Counts 1 and 2. (<u>Ex. AD</u>, Objections to PSR). Specifically, trial counsel negotiated a deal wherein Cotterman would agree to a bench trial and several damaging stipulations in exchange for the government's agreement to withdraw its notice of prior convictions. (*Id.*; <u>Ex. AC</u>, E-mail from Donau to Duryee, 6/5/14). He then convinced Cotterman to waive his right to a jury trial by incorrectly advising him that it was the only way he could avoid a mandatory life sentence. In reality,

the prior convictions were unusable as predicate offenses for a § 3559(e) enhancement.  In other words, Cotterman received no benefit in exchange for his jury trial waiver and the trial stipulations.

Cotterman's bench trial began on June 10, 2014.[2]  His jury trial waiver was invalid because it was induced by trial counsel's erroneous and ineffective advice regarding his sentencing exposure, and the Court's colloquy was insufficient to ensure his waiver was voluntary, knowing, and intelligent.  Trial counsel did not file a pretrial motion on the issues of sexually explicit conduct and engagement—which were both necessary elements of the charges in Counts 1 and 2—or a trial brief, despite having identified his only real defenses as legal ones.  The government, on the other hand, filed a comprehensive 23-page trial brief.  (Ex. K, Govt's Trial Memorandum).  Trial counsel did not make an opening statement, object to the government's late notice to introduce prior bad other acts, or move for a directed verdict, and conducted only elementary cross examinations of the government's witnesses.  Immediately after closing arguments, this Court found Cotterman guilty of counts 1, 2, 3, 5 and 6.

On September 22, 2014, Cotterman's presentence report ("PSR") was filed.  The PSR evaluated his 1992 prior convictions and determined they were not eligible predicate offenses for a sentencing enhancement under § 3559(e).  (Ex. M, PSR, 9/22/14).  That was the first time Cotterman and trial counsel learned that his prior convictions were not § 3559 predicate offenses.  Trial counsel wrote to the probation officer and informed her that while

---

[2]The government dismissed counts 4, 7, and 8 just before trial.

he "agreed with [her] characterization that the California offenses would not qualify as predicate sexual crimes," that the notice of prior convictions was withdrawn as "part of the agreement for a bench trial." (Ex. AD, ¶ 1). From the letter, it is clear that trial counsel was attempting to justify his actions with respect to the notice after the fact.

Trial counsel filed a two-and-a-half-page sentencing memorandum, which did not address the PSR's failure to recommend that Cotterman receive an adjustment for acceptance of responsibility. (Ex. L, Sentencing Memorandum; Ex. M). He also allowed Cotterman to submit a letter to the court, which clearly had not been scrutinized beforehand. At sentencing, trial counsel requested a 15-year sentence, but failed to argue acceptance of responsibility or address other mitigating factors. This Court sentenced Cotterman to 30 years on Counts 1 and 2, 20 years on Count 3, 10 years on Count 5—all ran concurrently—and 5 years on Count 6, ran consecutively to all other counts. (Ex. N, Amended Judgment).

Cotterman filed a notice of appeal on September 29, 2014, (Ex. O), and attorney Darla Mondou ("appellate counsel") was appointed to represent him on appeal. (Ex. I). Appellate counsel moved to withdraw because she disagreed with Cotterman and refused to raise legal arguments regarding sexually explicit conduct and engagement on appeal. (Ex. P, Motion to Withdraw, 5/5/15). The Ninth Circuit denied the motion to withdraw, and instructed Cotterman that he could represent himself or hire another attorney. Appellate counsel continued to represent Cotterman and filed a two-issue brief over his objections. She failed to raise plain error arguments based on Cotterman's invalid jury

waiver and his right to testify.  Appellate counsel never looked into those issues or learned that Cotterman wanted to testify at his trial.  (Ex. E, ¶¶ 6-8).

The Ninth Circuit affirmed the district court proceedings on October 19, 2015, (Ex. R), and Cotterman filed a timely petition pursuant to 28 U.S.C. § 2555.  (Doc. 1).  Cotterman now files this second amended petition to remove reference to several exhibits that were stricken from the record by this Court.  He also adds reference to the responses to his Requests for Admission and Interrogatories, which were provided by trial and appellate counsel.  (*See* Ex. W, Appellate Counsel's Responses to RAs; Ex. X, Trial Counsel's Responses to RAs and Interrogatories).  It also contains edits for clarity and brevity, but does not raise any new claims or arguments.  *Cf.* Fed. R. Civ. P. 15; *Anthony v. Cambra*, 236 F.3d 568, 576-77 (9th Cir. 2000) (applying Rule 15 to § 2255 motion).

## CLAIM I

**COTTERMAN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL INEFFECTIVELY REPRESENTED HIM DURING THE PLEA-BARGAINING STAGE.**

### *Claim-specific facts*

On April 10, 2008, the AUSA sent trial counsel a letter asking him what Cotterman "would be willing to plead to."  (Ex. S, Letter from Mihok to Donau, 4/10/08).  Trial counsel responded:

> Mr. Cotterman is willing to plead guilty to count 7, transportation of obscene materials, in violation of Title 18, U.S.C. § 1462.  The maximum sentence on such charge is ten years.  We would suggest an advisory guideline range between 63 and 78 months.

(Ex. T, Letter from Donau to Mihok, 4/23/08). The AUSA rejected trial counsel's offer, but counteroffered with the following proposal:

> I would propose a plea to a Possession of Child Pornography count both here and in the Eastern District of California. . . . [T]he defendant's sentence would be a minimum of twelve years of incarceration and a maximum of somewhere near the statutory maximum, which is twenty years. The advisory USSG for the Possession counts would likely be in the fourteen to seventeen year range, however, that is not binding on the Court, myself or the Probation Department.

(Ex. D). The AUSA had tentative approval to make this offer, and asked trial counsel to "[p]lease advise as soon as possible if your client is interested in pleading guilty as outlined and accepting those terms." (*Id.*).

On July 2, 2008, trial counsel sent the AUSA another counteroffer:

> I have spoken with my client and in a last effort to resolve this matter prior to motions hearing, my client would agree to a stipulated sentence of 90 months. There would be no guideline range.

(Ex. F). The AUSA rejected the 90 months offer, pointing out that it was considerably less than the mandatory minimum of the most readily provable charges (15 years). (Ex. U, E-mail from Mihok to Donau, 7/7/08).

Throughout plea negotiations, the AUSA and trial counsel incorrectly believed Cotterman's 1992 prior convictions were viable predicate felonies to enhance his sentence under 18 U.S.C. § 3559(e) and, as a result, erroneously thought his overall exposure was mandatory life in the event he was convicted. Had trial counsel researched the issue, he would have discovered that they were not, and, had he filed a pretrial motion to dismiss the § 3559(e) allegation or requested a guideline exposure, he would have eliminated the prior

conviction, and Cotterman would have been in a better bargaining position to secure a more favorable plea.

On May 14, 2008, trial counsel sent Cotterman a letter regarding his erroneous understanding of his sentencing exposure:

> There are very few things that are absolute. One, if you were convicted of either charge in Arizona or California, you will do a life sentence. I say this recognizing that a fifteen year sentence is in all probability for a person your age and in your health a life sentence. That would be minimum you could expect to receive under the law if convicted. <u>If you are convicted of certain charges, it is natural life.</u>

(Ex. V, Letter from Donau to Cotterman, 5/14/08) (emphasis added). The correspondence between trial counsel and the AUSA supports Cotterman's claim that the parties were negotiating under the erroneous belief that his prior convictions were predicate felonies for a § 3559(e) enhancement. (Ex. Q, Gov't.'s Notice of Prior Convictions). Obviously, trial counsel's error affected the plea-bargaining process. Trial counsel had to negotiate from a potential non-existent mandatory life sentence to a palatable one for Cotterman. If he had started from the actual penalties Cotterman would have faced if convicted, he likely would have obtained a better initial plea offer from the government.

Relatedly, trial counsel's opinion that a 15-year sentence amounted to a life sentence was simply that—his opinion. His determination that Cotterman's life expectancy was then 72-74 years was completely inaccurate and belied by all statistics and mortality tables. (Ex. T). Once a person lives to 68, which was Cotterman's age at the time of the discussions, he is expected to live for an additional 17.4 years, for a total life expectancy of 84.7 years. Trial counsel never explained the real potential sentences to Cotterman.

Cotterman never saw the AUSA's letter offering a 12- to 20-year sentence, and trial counsel never conveyed its contents to him. (Ex. D; Ex. E, ¶¶ 2-3). Had trial counsel conveyed the offer, Cotterman would have accepted it and hoped to receive a 12-year sentence. *Missouri v. Frye*, 566 U.S. 134 (2012) (trial counsel ineffective in failing to convey plea offer to defendant). (Ex. E, ¶¶ 2-3).

Furthermore, Cotterman had no knowledge that trial counsel told the AUSA he would agree to a stipulated sentence of 90 months' imprisonment, or that he said "my client categorically rejects the proposed disposition" of 12- to 20-years. (Ex. F). Trial counsel's rejection of that offer was done unilaterally, without Cotterman's consultation or consent. (Ex. E, ¶¶ 2-3.) Nor did Cotterman tell trial counsel that he would not accept any plea requiring more than 90 months' imprisonment, or that he would not engage in further negotiations if that offer was not accepted. (*Id.*; Ex. F). He wanted plea negotiations to continue, and did not instruct trial counsel to cease further negotiations. (Ex. E, ¶ 3.)

Trial counsel now claims he informed Cotterman of the 12- to 20-year plea offer, making this issue ripe for an evidentiary hearing. *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (standard for granting evidentiary hearing in § 2255 proceeding entails assuming truth of petitioner's factual allegations). (Ex. X, Resp. to RA #5). Trial counsel admits that prior to reviewing Cotterman's PSR, he initially believed his priors qualified as a predicate felony under § 3359(e), but denies that he believed withdrawal of the Notice of Prior Conviction was necessary to avoid a mandatory life sentence on Counts 1 and 2. (*Id.* #1, 3). He also has "no recollection" as to what efforts, if any, he made to "determine whether the 1992 priors qualified as predicate offenses, and his file does not reflect any

research or memo.[3]  (*Id.* at Resp. to Interrogatory #2).  But trial counsel's correspondence with Cotterman, the AUSA, and the PSR writer all demonstrate that he *did* believe Cotterman was facing mandatory "natural life" because of his prior convictions.  (Exs. V, AC, AD).

Nor did trial counsel attempt to negotiate a plea after he won the motion to suppress and was in a favorable bargaining position.  According to trial counsel, "[u]pon the government's appeal to the Ninth Circuit, the case was taken over by Nash and Kir[]chner," and he was "no longer counsel of record until the Ninth Circuit overturned the suppression." (Ex. X, Resp. to RA #18).  That was the most opportune time to negotiate a better plea on Cotterman's behalf, particularly given the novelty of the issue presented on appeal.[4]  Trial counsel was ineffective in failing to use his bargaining power and the uncertainty of the outcome of the appeal to secure a better plea agreement.  Given the risk to both sides on appeal and Cotterman's weighty sentencing exposure, it would have been

---

[3]Trial counsel complains that the file that was provided to him "did not contain nearly [his] entire file," but counsel undersigned provided trial counsel with the entirety of his file that is in counsel undersigned's possession. (Ex. X, Resp. to Int. #1.). Tellingly, trial counsel does not indicate any specific documents he believes are missing.

[4]The issue was one of first impression in the Ninth Circuit, and the case relied upon by trial counsel—*United States v. Arnold*, 434 F.Supp.2d 999 (C.D. Call. 2006)—had recently been reversed.  523 F.3d 941 (9th Cir. 2008), *amended and superseded on denial of rehearing by* 533 F.3d 1003 (9th Cir. 2008).  This made the government's appeal more likely to succeed; indeed, the original Ninth Circuit panel concluded the government interlocutory appeal was well taken, and held that it did not need reasonable suspicion to seize a computer at the border.  *See United States v. Cotterman*, 637 F.3d 1068 (9th Cir. 2011), *rehearing en banc granted by* 673 F.3d 1206 (9th Cir. 2012), *reversed by* 709 F.3d 952 (9th Cir. 2013) (holding extended border search doctrine did not apply to seizure and forensic examination of laptop, but concluding agents possessed reasonable suspicion).

wise to try to secure a favorable plea, rather than run the risk of an appellate court reversal resulting in a worse plea offer or no offer at all.

Furthermore, trial counsel's suggestion that he did not have time to negotiate a plea because "the case was taken over" by Kirchner once the government filed its interlocutory appeal is belied by the record. The motion to suppress was granted by the magistrate on September 12, 2008 and was adopted by the district court on February 23, 2009. The government filed its notice of intention to file an interlocutory appeal on March 19, 2009, and Kirchner did not file a substitution of counsel until August 24, 2009. Trial counsel was actively representing Cotterman on a motion to release as late as August 5, 2009, giving him ample time to negotiate a plea before he was no longer counsel of record.

Trial counsel's failure to (1) research § 3559(e)'s applicability to Cotterman's prior, (2) communicate the 12- to 20-year plea offer to Cotterman, and (3) continue the plea dialogue before or after the motion to suppress constituted ineffective assistance of counsel.

 1. *Failure to research 18 U.S.C. § 3559(e)'s applicability to Cotterman's priors*

The Sixth Amendment right to effective assistance of counsel applies to all critical stages of the proceedings, including plea bargaining. *See Montejo v. Louisiana*, 556 U.S. 778, 786-88 (2009); *United States v. Ant*, 882 F.2d 1389 (9th Cir. 1989); *Leonti*, 326 F.3d at 1117. It is well settled that the right to effective assistance of counsel envisions trial counsel playing a critical role in the adversarial system to produce a just and fair result. *Strickland*, 446 U.S. 658. Had trial counsel rendered effective assistance during the plea negotiation process, there is a reasonable probability that Cotterman would have obtained a more favorable plea.

Trial counsel's failure to investigate and discover that Cotterman's prior conviction was not a predicate offense for a § 3559(e) enhancement constituted ineffective assistance of counsel because it substantially weakened his bargaining position throughout the entire plea negotiation process, since the parties were operating on the incorrect assumption that he faced mandatory life if convicted. *Johnson v. Uribe*, 700 F.3d 413, 425-27 (9th Cir. 2012) (trial counsel ineffective in failing to identify and correct inaccurate sentencing enhancements), *amending and superseding*, 682 F.3d 1238 (9th Cir. 2012); *see also Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003) (failure to reasonably investigate satisfies *Strickland* performance prong). Had he investigated § 3559(e)'s applicability, he would have discovered that Cotterman's convictions were not predicate offenses.

A "prior sex conviction" only qualifies as a predicate offense under § 3559(e) if the underlying conduct "would be" a qualifying federal sex offense. *United States v. Gallenardo*, 579 F.3d 1076 (9th Cir. 2009); *see also* § 3359(e)(2)(A),(B) (defining "state sex offense" as "offense under state law that is punishable by more than a year in prison and consists of conduct that would be a federal sex offense" but for jurisdictional restraints, and listing offenses that qualify as "federal sex offenses" for sentence enhancement purposes). In 1992, Cotterman was convicted of (1) Lewd and Lascivious Conduct with a Child, in violation of Cal. Penal Code § 288(A) (West 1989); (2) Annoy or Molest a Child, in violation of Cal. Penal Code § 647.6 (West 1987), and (3) Use of a Minor in Sexual Conduct, in violation of Cal. Penal Code § 311.4(c).[5] None of these offenses qualified as

_____

[5] He was also convicted of other offenses, but they were not sex offenses and, thus, are not included in this analysis.

federal sex offenses under a strict categorical approach. *See* 1987 Cal. Stat., ch. 1394, §§ 2, 5; 1989 Cal. Stat., ch. 1402, § 3. (<u>Ex. M</u>, ¶¶ 11, 43.)

His Annoy or Molest a Child convictions are not predicate offenses because they were not punishable by more than a year in prison under California law. *See* Cal. Penal Code § 647.6 (West 1987) (every person who annoys or molests any child under age of 18 is punishable by imprisonment in county jail "for not exceeding one year"); *see also* § 3559(e)(3) (sexual activity that would not be punishable by more than one year in prison under law of state in which it occurred is nonqualifying felony). His lewd and lascivious conduct and use of a minor in sexual conduct convictions were punishable for more than a year, but do not qualify as federal sex offenses under a strict categorical approach. *Compare* 1987 Cal. Stat., ch. 1394, § 5, *and* 1989 Cal. Stat., ch. 1402, § 3, *with* federal offenses enumerated in § 3552(e)(2) ("Federal sex offense" means an offense under section 1591 (relating to sex trafficking of children), 2241 (relating to aggravated sexual abuse), 2242 (relating to sexual abuse), 2244(a)(1) (relating to abusive sexual contact), 2245 (relating to sexual abuse resulting in death), 2251 (relating to sexual exploitation of children), 2251A (relating to selling or buying of children), 2422(b) (relating to coercion and enticement of a minor into prostitution), or 2423(a) (relating to transportation of minors). Thus, his convictions were not predicate offenses for a § 3359(e) enhancement.

Cotterman was prejudiced by trial counsel's error because he would have been in a much stronger bargaining position had he realized that Cotterman's prior convictions were not predicate offenses. *Johnson*, 700 F.3d at 425-27. Without the error, there is a reasonable likelihood that Cotterman would have received a more favorable plea offer. *See*

*Lafler*, 566 U.S. at 163; *Johnson*, 700 F.3d at 426-27 (trial counsel ineffective for failing to identify and correct inaccurate sentencing enhancements, which fundamentally altered bargaining positions of parties during plea negotiations).

2. *Failure to convey 12- to 20-year offer*

Plea negotiation is a critical phase of litigation. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("[W]e have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."). Trial counsel has a duty to present to a defendant any plea offer that is made and to explain its terms so the defendant can make a reasonably informed decision whether to accept or reject a plea. *Frye*, 566 U.S. at 145 (trial counsel has duty to communicate plea offers to defendant). Failure to do so constitutes ineffective assistance of counsel. *Id.* (trial counsel ineffective in failing to convey plea offer to defendant; defendant establishes prejudice by showing reasonable probability that he would have accepted offer, had it been conveyed.); *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (defendant satisfies *Strickland* prejudice prong by showing, but for counsel's deficient advice, he would have accepted plea offer).

Here, Cotterman was unaware of the 12- to 20-year plea offer and was, therefore, deprived of the ability to decide whether or not to accept or reject it. (Ex. E). Trial counsel's failure to inform him of the government's offer was unreasonable under prevailing professional norms. *See Frye*, 566 U.S. at 145, 147-48 (failure to communicate content of plea result in ineffective assistance claim); *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) (same); *see also Nunez v. Mueller*, 350 F.3d 1045, 1053 (9th

Cir. 2003) (obligation to keep defendant informed on plea bargaining process ensures ultimate authority remains with defendant to make certain fundamental decisions in his case, including "whether to plead guilty"). It also resulted in prejudice because, had the offer been conveyed and explained, Cotterman would have accepted it and received a far more favorable sentence than the 35-year sentence that was imposed. *Lafler*, 566 U.S. at 168. (Ex. E, ¶ 3). And given that the offer was within the sentencing range for the proposed possession charge, and was not much more lenient than his sentencing exposure if he lost at trial, there is a reasonable likelihood that the district court would have accepted the plea. *Frye*, 566 U.S. at 148-49. (Ex. D).

3. *Abandonment of plea negotiations*

Trial counsel also abandoned the plea-bargaining process when he did not negotiate with the AUSA during the eleven months post-motion to suppress, which was the most ideal time to negotiate a plea. He certainly could have obtained a better plea after he prevailed on the motion to suppress, but decided he had won and did not open further negotiations—a clear violation of his duty to represent Cotterman throughout the entire plea-bargaining process. The decision of whether to plead or proceed to a trial is ordinarily the most important decision in any criminal case. Trial counsel's refusal to continue negotiations after winning the motion to suppress was a total abandonment of the process, and constituted ineffective assistance of counsel.

*Requested Relief*

Trial counsel's significant errors during the plea negotiation process constituted prejudicial, ineffective assistance of counsel. *See Lafler*, 566 U.S. at 163-64 (when plea is

lost or rejected because of ineffective assistance of counsel, petitioner demonstrates prejudice by showing subsequent trial resulted in conviction of more serious charges or more severe sentence). As a form of relief, Cotterman now asks that the government's 12- to 20-year plea offer be reinstated. *See id.*; *see also Blaylock*, 20 F.3d at 1468-69 (remedy for ineffective assistance during plea negotiations includes requiring government to reinstate original plea offer). At a minimum, he respectfully requests an evidentiary hearing to prove certain factual allegations that would entitle him to habeas relief.[6] *See Blaylock*, 20 F.3d at 1465 (denial of evidentiary hearing an abuse of discretion).

## CLAIM II

**COTTERMAN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO PROPERLY ADVISE HIM OF HIS RIGHT TO A JURY TRIAL OR EXPLAIN THE RISKS AND BENEFITS OF A BENCH TRIAL. APPELLATE COUNSEL WAS SIMILARLY INEFFECTIVE FOR FAILING TO CHALLENGE AS PLAIN ERROR ON APPEAL THE ADEQUACY OF HIS JURY TRIAL WAIVER.**

### *Relevant Factual Background*

Trial counsel's mistaken belief that Cotterman was facing mandatory life also affected the advice he gave Cotterman with respect to a number of other critical decisions,

---

[6]Cotterman would provide testimony at the evidentiary hearing in support of all of his claims, particularly with respect to his conversations with trial counsel regarding plea negotiations, the bench trial, whether or not he would testify, and the stipulations. His testimony is especially critical in light of trial and appellate counsel's recent responses to his requests for admissions and interrogatories, many of which differ from their informal interviews, which have been stricken from the record. Alternatively, should this Court be inclined to deny an evidentiary hearing, Cotterman asks that he first be permitted to expand the record to provide an updated affidavit and additional materials to further controvert trial and appellate counsel's recent responses, and to further support his claims.

including whether to waive his right to a jury trial, and whether to agree to the proposed trial stipulations. Trial counsel decided himself that the case would be tried before the court, and made it very clear to Cotterman that it would never be tried to a jury. (Ex. E, ¶¶ 4-5). Before this Court had even ruled on the motion to suppress, trial counsel wrote a letter to the AUSA expressing his feelings about this issue:

> I do not believe it is in anyone's best interest to have a full blown jury trial on this matter… It is our intent, if we lose, to preserve the appeal. I suggest that we do so by trying the case on stipulated facts before the judge assigned to the case, or trying the case without a jury to the judge. It does not matter to me particularly which method is utilized.

(Ex. Z, Letter from Donau to Mihok, 9/8/08). That letter was in response to the AUSA's letter, wherein he stated:

> I know that you have mentioned that it is not your intention to litigate this matter beyond the suppression issue. In fact, I recall you mentioning earlier that the matter would be resolved either by way of a stipulated facts trial or bench trial…more recently, you guaranteed Judge Pyle that there would be no trial in this case but with no proffered method for resolving the case.

(Ex. AA, Letter from Mihok to Donau, 9/3/08). On January 15, 2009, trial counsel wrote to the AUSA and reiterated that if the motion to suppress was lost, that the defense would agree to a "stipulated facts trial or some other similar agreement." (Ex. AB, Letter from Donau to Duryee, 1/15/09). Trial counsel then proposed that the parties stipulate that the images on the computer were of Cotterman's granddaughter, that his hand was in some of the pictures, and that, "in doing so, ownership, possession and identity are established which should be all that is necessary for a conviction." (Id.) (emphasis added).

Cotterman made multiple inquiries of trial counsel as to whether the trial should be a bench or a jury trial. (Ex. E, ¶ 4). He was reluctant to submit to a bench trial, as he had

a bad experience in his previous case when his attorney requested a bench trial and he was found guilty and sentenced to prison. (*Id.*; Ex. X, Resp. to RA #10). However, trial counsel remained steadfast that his case would be tried by bench, stating that "a jury trial would be a circus." (*Id.*)

Shortly before trial, trial counsel negotiated a "deal" wherein Cotterman would agree to a bench trial and a number of damaging stipulations in exchange for the government's agreement to withdraw its notice of prior convictions. (Ex. AD). He sent the AUSA an email expressing his fear that Cotterman might "demand a complete jury trial," which he described as "a waste of your time and my time," unless the mandatory life sentence was off the table. (Ex. AC, E-mail from Donau to Duryee, 6/5/14). He wrote:

> I am seeing Cotterman at 8:30 a.m. tomorrow morning. I'm very concerned that the mandatory life sentence will push him over the edge and demand a complete jury trial, which is a waste of your time and my time. Given the fact he is in his 70s, you have more than enough sentence options to put him away for the rest of his life without the enhancement. I suggest you withdraw the enhancement and we proceed as planned.

(*Id.*). It is obvious from this email that trial counsel believed that by taking a bench trial, he was convincing the AUSA to drop the prior convictions as predicate felonies for enhancement. Of course, Cotterman received no actual benefit from this arrangement, since his priors could not be used in any event. Trial counsel did not want to waste his time in a "complete jury trial," so in order to avoid pushing Cotterman over the edge and causing him to "demand a complete jury trial," trial counsel convinced him to waive his right to a jury trial by erroneously advising him that it was the only way to avoid a mandatory life sentence. In other words, he misrepresented to Cotterman that he had

convinced the government to dismiss predicate felonies enhancements in exchange for his agreement to a bench trial and the stipulations, even though the priors were never viable or usable in the first place.

On June 9, 2014, trial counsel filed a notice of waiver of jury trial with the Court. He also stipulated to certain facts, including, but not limited to, that Cotterman took the photos, his prior conviction, prior bad acts, a valid chain of evidence of a destroyed hard drive and mirror images of all the incriminating evidence, and that the hard drive was inadvertently destroyed. (Ex. J, Trial Stipulations, 6/6/14). The following day, on the first day of trial, Cotterman executed a signed waiver, (Ex. Y, Jury Trial Waiver, 6/10/14), and the Court engaged in the following colloquy with respect to his waiver:

> COURT: Mr. Cotterman, I have in front of me a waiver of trial by jury form that you just signed this morning. Is that correct?
>
> DEFENDANT: That's right.
>
> COURT: You've discussed this with your attorney?
>
> DEFENDANT: Yes.
>
> COURT: He's answered all your questions about this?
>
> DEFENDANT: Yes.
>
> COURT: And in fact I think last time you were in court, he indicated that this was going to be a trial in front of the court. Not in front of a jury. Correct?
>
> DEFENDANT: That's right.
>
> COURT: He gave the indication with your assurance that that was what you wanted. Correct?
>
> DEFENDANT: That's correct.

COURT: You understand the burden of proof is the same? The only thing that's different about the trial is a jury doesn't decide it. I do. Correct?

DEFENDANT: That's my understanding.

COURT: No one's forcing you or threatening you to make you enter this waiver of jury trial?

DEFENDANT: That's right.

COURT: You're doing this of your own free will.

DEFENDANT: Yes.

COURT: All right, Mr. Donau. You have counseled Mr. Cotterman for quite some time now and you believe he understands what he's doing.

MR. DONAU: I do, Your Honor.

COURT: All right. And you've explained the process to him?

MR. DONAU: I have.

COURT: And he understands it?

MR. DONAU: I believe he does.

COURT: All right. I'll sign the form and accept the waiver of jury trial.

(RT 6/10/14, pp. 3-5). The Court ultimately convicted Cotterman on all remaining counts.

Trial counsel learned through Cotterman's PSR that his prior convictions were not predicate offenses for a sentencing enhancement under § 3559(e).[7] Soon thereafter, trial counsel sent the P.O. a letter outlining his objections to the PSR:

---

[7]Trial counsel appears to deny this contention, but the evidence proves otherwise. He admits that he initially "thought the prior conviction in California qualified as a predicate felony," but denies that he believed withdrawal or dismissal of the notice was necessary for Cotterman to avoid a mandatory life sentence on Counts 1 and 2. (Ex. X. Resp. to RA #1-4). He does not, however, indicate when he learned that the priors were

On page 3, paragraph 11, while we agree with your characterization that the California offenses would not qualify as predicate sex crimes, it should also be noted that <u>prior to trial, the government withdrew its notice of prior conviction that was part of the agreement for a bench trial.</u> Therefore, the strict categorical approach noted does not apply, as of the date of trial, the notice had been withdrawn.

(Ex. AD). It is clear, under the complete set of facts, that Cotterman derived no benefit from trial counsel's insistence that he "elect" a bench trial. Trial counsel had from the outset determined there would never be a jury trial in this case, and made that decision when it was not his to make.

The decision to waive a jury trial is one of the few personal rights that can only be decided by a defendant. In order for Cotterman to have made a knowing and intelligent decision as to that issue, trial counsel needed to advise him that the decision was his alone, and explain to him what rights he would be relinquishing and the risk-benefit analysis of doing so. Cotterman was not properly advised and was, therefore, incapable of making a voluntary, knowing, and intelligent waiver of his right to a jury trial notwithstanding the documents he signed, his attorney's avowal, and the court's insufficient colloquy. (Ex. E, ¶¶ 4-5)

Trial counsel now denies that he believed a bench trial would be a waste of his time, and asserts that he informed Cotterman that the bench trial decision was ultimately up to

_____

not predicate offenses, and does not recall what efforts he made to discover that information. (*Id.* at Int. #1). Furthermore, trial counsel's email to the P.O., in which he stated that the notice was withdrawn "as part of the agreement for a bench trial," completely contradicts his claim that that he did not agree to the bench trial because he thought he was securing Cotterman the benefit of avoiding a mandatory life sentence. (*Id.* at RA #4; Ex. AD).

him, but the record belies his response. (Ex. X, Resp. to RA #11-13; *see* Ex. AA).  His file reflects no reference to any discussions with Cotterman regarding jury versus bench trial whatsoever.  Furthermore, the correspondence between trial counsel and the AUSA shows that trial counsel had unilaterally determined early on that the case would be tried by bench. This is shown through the AUSA's 9/3/08 letter wherein he stated, "I recall you mentioning earlier that *the matter would be resolved either by way of stipulated facts trial or bench trial*," and that, "more recently, you guaranteed Judge Pyle that there would be no trial in this case but with no proffered method for resolving the case."  (Ex. AA) (emphasis added). Trial counsel's response to that letter similarly contradicts his response to Cotterman's request for admissions.  (Ex. AB).  He confirmed that he "d[id] not believe it [wa]s in anyone's best interest to have a full blown jury trial on this matter" and suggested that the case be tried "on stipulated facts before the judge assigned to the case, or try[] the case without a jury to the judge."  (*Id.*).  In light of this evidence, trial counsel's claim that it was Cotterman who ultimately elected a bench trial is not credible.

Trial counsel also denies that his bench trial election was based, even in part, on his erroneous belief that it was necessary to avoid the mandatory life sentence.  (Ex. X, Resp to RA #3-4).  However, trial counsel's email to AUSA Duryee, wherein he informed her that he feared Cotterman would demand a "complete jury trial" unless he received something in return for his waiver, shows that Cotterman's "agreement" to succumb to a bench trial was predicated on trial counsel's erroneous and ineffective advice that doing so was the only way to ensure he would avoid a mandatory life sentence, in the event he was convicted.  (Ex. AC).  In other words, the waiver was not knowing, voluntary, and

intelligent because he relinquished his right to a jury trial based on counsel's erroneous advice.

Trial counsel was also ineffective in how he approached the bench trial, and it is now clear that he was essentially exercising a "slow plea." If, in fact, it was trial counsel's intention to elect a bench trial, it is again crystal clear from the stipulation he persuaded Cotterman to sign and his actions in waiving Cotterman's right to testify, his elemental cross examinations of the witnesses, and his failure to properly argue the pertinent law, that Cotterman would, without question, be found guilty of all counts. The bench trial election, along with the stipulation (Ex. J), was exactly what trial counsel said it was in his letter to the AUSA: a stipulation to ownership, possession, and identity—*i.e.*, all that was necessary to guarantee a conviction.

1. *Trial Counsel Was Ineffective in Advising Mr. Cotterman to Waive His Right to Jury Trial*

A criminal defendant's right to jury trial is a fundamental right guaranteed by the Sixth Amendment. U.S. Const. amend. VI; *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). A jury trial offers defendants a great deal of benefit. Unlike a bench trial, wherein a defendant's guilt is determined by one person, a jury trial requires twelve members of the community to unanimously find him guilty. *See United States v. Cochran*, 770 F.2d 850 (9th Cir. 1985). Furthermore, in a jury trial, the defendant is afforded the benefit of taking part in jury selection, and can object to jury instructions. *Id.*

Here, trial counsel advised Cotterman to give up a jury trial and agree to several damaging stipulations in exchange for the government's agreement to dismiss its Notice of

Prior Convictions. Had his prior convictions actually been § 3559(e) predicate offenses, that advice might have been sound; however, that was not the case. Since the priors were *not* predicate offenses, trial counsel effectively advised Cotterman to give up a foundational constitutional right (and agree to several damaging stipulations) in exchange for nothing. Nor is there any evidence that trial counsel's decision to pursue a stipulated-facts bench trial was otherwise a sound strategic decision. Instead, he wanted to avoid a jury trial simply because he viewed it as a waste of his time. (Ex. AC). Trial counsel's advice was unreasonable under the circumstances.

By trial counsel's own admission, Cotterman was reluctant to submit to a bench trial because of a previous bad experience, and he was extremely wary about signing the stipulations. (Ex. X, Resp. to RA #7; Ex. E, ¶¶ 4-5; Ex. AC). He only agreed to do so because he was led to believe the decision was ultimately up to trial counsel, and because he was erroneously informed that he would also receive the significant benefit of avoiding a mandatory life sentence in exchange for his waiver. *Cf. Lee*, 137 S. Ct. at 1968-69.

Cotterman was prejudiced by trial counsel's erroneous advice with the respect to the jury trial waiver—and his failure to advise him of the accompanying risk and benefits of a bench trial—because that advice caused him to give up his constitutional right to a jury trial. *See Hill v. Lockhart*, 474 U.S. 52, 57-59 (1984) (defendant establishes prejudice when counsel's deficient performance caused him to forego trial by demonstrating "reasonable probability that, but for counsel's errors, he would . . . have insisted on going to trial"); *see also Torres v. Small*, 2008 WL 1817243, *23-24 (D. Cal. 2008) (applying *Hill*'s prejudice analysis to counsel's unreasonable advice to waive jury trial and submit to

bench trial); *see also Miller v. State*, 548 S.W.3d 497, 499, 502 (Tex. Crim. App. 2018) (applying *Hill* and *Lee* in bench trial context).  Had Cotterman been properly advised, he would not have agreed to a bench trial or signed the incriminating and damaging stipulations.  *See Lee*, 137 S. Ct. at 1965 (when defendant alleges counsel's ineffective assistance caused him to waive proceeding, courts consider whether defendant was prejudiced by denial of entire judicial proceeding).  (Ex. E, ¶¶ 4-5, 9).

   2. ***Cotterman's jury waiver was invalid because he was inadequately advised of his right to a jury trial and the district court's colloquy was insufficient to ensure his waiver was voluntary, knowing, and intelligent***

   Trial counsel's ineffective assistance with respect to Cotterman's jury trial waiver also rendered it invalid.  A defendant ordinarily cannot waive his right to a jury trial unless he does so in writing, and it is shown that his waiver was voluntary, intelligent, and knowing.  *Cochran*, 770 F.2d at 851 (jury trial waiver valid only if: (1) in writing; (2) government consents; (3) trial court accepts it; and (4) it was voluntarily, knowingly, and intelligently waived); *cf. United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005) ("Waiver is the intentional relinquishment or abandonment of a known right."), *quoting United States v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004).  Given the foundational nature of the right to a jury trial, courts must "indulge every reasonable presumption" against such waiver, and cannot "presume acquiescence in the loss of fundamental rights."  *Gonzalez-Flores*, 418 F.3d at 1102.

   To ensure a waiver is voluntary, knowing, and intelligent, the district court should inform the defendant of the following admonitions:

   1. Twelve members of the community compose a jury.

2. The defendant may take part in jury selection.

3. The jury verdict must be unanimous.

4. The court alone decides guilt or innocence if defendant waives a jury trial.

*Id.*, *citing United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). Though the Ninth Circuit has not required the colloquy in every case, it has indicated that, in the absence of the colloquy, it will find a valid waiver only where there are "strong indicia that the waiver was voluntary, knowing and intelligent." *Id.* And while compliance with Rule 23 of the Federal Criminal Rules of Procedure creates a presumption that the waiver is valid, the Ninth Circuit has strongly recommended that the district court advise defendants of the four conditions before accepting a waiver. *See Cochran*, 770 F.2d at 852 (even when defendant signs written jury trial waiver, district could should interrogate defendant so as to ensure he is fully apprised of rights and freely and voluntarily relinquishes them).

Here, the district court advised Cotterman that, in a bench trial, the court alone decides guilt or innocence, but did not advise him of the first three conditions. Instead, it relied on trial counsel's avowal that he advised Cotterman of these rights, but Cotterman asserts that trial counsel never advised him of the important rights he would be giving up by agreeing to a bench trial. (Ex. E, ¶ 5). Given trial counsel's documented insistence that the case be tried by bench, his inadequate advice on why to take a bench trial, and his overall ineffectiveness, there is a reasonable likelihood that he never advised Cotterman of the four conditions, or explained the risks and benefits of a bench trial. *See United States v. Shorty*, 741 F.3d 961, 966 (9th Cir. 2013) (district court's failure to advise defendant of

the "four crucial facts" may require reversal where there are "additional facts in the record bearing on whether the waiver was voluntary, knowing and intelligent"). (Ex. E, ¶¶ 4-5).

Furthermore, the partial colloquy that the district court provided was misleading and erroneous. He told Cotterman that "[t]he only thing that's different about [a bench] trial is a jury doesn't decide it." (RT 6/10/14 pp. 4-5). But there are a number of other critical differences as well, namely, that a jury is comprised of twelve members of the community, that Cotterman would have been able to participate in the selection process, and that the jury trial would have provided the benefit of requiring all twelve jurors to be unanimous in their verdict. Though the district court is not required to provide a colloquy in all cases, its partial, misleading colloquy was plain error here, because it misrepresented and downplayed the nature of the rights that Cotterman would be giving up by submitting to a bench trial. *Olano*, 507 U.S. at 731-737.

There are additional facts here that call the validity of Cotterman's jury trial waiver into question. *Id.*; *see also Cochran*, 770 F.2d at 851 n.1 (presumption of waiver may be overcome by additional facts). Trial counsel's admission that Cotterman divulged to him his reluctance to submit to another bench trial, and his email to the AUSA expressing concern that Cotterman was on the verge of demanding a "full-blown jury trial" raise significant questions about whether Cotterman's waiver was truly voluntary. (Ex. E, ¶¶ 4-5; Ex. X, Resp. to RA #7; Ex. AC). Furthermore, the fact that trial counsel ultimately secured Cotterman's waiver by erroneously advising him that it was necessary to avoid a mandatory life sentence demonstrates that his waiver was not knowingly or intelligently

made. This is all the more reason to carefully question Cotterman and trial counsel about the facts and circumstances surrounding the bench trial election at an evidentiary hearing.

In the instant case, reversal is warranted because the district court's colloquy failed to ensure the adequacy of Cotterman's jury waiver, given trial counsel's inadequate advice. Even though courts are not constitutionally required in every case to conduct a full colloquy, the *Cochran* court made clear that *should* do so, and that, in failing to do so, it risks accepting a jury trial waiver that was not knowing, voluntary, and intelligent. 770 F.3d at 852; *see also United States v. Christiansen*, 18 F.3d 822, 825-26 (9th Cir. 1994). Given the serious nature of this case, as well as the parties stipulations and the government's unchallenged trial brief, the district court should have used the colloquy suggested by his bench book for the district court judges. *See Benchbook for U.S. District Court Judges*, (6th ed. 2013) § 1.09; *cf. United States v. Scott*, 583 F.2d 362 (7th Cir. 1978) (making preconditions mandatory because recommendation to district court judges had not succeeded). Had the district court fully and accurately informed Cotterman of the rights and benefits he would be giving up by waiving a jury trial, as urged by *Cochran*, and pressed him further about his decision, it likely would have discovered that trial counsel failed to adequately advise Cotterman of the crucial rights he was giving up, and that his waiver was not voluntarily, knowingly, and intelligently waived, and may not have accepted his waiver had it known these additional facts. *Cf. Hamilton*, 391 F.3d at 1071 (waiver is "'intentional relinquishment or abandonment of a *known* right'").

Appellate counsel was similarly ineffective with respect to the waiver of Cotterman's right to a jury trial. She acknowledged that the waiver issue can be raised on

appeal, but now denies "that [she] did not evaluate or consider raising a claim that the jury waiver was invalid or insufficient." (Ex. W, Resp. to RA #1). Instead, she asserts that she determined that the claim was better raised in a § 2255 motion, characterizing it as an "exceedingly fact-specific issue." (*Id.*). Appellate counsel is correct that part of Cotterman's jury waiver claim requires consideration of facts outside the record—his claim that trial counsel was ineffective in advising him to waive his right to a jury trial. However, his claim that the district court's colloquy was insufficient should have been preserved on appeal. Had she at least raised the issue of the Court's inadequate and misleading colloquy for preservation purposes, Cotterman would not now have to prove prejudice resulting from his invalid waiver. *See United States v. Shorty*, 741 F.3d 961, 969 (9th Cir. 2013) (invalid jury waiver structural error that requires reversal regardless of prejudice); *cf. United States v. Carpenter*, 772 Fed. Appx. 419, 424 (9th Cir. 2019) (allowing defendant to re-assert claim in § 2255 proceedings where record insufficiently developed on appeal).

Because appellate counsel failed to raise the jury waiver colloquy issue on appeal, Cotterman must now jump an additional hurdle and prove prejudice, when proof of the error alone would have entitled him to relief had the issue been raised on appeal. *Cf. Weaver*, 137 S. Ct. at 1912 (structural error not preserved at trial or raised on appeal is reviewable in context of ineffective-assistance claim in habeas proceeding, but requires showing of prejudice to obtain relief); *see Shorty*, 741 F.3d at 969 (invalid jury waiver is structural error). Cotterman has made a colorable showing of ineffective assistance of appellate counsel, entitling him to an evidentiary hearing.

# CLAIM III

**COTTERMAN WAS DEPRIVED OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS TO TESTIFY, AND RECEIVED INEFFECTIVE ASSISTANCE FROM TRIAL COUNSEL WHEN HE FAILED TO INFORM HIM THAT HIS RIGHT TO TESTIFY WAS HIS DECISION ALONE.**

Cotterman wanted to testify and conveyed that to trial counsel. (Ex. E, ¶¶ 6-7). Trial counsel now disputes this claim, and alleges that Cotterman "changed his position several times." (Ex. X, Resp. to RA #14). Cotterman vehemently disputes that claim. (Ex. E, ¶¶ 6-7). He asked trial counsel on numerous occasions whether he was going to be called as a witness, but those inquiries were usually ignored. (*Id.*). Trial counsel never prepared Cotterman to testify and instead told him he would ultimately make the decision after the government rested its case, even though it was not trial counsel's decision to make. (*Id.*). Trial counsel also told Cotterman that he would make the decision based on how the case was progressing—if it was going well, he would not put Cotterman on the stand, but if was going poorly, he would. (*Id.* ¶ 6). He made it clear that Cotterman would only take the stand if he thought the case was going badly. No record was made regarding Cotterman's desire to testify, and the district court made no inquiry.

Perhaps the most telling sign that trial counsel never intended to call Cotterman as a witness is that he never prepared him to testify. (*Id.*). He never visited with Cotterman to determine what he intended to say, and, therefore, never assessed whether his proposed testimony might be helpful to the case. From his actions, it is clear that trial counsel always knew he would not call Cotterman as a witness, but instead of telling him that, he led him to believe he "might" call him. (*Id.*).

Trial counsel also failed to advise Cotterman that the decision as to whether or not to testify belonged to him, and him alone. (Ex. E, ¶¶ 6-8). Cotterman truly believed it was trial counsel's decision as to whether or not he would testify. (*Id.* ¶ 6). Trial counsel had informed him that he operated independently in the courtroom and that any decisions made therein rested with him. (*Id.*). Had Cotterman known that it was his decision, he would have testified. (*Id.* ¶ 8). He told trial counsel numerous times that he wanted to testify and that he had deeply regretted not testifying in his previous trial. (*Id.*).

An accused's right to testify is a constitutional right of fundamental dimensions. *Rock v. Arkansas*, 483 U.S. 44, 52-53, 53 n.10 (1987); *see also* U.S. const., amend. V. And because the right to testify is a personal right to be invoked by the defendant, its relinquishment must be made knowingly, voluntarily, and intelligently by the defendant. *See United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (courts indulge every reasonable presumption against waiver of fundamental rights). "[T]he ultimate decision to testify rests with the defendant," *Joelson*, 7 F.3d at 177, and can only be waived if it is clear from the record that the defendant intentionally and knowingly relinquished that right. Whether there has been an intelligent waiver depends upon the particular facts and circumstances of the specific case, and the record must reflect that the defendant possesses the knowledge and understanding to make an informed decision. *See Johnson*, 304 U.S. at 464.

The Ninth Circuit currently imposes no obligation on district courts to inquire as to whether a defendant has waived his right to testify. *See United States v. Martinez*, 883 F.2d 750, 756 (9th Cir. 1989), *vacated on other grounds*, 924 F.2d 1470 (9th Cir.), *cert.*

*denied*, 501 U.S. 1249 (1991); *see also United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990). However, the Circuit has not foreclosed claims of ineffective assistance of counsel based on trial counsel's failure to advise a defendant of his right to testify. *See United States v. Aileman*, 710 F. Supp. 2d 960 (D. Cal. 2008) (acknowledging defendant may assert ineffective assistance of counsel claim for denyinh him right to testify).

As noted above, Cotterman contends that trial counsel failed to inform him that the decision to testify belonged to him, and that, had he been told as much, he would have testified. *Id.*; *see also United States v. Owens*, 483 F.3d 48, 58-59 (1st Cir. 2007) (failure to inform defendant of right to testify objectively unreasonable and could be prejudicial), *abrogated on other grounds by Weaver*, 137 S. Ct. 1899; *see also United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (defense counsel is responsible for advising defendant of right to testify and strategic implications of each choice). (Ex. E, ¶¶ 8-9).

Cotterman was prejudiced by trial counsel's failure to advise him of his right to testify because it caused him to waive that right. Furthermore, had he testified, he would have been able to put on his own defense, thereby increasing the likelihood that he may have been acquitted on at least some of the counts. (Ex. E, ¶ 8). In *United States v. Nohara*, 3 F.3d 1239 (9th Cir. 1993), the Ninth Circuit found no prejudice or harm to the defendant in waiving his right to testify because his testimony would have only served to bolster the testimony of other witnesses who testified for the defense. In contrast, here, Cotterman's testimony would have been the *only* evidence presented on his behalf. Trial counsel presented no witnesses or evidence to rebut the government's case; thus, by testifying, Cotterman could have contradicted at least some of the government's witnesses.

His affidavit outlines the testimony he would have provided, which would have included the following:

1. The true facts surrounding his prior conviction.

2. His relationship with his granddaughter and her history of behavioral problems, which began years before the charged acts, to contradict the government's claim that he was responsible for her physical, emotional, and psychological problems.

3. That he never downloaded any photographs or accepted pornographic materials that were sent to him, and asked to be deleted from any such mailing lists.

4. An explanation as to why he took the photos to demonstrate that his motivation was not sexual (to show it did not satisfy the requirements of the statute).

5. He would have refuted the alleged acts pertaining to the sand dunes trip, which was alleged as a prior bad act.

6. He was only alone with his granddaughter during one overnight trip, and that on all other occasions, one of the other two children, or both, were with him on all trips.

7. His son, the father of the victim, offered to contact the AUSA and plead for leniency if Cotterman would buy him a "dependable vehicle" and "rent a two bedroom apartment for him." He refused the improper offer.

(Ex. E, ¶¶ 6-10). Cotterman desperately wanted to explain his conduct. In addition to his affidavit, his desire to testify is evinced by his comments at sentencing that he "was also expressing [his] willingness to testify to the things [he did], the reasons [he did] them and for the—and the motivations as well." (RT 9/29/14, p. 7, ll. 10-13). These comments are further proof of Cotterman's desire to testify and his lack of knowledge that it was his decision and not trial counsel's.

In *Martinez,* the Ninth Circuit stated that a knowing and intelligent waiver cannot be established by a wholly uninformed defendant and an otherwise constitutionally deficient record. 883 F.2d 750. Here, there is no evidence of a colloquy with the Court or

trial counsel, nothing on the record that Cotterman relinquished his constitutional right to testify, and no proof that he understood he personally controlled the decision to testify. In fact, there is not a single notation in trial counsel's file that he advised or discussed with Cotterman his right to testify. It was trial counsel's responsibility to advise Cotterman of his right to testify and to advise him of the risk-benefits of testifying, while also explaining that the decision ultimately rested with him. *See Owens*, 43 F.3d at 58; *see also United Teague*, 953 F.2d at 1533 (defense counsel responsible for advising defendant of right to testify and strategic implications of choice). Trial counsel failed to meet that responsibility in this case.

Furthermore, even though the Ninth Circuit has yet to require district courts to inquire into whether a defendant was knowingly, intelligently, and voluntarily waiving his right to testify, the cases that have thus far assumed a valid waiver from a silent record have relied on the fact a defendant's attorney has advised him of the full panoply of his right to testify. *See Martinez*, 883 F.2d at 756; *Edwards*, 897 F.2d at 446. In light of the facts of this case, the stipulation, and the ineffectiveness of trial counsel, this Court should have obtained an affirmative waiver and advised Cotterman that he had a constitutional right to testify and that, should he choose to do so, he would not waive his privilege against self-incrimination. *See United States v. Butts*, 630 F. Supp. 1145 (D. Me. 1986); *Lavigne v. State*, 812 P.2d 217 (Ala. 1991); *State v. Lee*, 142 Ariz. 210 (1984). This procedural safeguard would have taken but a few moments, and should have been employed to ensure Cotterman's failure to testify was a decision by him made voluntarily, knowingly, and intelligently. *See Brady v. United States*, 397 U.S. 742 (1970). Since trial counsel failed

to inform Cotterman of his right to testify, silence on the record alone cannot support an inference of waiver. *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001) (silence alone cannot support inference of waiver of right to testify).

It is also critical that trial counsel repeatedly made clear to Cotterman that the courtroom was his domain and that he would do the talking in court and make the decisions. (*Id.*). Defendants should not have to interrupt the trial proceedings, interject themselves, uninvited, into the battle to preserve their right to testify. Defendants like Cotterman are expected to be seen and not heard. Indeed, on occasions where a defendant does speak without invitation, he is usually silenced by the court and, in some cases, faces the threat of being held in contempt or removed from the courtroom. All trial counsel had to say in the instant case was that he had discussed with Cotterman his right to testify, explained that it was his personal right and decision, discussed the risk-benefits of testifying, and, after all that, Cotterman decided not to testify. This procedure would have ensured that Cotterman's waiver was knowing, voluntary, and intelligent, and confirmed whether trial counsel has fulfilled his duty of adequately informing him of his right to testify.

The issues in these claims regarding the right to testify and waiver are questions of fact. *United States v. Johnson*, 820 F.2d 1065, 1074 (9th Cir. 1987). Cotterman importunes this Court for this opportunity to present his case in a full, plenary evidentiary hearing. *Cf. Owens*, 483 F.3d at 60-61. In the alternative, he asks the Court to grant him a new trial to allow him to exercise his constitutional right to testify.

# CLAIM IV

## COTTERMAN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL ADVISED HIM TO SIGN THE STIPULATIONS OF FACT.

On June 6, 2014, Cotterman signed stipulations of fact, as advised by trial counsel. (Ex. J). Trial counsel was insistent that Cotterman sign the stipulation, but he never advised him why it was necessary. Trial counsel believed the stipulations would save time—time having been a recurring issue for him throughout his representation of Cotterman. Cotterman received absolutely no benefit by agreeing to the stipulations. It made life far easier for the government and avoided any pretrial or trial objections to the destruction of the hard drive on his computer, which contained all the incriminating evidence. The stipulations resolved proof of consciousness of guilt (Australian documents), the facts surrounding the prior convictions, chain of custody issues, and objections to the admissibility of incriminating evidence. In short, they resolved a lot of proof problems that the government otherwise would have had to overcome at trial, and all but ensured the government would secure a conviction. (Ex. AB).

The government learned shortly before trial that Cotterman's hard drive had been destroyed. It claimed it was "inadvertent," but that was a significant factual issue that trial counsel simply stipulated away, claiming he was satisfied that these were not issues. It is unclear whether trial counsel agreed to the stipulations as part of his agreement with the government to withdraw its notice of prior convictions, as the stipulation itself contained no language to that effect. If it was, that decision was clearly ineffective because, as explained above, the prior was not a usable § 3559(e) predicate offense; the government's

agreement to withdraw the notice afforded Cotterman no benefit. The stipulations simply relieved the government of proving facts that it would have been hard pressed to prove in the absence of the stipulations—facts that would have required evidence and witnesses that the government did not have or would have had difficulty producing.

For instance, the government was very concerned about the destruction of Cotterman's laptop computer and the hard drive because they held all the incriminating evidence. Correspondence indicated that the government persisted to obtain the stipulations and stated that the destruction was inadvertent after it was transported from Lukeville to Tucson to Nogales. Clearly, the destruction issue could have affected the admissibility of a duplicate hard drive, or as the government described it, a mirror image. The government also would have had to make a *prima facie* showing that the laptop image was "in substantially the same condition as the laptop seized," and establish the chain of evidence, sans stipulation.

Further, the government would have had to demonstrate the computer was "inadvertently destroyed," and not destroyed in bad faith. There is no question that the laptop and hard drive were destroyed while in the government's custody. The government had the responsibility to preserve the computer, and its failure to do so raised factual and legal issues as to the admissibility of its contents. At the very minimum, trial counsel should have retained a forensic tech expert to explore these issues before simply satisfying himself that the stipulation was somehow in Cotterman's best interests. Thanks to the stipulations, the government was left with the relatively easy burden of proving that the images Cotterman possessed constituted pornography.

Although counsel sporadically visited Cotterman and spent very little time with him, on three separate occasions shortly before trial (5/16/14, 5/30/14, and 6/4/14), he went to visit Cotterman to pressure him into signing the stipulations. (Ex. E, ¶¶ 4, 9). He refused to answer any questions regarding testifying or trial preparation, and was laser focused on obtaining Cotterman's signature. On the first two occasions, Cotterman refused to sign the stipulations. (*Id.* ¶ 9). He "did not agree with the stipulation or understand why [he] needed to sign it." (*Id.*). Cotterman was extremely reluctant to sign the stipulations due to some discrepancies and its incompleteness, but nevertheless acknowledges that he uninformedly and reluctantly signed them upon demand by his attorney. (*Id.*).

Trial counsel was ineffective in counseling Cotterman to sign the stipulations of fact. *See Strickland*, 466 U.S. 668. The stipulations offered Cotterman no benefit, and relieved the government of its burden of proving several elements of the charges. *See Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995) (objectively unreasonable tactical decisions are ineffective assistance of counsel). Under the circumstances of this case, trial counsel's decision to enter into the stipulations was not a reasonable tactical decision. *Id.*

Furthermore, Cotterman did not knowingly and intelligently enter into the stipulations because he lacked "sufficient awareness of the relevant circumstances and likely consequences" of the stipulations. *Cf. United States v. Larson*, 302 F.3d 1016, 1021 (9th Cir. 2002). Trial counsel never explained the benefits of the stipulations, and Cotterman really did not understand what he was giving up by agreeing to them. (Ex. E, ¶ 9). On trial counsel's third visit, he insisted that Cotterman sign the stipulations, and told him that "it wouldn't make any difference but [he] needed to sign it." (*Id.*, ¶¶ 4, 9).

Cotterman eventually acquiesced to trial counsel's pressure. (*Id.*). Trial counsel asserts he has "no recollection" as to whether or not Cotterman initially refused to sign the stipulations. (Ex. X, ¶ 10.)

Cotterman was prejudiced by the stipulations because there is a reasonable possibility that the results of the trial would have been different had trial counsel not erroneously advised him to sign them. *Strickland*, 466 U.S. at 687-88, 694. Had he not stipulated to all the facts, the government would have been left with the difficult talk of proving that the hard drive was, in fact, inadvertently destroyed, and that the destruction did not prejudice Cotterman. *See Illinois v. Fisher*, 540 U.S. 544, 547 (2004). The government also would have had the difficult task of proving that the backup images were authenticated and that the chain of custody was complete. *See United States v. Hock Chee Koo*, 770 F.Supp.2d 1115 (D. Or. 2011). The trial was not about making life easier for the government, particularly since the government indicated it would not spare the rod when recommending a sentence. Cotterman was prejudiced by trial counsel's ineffectiveness in entering into an incriminating stipulation, and should receive a new trial.

### CLAIM V

**TRIAL AND APPELLATE COUNSEL INEFFECTIVELY CHALLENGED THE SEXUALLY EXPLICIT CONDUCT OF THE PHOTOGRAPHS AND THE ENGAGEMENT NECESSARY TO ESTABLISH THE ELEMENTS FOR A CONVICTION OF COUNTS 1 AND 2.**

### A. SEXUALLY EXPLICIT CONDUCT

Cotterman was charged with production of child pornography (Counts 1 and 2), in violation of 18 U.S.C. § 2256(2). Section 2256(2)(A) defines "sexually explicit conduct"

as actual or simulated: "(i) sexual intercourse . . . ; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person." To prove that Cotterman violated § 2256(2), the government needed to show beyond a reasonable doubt that the images on his computer depicted sexually explicit conduct.

Trial counsel described this issue as a legal one and reserved his argument for the close of evidence. He was completely ineffective in making this argument (*i.e.*, not citing the most applicable cases, etc.), however, the real malady here was related to his advice to Cotterman and in incorrectly believing he had to proceed to bench trial to assert these legal issues. He could—and should—have raised these legal issues in pretrial motions. An effective attorney would have a filed a pretrial motion to dismiss counts 1 and 2, the most serious counts, as not depicting sexually explicit conduct necessary to convict Cotterman under § 2256(2)(A). The controversial photographs depicted the victim's pubic area and, in some instances, the edge of the vulva, and a hand opening the vulva area to be photographed. There was no penetration or fondling.

Further, the government had to prove the photographs displayed a child's sexual organs lasciviously—such that the photographs would "arouse or satisfy the sexual cravings of a voyeur." *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987); *see also United States v. Knox,* 32 F.3d 733, 745 (3d Cir. 1994) (describing lascivious exhibition as depictions that "attract notice" to genitals and pubic area of child to "excite lustfulness or sexual stimulation in the viewer"). Arguably, the images in the instant case

were akin to what one might see in a human anatomy textbook, and did not meet the definition of "lascivious."

Cotterman, while admitting it was inappropriate behavior for which he was truly remorseful, suggested it was chronic, family curiosity that led him to take the photographs, and that they were not taken for sexual purposes. Given that the photos were not plainly and unquestionably sexual in nature, trial counsel should have argued that they did not meet the statutory definition of "depicting sexual conduct." *See United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011); *see United States v. Dost*, 636 F. Supp. 628, 632 (S.D. Cal. 1986) (listing six factors considered to determine whether depiction was lewd and lascivious). The Ninth Circuit has suggested that one *Dost* factor alone cannot form the basis of lasciviousness. *See United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990). If the only factor in this case is that the focal point of the photos depict the victim's genitals or pubic area, lasciviousness could not have been established. *Doe v. Chamberlain*, 299 F.3d 192, 196 (3d Cir. 2002).

*Wiegand* and its progeny also made clear that the offense is against the child—that is, the actual harm to the psychological, emotional, and mental health of a child. 812 F.2d 1239. These considerations were lacking in this case despite the government's attempt, without objection, to attribute the victim's psychological, emotional, and mental problems to Cotterman's conduct. The onset of the victim's problems occurred years before the photographs were taken and before she was made aware of their existence by the agents. Trial counsel should have challenged that claim and presented evidence to refute the government's claim that those issues were attributable to Cotterman. There was ample

evidence that the victim's behavioral problems at school, ADHD, psychological counseling, sleep disturbances, bedwetting, etc., were not caused by Cotterman, yet those facts were never elicited or challenged by trial counsel. He made no efforts to obtain documentation of those preexisting issues despite knowing full well that the subject would likely arise at trial.

In *United States v. Steen*, 634 F.2d 822 (5th Cir. 2011), the Fifth Circuit held that images must depict sexually explicit conduct and capture the victim "engaged" in sexually explicit conduct. The court rejected the use of the *Dost* factors when a defendant's conduct is, at best, proven to be no more than voyeurism. If it could have been determined that Cotterman was curious and nothing more than a voyeur, he could not have been convicted of counts 1 and 2. Trial counsel ineffectively failed to make this argument to the Court. It is also clear the pictures have to depict more than nudity, otherwise, the term lasciviousness would be rendered meaningless. *See United States v. Villard*, 885 F.2d 117, 121-22 (3d Cir. 1989). In *Villard,* the pictures depicted the minor in various stages of an erection but the court held, without more, that the pictures were not lascivious. *Id.* at 125; *see also Osborne v. Ohio*, 495 U.S. 103 (1990).

As noted above, the crux of this argument is not simply that trial counsel should have been better prepared, cited more pertinent cases, made a more cogent argument, but that he could and should have accomplished all this in a pretrial motion. Had the district court granted the motion, these counts would have been dismissed; had it been denied, it would have been an indication to trial counsel that he needed to submit the matter to a jury or obtain a plea. Given that trial counsel believed his strengths were the legal issues, he

should have presented them to the district court before deciding whether it was in Cotterman's best interest to proceed with a jury or a bench trial. Had his legal arguments been rejected, there would have been no reason to submit to a bench trial, considering he claimed the facts were not in Cotterman's favor. Trial counsel's failure to file the pretrial motions and effectively represent Cotterman was egregious, but this failure spilled over to the ineffectiveness of trial counsel in then allowing the Court to consider his guilt or innocence. At the very least, trial counsel should have presented his legal arguments in a trial memorandum.

## B. ENGAGEMENT

Nor did trial or appellate counsel raise the argument that the victim could not have been engaged because she was asleep when the photos were taken. While this was briefly discussed in mitigation during sentencing, trial counsel asserted no legal arguments for dismissal on this basis. Appellate counsel simply refused to make this argument notwithstanding that Cotterman, again, informed her of this issue. Instead, appellate counsel moved to withdraw, and the Ninth Circuit gave Cotterman the option of continuing with appellate counsel or filing his own brief within 30 days. (Ex. P). He was and is incapable of filing his own legal briefs, so he was forced to proceed with appellate counsel, who refused to raise this issue because it was not raised at trial and she did not feel the law supported this contention. *Cf. Olano*, 507 U.S. at 731-737.

Section 2251(a)'s plain language requires that the child participate in some manner. *See* § 2251(a) (prohibiting "person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . with the intent that such minor engage in, any sexually

explicit conduct for the purpose of producing any visual depiction"). Here, there was no evidence that Cotterman "employed, used, persuaded, induced, enticed or coerced" the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of the minor in sexually explicit conduct. *See United States v. Carroll*, 227 F.3d 486 (5th Cir. 2000). Indeed, the victim was asleep. Given that the statutory language of § 2251(a) suggests that the minor must do something, and its "use" wording does not obviate the statute's requirement that a defendant have the purpose of producing any visual depiction of actual sexual explicit conduct, trial counsel should have argued that a sleeping child is incapable of engaging in sexually explicit conduct. *See id.* at 489 n.2.

The purpose of the statute is to protect against the harms of physiological, emotional, and mental damage to the child as well as to protect the child's vulnerability. *Cf. United States v. Reingold*, 731 F.3d 204, 216 (2nd Cir. 2013). When the complaint involves a sleeping child, these harms are diminished. Here, the victim and her mother had no idea that the photographs existed until the agents showed the photographs to them. Cotterman could have provided much of this information at trial, had trial counsel not deprived him of his right to testify.

Moreover, the victim did not "engage" or participate in any alleged sexually explicit conduct. In almost all the cited cases on this issue, a defendant must do "something" in producing the pictures, *i.e.*, posing, etc. *See United States v. Laursen*, 847 F.3d 1026 (9th Cir. 2017) (defendant must do something active to engage victim in manner that results in production of child pornography); *cf. United States v. Overton*, 573 F.3d 679, 689 (9th Cir. 2000). The photographs in this case did not depict sexual activity, only the pubic area in

an almost clinical manner. In contrast, in *Overton*, the defendant shepherded the minor female. 573 F.3d at 689. There, the minor female stated that the defendant had told her what to do, made her pose, and told her to move her hand in a certain way. *Id.* These are not the facts in the instant case. Here, Cotterman never instructed, let alone spoke with the minor, who was asleep and completely unaware that the photos had been taken. The critical factor in the instant case, which was the government's concession in *Carroll*, is "that a sleeping child cannot be the victim in an alleged § 2251(a) violation." *See* Govt.'s *en banc* brief in *Carroll*. In footnote 9 of the government's *en banc* brief, it admitted:

> After a thorough and searching review of the plain wording of 18 U.S.C. § 2251(a) and the legitimate history addressing it at the time it was enacted and other pertinent history, the government concedes that a violation of § 2251(a) requires that the defendant employ, use, persuade, induce, entice or coerce the minor himself to "engage" in the actual or simulated sexual conduct for the purpose of producing a visual depiction of the minor's sexually explicit conduct…The government has no evidence that defendant induced the minor male number one to engage in actual or simulated lascivious exhibition of the genitals…Defendant did not induce minor male number one to engage in any sexually explicit conduct as defined by 18 U.S.C. § 2251(2) for the purpose of producing a visual depiction of that conduct. The government concedes that defendant's sentence should be vacated and the case remanded (for sentencing on other charges).

The lack of Ninth Circuit caselaw supporting the government's position as to this issue rendered it ripe for a pretrial motion to dismiss and appellate review, yet, trial counsel failed to file such a motion, and did not argue the issue. He was ineffective in failing to do so.

Appellate counsel was also ineffective in failing to raise this novel issue on appeal. This case presented a colorable argument that the statutory elements of "engagement" and "use" were lacking in this case. Had appellate counsel considered the government's

position in *United States v. Carroll*, 227 F.3d 486 (5th Cir. 2000), she would have seen that the government conceded that a minor must do something to be engaged, and that sleeping is insufficient. The government cannot take a position in the Fifth Circuit but a totally inapposite position in an Arizona district court. Further, even though the Ninth Circuit had yet to weigh in on that issue, neither counsel raised an argument that the rule of lenity required the courts to resolve any ambiguity in § 2251(a) in Cotterman's favor. *See Liparota v. United States*, 471 U.S. 419 (1985).

## CLAIM VI

**COTTERMAN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING WHEN TRIAL AND APPELLATE COUNSEL FAILED TO SEEK A SENTENCING ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY.**

Trial and appellate counsel never objected to the P.O.'s determination that Cotterman was not entitled to a three-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, even though the P.O. acknowledged that Cotterman accepted full responsibility after trial. The PSR stated:

> It does not appear that the defendant did anything to clearly demonstrate acceptance of responsibility prior to trial. He is therefore not eligible for a reduction under U.S.S.G. § 3E1.1. Nevertheless, during the presentence interview, the defendant acknowledged that there are no excuses for what he did. He has worked hard to gain insight into his reasoning and wrong thinking. It pains him greatly that he has lost family relationships over the incident. He expresses remorse and self-reproach. He admits that he betrayed his granddaughter's trust and abused his caretaker's responsibility.

(Ex. M, p.5, ¶ 20).

Even though Cotterman elected to go to trial, there are a number of factors here that supported an adjustment for acceptance of responsibility. First, his trial was tantamount to a guilty plea: he stipulated to all the incriminating factual evidence, took a bench trial, and did not testify. He stipulated that it was his hand in the photographs, and that he owned the camera and computer that the photographs were discovered on, thereby establishing ownership, possession, and identity. These stipulations made it difficult, if not impossible, for Cotterman to be found not guilty on most of the counts. The stipulation also relieved the government of its burden to call witnesses and produce evidence of the 1992 prior bad acts, the Australian arrest, the stop at the border, the content of the photographs, etc., leaving little that the government had to prove at trial.

Second, Cotterman's bench trial lasted all but a few hours and saved the government considerable expense and inconvenience. He never took the stand and denied the charges; trial counsel simply argued that the conduct did not satisfy the elements necessary to convict him of counts 1 and 2. *See* § 3E1.1, app. n.2 (acceptance of responsibility adjustment appropriate where defendant goes to trial to assert and preserve issues unrelated to factual guilt). The facts in this case constitute one of those rare occasions where an acceptance of responsibility adjustment is appropriate. Even though Cotterman elected to go to trial, he did not contest the evidence or deny factual guilt; instead, he only challenged the applicability of the charged statute to his conduct. *Id.*

Third, Cotterman also voluntarily waived extradition from Australia. At that time, he was aware he was facing a lengthy prison sentence, but nevertheless cooperated by voluntarily returning to the United States and by providing information to law enforcement

in Australia. The information he gave provided insight into how he obtained a false passport and documents, and eventually led to an investigation and potential arrests and convictions of other individuals. (Ex. E, ¶ 15). These are yet further examples of Cotterman's cooperation in assisting the government in prosecuting his own conduct, and the conduct of others. *See* § 3E1.1(b)(2); *see also Blaylock*, 20 F.3d at 1467-68.

Fourth, it is clear from Cotterman's comments after trial that he felt remorse and accepted responsibility. (Ex. AE) (acknowledging there were no excuses for his actions and that he betrayed his granddaughter's trust, explaining how his family had helped him learn and grow past his misguided beliefs and how deal with his regret and remorse, and apologizing to his granddaughter). He also made similar statements during his presentence interview. (Ex. M, ¶ 20). During sentencing, Cotterman apologized to his granddaughter and expressed his deep regret for "the betrayal of trust and the distress [he] caused when [he] did not respect [his grandaughter's] space." (RT 9/29/14, Sentencing, pp. 6, 14).

In light of Cotterman's letter, presentence interview, and statements at sentencing, trial counsel should have argued that he was entitled to an adjustment for acceptance of responsibility. The guidelines and the caselaw make clear that defendants can receive an adjustment for acceptance of responsibility notwithstanding that they elected to go to trial. *See* § 3E1.1, cmt. n.2; *United States v. Mohrbacher*, 182 F.3d 1041, 1052 (9th Cir. 1999) (defendant who contests factual guilt at trial may, under some circumstances, be entitled to acceptance of responsibility adjustment). Section 3E1.1 clearly allows an acceptance of responsibility adjustment, even if the defendant elected to go to trial. Its commentary provides as follows:

Conviction by trial, however, does not automatically preclude a defendant from consideration for [a § 3E1.1] reduction. In rare situations a defendant may clearly demonstrate acceptance of responsibility for his criminal conduct <u>even though he exercises his constitutional right to a trial.</u> This may occur for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to . . . challenge . . . the applicability of a statute to his conduct).

Despite § 3E1.1(a)'s clear applicability, trial counsel never argued Cotterman should receive a downward adjustment for acceptance of responsibility. Because the unique facts of this case supported such adjustment, he was ineffective in failing to raise the argument.

Appellate counsel similarly failed to raise the issue on appeal because she believed Cotterman was precluded from receiving a § 3E1.1 adjustment. According to appellate counsel, she understood that "*in some circumstances*, a defendant can receive the reduction *despite* going to trial," however, it is her belief that "genuine remorse for harming a victim, without more, can[not] be deemed 'acceptance of responsibility.'" (<u>Ex. W</u>, ¶ 4). It is her opinion that "a defendant must express responsibility for having committed at least the basic elements of the charged offense(s) as defined by statutory law and precedent." (*Id.*). Because Cotterman did not admit that the photographs and video were "in fact child pornography as defined by the elements of the charging statutes, the Sentencing Guidelines and commentary, and pertinent and relevant case law," she determined that she could not make a viable argument that Cotterman was entitled to a two-level adjustment for acceptance of responsibility. (*Id.*)

Appellate counsel is incorrect in her assessment of the adjustment's availability. Application note 2 makes clear that the adjustment may be available even when the defendant goes to trial to "challenge the applicability of a statute to his conduct." § 3E1.1,

app. n.2; *cf. United States v. Ransbottom*, 914 F.2d 743 (6th Cir. 1996) (maintaining innocence throughout trial does not prevent court from finding acceptance of responsibility, particularly when challenge is made to applicability of statute to defendant's conduct). That is precisely what Cotterman did here. He admitted that he took the photographs, that it was his hand in the photographs, and did not put on a factual defense, but went to trial to assert a defense that the nature of the photographs did not meet the statutory elements of § 2251(a). In other words, he admitted to the central factual allegations and only challenged the legal applicability of charged statute. The plain language of the application note belies appellate counsel's belief that it is only available when a defendant admits that his behavior satisfied the "elements of the charging statutes." (Ex. W, ¶ 4). A defendant is not barred from obtaining a § 3E1.1(a) adjustment when he exercises his constitutional right to trial in that manner that Cotterman did in this case.

Appellate counsel was ineffective for failing to recognize § 3E1.1(a)'s availability under the unique circumstances presented here, and in failing to raise the issue on appeal. *Mohrbacher*, 182 F.3d at 1052; *see also United States v. Johnson*, 956 F.2d 894, 904 (9th Cir. 2002); *cf. United States v. Ochoa-Gaytan*, 265 F.3d 837, 842-45 (9th Cir. 2001) (adjustment for acceptance of responsibility may not be denied based on attempt to suppress evidence). Ninth Circuit caselaw is replete with examples of non-pleading defendants having their cases remanded for resentencing to determine whether the facts warranted an adjustment for acceptance of responsibility. *See United States v. Cortes*, 299 F.3d 1030, 1038-39 (9th Cir. 2002) ("If Cortes manifested appropriate contrition, exercise of his constitutionally protected rights cannot be held against him"; "[a]lthough a guilty

plea is undoubtedly significant evidence of an acceptance of responsibility, if Cortes otherwise demonstrated sincere contrition, he remains eligible for the reduction."); *United States v. Hill*, 953 F.2d 456, 461 (9th Cir. 1991) (imposition of acceptance of responsibility adjustment not clearly erroneous where defendant did not accept responsibility until eleventh hour); *United States v. McKinney*, 15 F.3d 849 (9th Cir. 1994); *Ochoa-Gaytan*, 265 F.3d at 842-45. These cases make clear that adjustment cannot be denied, as a matter of law, simply because a defendant exercised a constitutional right to which he was entitled.

In *Hill,* the defendant apologized to the court and the government, deeply regretted what he did, said it was stupid, stated it cost him his profession and the respect of a lot of people, and indicated he was sorry. 953 F.2d at 461. There, the court granted the reduction for acceptance of responsibility even though it was at the eleventh hour. *Id.* Similarly, here, Cotterman showed genuine contrition through his words after trial and, more importantly, through his actions, before and during trial. Cotterman was prejudiced by appellate counsel's failure to raise the issue because his case was one of those rare trial cases that called for a sentence reduction based on acceptance of responsibility.

In sum, Cotterman was denied effective assistance of counsel when trial counsel failed to object to the PSR's denial of an adjustment for acceptance of responsibility, and when appellate counsel failed to raise this plain error on appeal. *Cf. United States v. Vargem*, 747 F.3d 724, 729 (9th Cir. 2014) (noting "there is little reason not to correct plain sentencing errors when doing so is so simple a task," which does not require defendant be released or retried), *quoting United States v. Tapia*, 665 F.3d 1059, 1063 (9th Cir. 2011); *see also United States v. Bonita-Guizar*, 729 F.3d 1179, 1189 (9th Cir. 2013); *United States*

*v. Castillo Marin*, 684 F.3d 914 (9th Cir. 2012).  Had trial counsel timely requested a §
3E1.1 adjustment, the district court would have considered the appropriateness of the
adjustment at sentencing, and Cotterman may have received a reduced sentence.
*Strickland*, 466 U.S. at 687-88, 694.  If the stipulation agreed to by trial counsel was not
ineffective assistance of counsel (Claim IV), then the results of the conviction in saving
the government time, expense and effort in proving its case must be credited to Cotterman
pursuant to § 3E1.1(a) and (b)(2).  He asks that this Court hold a hearing to determine
whether he is entitled to a two- or three-point downward adjustment for acceptance of
responsibility.

## CLAIM VII

**COTTERMAN WAS DENIED HIS SIXTH AMENDMENT RIGHT
TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL
COUNSEL FAILED TO PERFORM COMPETENTLY AT HIS
MOTION TO SUPPRESS, FAILED TO FILE PRETRIAL MOTIONS
OR A TRIAL BRIEF, AND FAILED TO MAKE AN OPENING
STATEMENT, EFFECTIVELY CROSS EXAMINE THE
GOVERNMENT'S WITNESSES, OR EFFECTIVELY REPRESENT
HIM AT SENTENCING.**

In this claim, Cotterman alleges numerous other instances of trial counsel's
ineffectiveness, some of which are sufficient in themselves to merit a new trial, while
others should be considered cumulatively, as they depict trial counsel's overall
ineffectiveness and support Cotterman's separate claims.  *See Boyde v. Brown*, 404 F.3d
1159, 1176 (9th Cir. 2005), *amended by* 421 F.3d 1154 (9th Cir. 2005) (though court
analyzes each ineffective assistance claim separately to determine whether counsel was
deficient, "prejudice may result from the cumulative effect of multiple deficiencies"); *see*

*also Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (even where no single error resulted in prejudice, cumulative effect of "several substantial errors" may nevertheless be so prejudicial as to require remedy).

MOTION TO SUPPRESS

Trial counsel was ineffective in failing to develop and preserve the record at the suppression hearing as to the reasonable suspicion issue. His motion to suppress really only addressed whether the seizure of Cotterman's computer at the Lukeville POE, and its subsequent search in Tucson, was within the scope of the border search exception. He did not adequately address the lack of reasonable suspicion. Ultimately, the Ninth Circuit's opinion centered around whether there was reasonable suspicion at the time of the seizure. *See Cotterman*, 709 P.3d 952. As a result, Cotterman's counsel for the interlocutory appeal was handcuffed by trial counsel's ineffectiveness in developing the record in connection with the motion to suppress.

It is clear that the Ninth Circuit thought it was a close case as to the reasonable suspicion issue, and a more fully developed record may have swayed the court to come out in Cotterman's favor. *See Cotterman*, 709 F.3d at 992 (Smith, J., dissenting) (factors cited to establish reasonable suspicion "were far too generalized to provide even an indicia of suspicion that Cotterman was involved in sex tourism"). For instance, a factor relied upon by the Circuit was Cotterman's frequent travel out of the country and possible involvement in child sex tourism. (RT 8/27/08, pp. 11-12). Trial counsel could have easily produced Cotterman's passport at the suppression hearing to refute the government's claim of frequent travel, as he averaged about one trip a year outside the country. He could have

cross-examined Agent Riley to establish this fact or called Cotterman for this purpose. (Ex. E, ¶ 16).

Furthermore, there was no evidence that Cotterman had any contact with law enforcement since his 1991 charges. Nor was there any evidence that he was involved in sexual tourism, or that his computer would contain any evidence of said crimes. Trial counsel should have established these facts at the evidentiary hearing. He also should have asserted that the existence of a password-protected file on Cotterman's computer could not factor into the reasonable suspicion analysis, because that factor was not known until after the seizure had occurred and the search had already begun. Finally, the fact that Cotterman had several electronic items was not suspicious given the length and nature of his travel. There is nothing suspicious about bringing electronic items on an extended retirement trip to Mexico. All of these generalities could have been debunked with a forensic expert and effective cross examination, but trial counsel made no attempt to do so.

Had trial counsel adequately developed the record at the evidentiary hearing, Cotterman's appellate counsel could have made a much stronger showing regarding the lack of reasonable suspicion. Had he done so, there is a reasonable likelihood that the outcome would have been different, given that the *en banc* panel viewed the issue as a close one. *Id.* at 981 (Smith, J., dissenting). Instead, trial counsel's argument at the suppression hearing was almost exclusively focused on challenging the applicability of the routine border search exception. (RT 8/27/09, pp. 145-49). Trial counsel's neglect to make a proper record for appeal on the issue of reasonable suspicion is a factor to consider in evaluating his overall ineffectiveness in representing Cotterman.

Trial counsel filed a one-and-a-half-page pleading entitled Notice of Motions, which set forth the motions he intended to file in anticipation of trial. (Ex. B). He also indicated he intended to file a motion to preclude other acts evidence. *See* Fed. R. Evid. 404(B). Even though the government disclosed prior bad acts that it intended to use against Cotterman at trial, trial counsel made no attempt to preclude it from using those acts against him. *Id.*; Fed. R. Evid. 414 (allowing evidence of older molestations in child molestation case). Nor did he file motions in limine to try to preclude unfairly prejudicial information, such as Cotterman's departure to Australia, or references to the false documents found in his possession. (Ex. K, Govt's Trial Br., p. 6, ll. 9-14; RT 6/11/14, pp. 12, 19 & 30).

The government informed trial counsel that it intended to introduce other act evidence in its trial brief, which was submitted one day before trial. Trial counsel did not submit a trial brief—another example of his ineffectiveness—or object to the untimely nature of the government's request. Nevertheless, even though trial counsel was unaware of the other act evidence that the government intended to introduce, he did not object based on Rule 404(b) or lack of notice. When the trial court asked trial counsel his position regarding the other act testimony, he responded:

> Your Honor, this is not a jury matter, so for Your Honor to get a 403 determination if the prejudicial effect outweighs the probative matter, you'll have to look at it. . . .

> And so I may be, for the record, asserting 403, but ***I'm not exactly certain what all they're going to try to introduce***, so I'll, as it comes up, if it's necessary, I'll object for the record.

(RT 6/10/14, p. 5, l. 22; p. 6, ll. 1-3, 9-13). It appears from this comment that trial counsel was not aware that he could attack the other act evidence before asserting the prejudicial nature of such testimony. *See*, *e.g.*, *United States v. Spillone*, 879 F.2d 514 (9th Cir. 1989) (to admit other act evidence, there must be sufficient evidence that defendant committed other act, it must not be too remote, there must be similarity, and it must be introduced to prove material element).

Trial counsel was ineffective for not challenging the evidence and facts surrounding the 1992 convictions, as well as other unproven other acts, for example, brushing sand off pubic area, which Cotterman emphatically denied to trial counsel. (<u>Ex. E</u>, ¶ 6). The 1992 acts were far too remote in time and dissimilar and should have been challenged. *See* Fed. R. Evid. 404(b); *see also Spillone*, 879 F.2d at 518-20. The government would have been hard pressed to sufficiently prove many of these facts, particularly without the ill-advised stipulation and the concession of admissibility by trial counsel. Several of the allegations pertaining to Cotterman's granddaughter were vague, and involved nebulous facts that she had recalled at later dates. (RT 9/29/14, p. 17; RT 6/10/14, pp. 152-153). They should have been challenged by trial counsel.

THE TRIAL

Next, trial counsel failed to effectively cross examine the government's witnesses at trial. He allowed the prosecution, without objection, to present a "grooming argument" and did not object when the prosecutor depicted Cotterman as a "wolf in sheep's clothing." Cotterman did not groom the victim. Though he gave her gifts, he did so because she was his grandchild, as he did with all his grandchildren from the time they were born. (<u>Ex. E</u>,

¶ 6).  Furthermore, Cotterman provided financial assistance to his son and the victim's mother because they were having financial difficulties; the help had nothing to do with the charges or any attempt to groom the victim.  Trial counsel did nothing to dispel this prejudicial picture of Cotterman that the government painted for the Court.

Trial counsel could have challenged the government's characterization by presenting financial records or permitting Cotterman to testify regarding his version of the facts.  Even while the case was pending, Cotterman's son attempted to extract financial favors from him in exchange for the possibility of leniency; his son indicated that if Cotterman was willing to finance a two bedroom apartment and a reliable vehicle for him and his family, he and the victim's mother would put a good word in for him at sentencing.  (Ex. E, ¶ 14).  Trial counsel also should have objected when the victim's mother testified about the victim's bedwetting in attempt to connect it with the charges, when there was no connection.

Trial counsel never obtained the victim's school, psychological, or mental health records, which documented her preexisting behavioral issues, to show they were not caused by Cotterman, and he never objected on the grounds that they were only introduced to improperly invoke sympathy for the victim.  Her mother was also permitted, without objection, to testify that after her daughter was interviewed by the agents, and even though she denied any inappropriate behavior by Cotterman, she felt that something bad had happened to her daughter. (RT 6/10/14, p. 138, ll. 4-5).  Trial counsel also should have challenged the victim regarding some of the inconsistencies in her testimony.  She originally claimed she sometimes awoke with no underwear when she was with Cotterman,

but later changed her testimony to say it occurred every time. (Ex. E, ¶ 6). She also testified that she recognized Cotterman in the photographs by the sunspots on his hand, however, when she was originally interviewed, she told the agents she recognized him by the hair on his hands. (RT 6/10/14, p. 160, ll. 4-5; Ex. AF, Dept. of Homeland Security Rpt). The fact that the agents believed he was recognized by his sunspots, suggests the victim, with prompting, had changed her testimony. (*Id.*) Trial counsel objected to none of this problematic testimony.

Agent Owen testified that Cotterman boarded a flight to Mexico, and ultimately Australia, and had obtained false identification documents. Trial counsel agreed to admit this testimony as part of the ill-advised stipulation, but should have challenged it in a pretrial motion to preclude that prejudicial and irrelevant evidence. Had trial counsel been successful in doing so, that would have been another reason to avoid a bench trial. This is yet another example of trial counsel making no effort to preclude harmful evidence because of his belief that it would be futile in light of his bench trial election. Trial counsel also should have obtained a forensic tech expert to challenge Agent Owen's testimony and to corroborate some of Cotterman's claims. Cotterman attempted to prevent pornographic material from downloading to his computer, and an expert could have guided trial counsel as to the effect of the destruction of the computer and other areas which trial counsel was undoubtedly unfamiliar. (Ex. E, ¶ 6). The prosecutor argued this evidence in her closing argument along with other un-objected-to comments, such as her own experience with her grandfather's ring and what the victim feels when she sees sunspots on hands or goes to a

hotel or goes to sleep. (RT 6/11/14, p. 8-9). Further, the prosecutor argued that Cotterman "preyed" upon the victim every chance he got. (RT 6/10/14, p. 16, ll. 13-14).

Trial counsel made no opening statement, which is an effective tool, and did not even make a motion for a directed finding. Had he done so and had the district court denied the motion, he would have been on notice that Cotterman's testimony, or at least some sort of defense, was absolutely necessary. However, by now, it is clear that trial counsel never intended to call Cotterman or any witnesses on his behalf, particularly since trial counsel never prepared anyone for trial testimony. Similar to his views on a jury trial, it appears he considered putting on any witnesses a waste of his time. His closing argument was also ineffective, as he barely raised any of the legal issues that he had identified as being his strongest arguments. (RT 6/11/14, pp. 23-27).

## GUIDELINE INFORMATION

Trial counsel never filed a request for disclosure of guideline information. (Ex. B, p. 2). This is but another example of his ineffectiveness in failing to follow through with his representation of Cotterman. Had trial counsel requested guideline information, he would have learned that Cotterman's prior felonies were not predicate felonies for a § 3559(e) enhancement, and he could have enlightened the government about its unavailability and the legal insufficiency of its notice of prior convictions. Not only would this have strengthened Cotterman's bargaining position during the plea negotiations, but it also likely would have dissuaded trial counsel from advising him to take a bench trial to avoid the government's use of his prior felonies.

Trial counsel all but abandoned Cotterman at sentencing. His argument was short (encompassing a single page of transcript), he did not object to the guideline calculations, his sentencing memorandum was two-and-a-half pages, and he did not correct the PSR regarding the 1992 convictions. He also failed to object to the PSR's citation to the "facts" from his 1992 state presentence report, which stated Cotterman "penetrated one of the victim's vaginal opening with his finger." (Ex. M, p. 7). *Cf. United States v. Castillo-Marin*, 684 F.3d 914, 919-20 (9th Cir. 2012) (district court may not rely on PSR's factual description of prior offense in sentencing decisions). In pleading guilty to those charges, Cotterman had stipulated to taking photographs of young children, but never admitted to penetrating one of the victims. In fact, he emphatically denied it, and his denial was supported by the police report and the court record. (Ex. E, ¶ 6). The PSR's allegation was extremely harmful because it was similar to the conduct charged in the instant case, yet trial counsel never objected to it before or during sentencing.

The district court "may not rely on a PSR's factual description of a prior offense to determine whether the defendant was convicted of a crime of violence [sexual offense] notwithstanding the defendant's failure to object to the PSR." *Castillo-Marin*, 684 F.3d at 919; U.S.S.G. § 2L2.2(b)(1)(A)(iv); *see also United States v. Davila-Felix*, 667 F.3d 47, 57 (1st Cir. 2011) (PSR in subsequent case ordinarily cannot be used to prove details of offense conduct underlying prior conviction). Here, the 1992 PSR appears to have been the source of information for the instant PSR writer's description of the acts underlying the 1992 prior convictions. (Ex. M, p. 7). The PSR writer could use the actual conviction and

statutory definitions of a prior offense, but not any "facts" of the underlying offense, let alone "facts" that were not verified and were contrary to the actual police reports. *See United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011); *Shepherd v. United States*, 544 U.S. 13 (2005). Yet, trial counsel never objected to this at sentencing.

Trial and appellate counsel were prejudicially ineffective for failing to object to use of that evidence in the PSR, and in not raising it on appeal as plain error. *Olano*, 507 U.S. 725. Plain error is proven by demonstrating error occurred, (PSR writer relied on facts from earlier PSR), and affected Cotterman's substantial rights (evidence, which was unfairly prejudicial and inaccurate, could not be used, but was contained in PSR). Finally, the error seriously impaired the fairness and integrity of the judicial proceedings, as it affected his sentence and was referenced by the Ninth Circuit in emphasizing his criminal history. *See United States v. Cotterman*, 619 Fed. Appx. 654, 655 (9th Cir. 2015) (mem. decision); *cf. United States v. Dominguez-Benitez*, 542 U.S. 74, 81 (2004). The district court adopted the PSR writer's recommendation that the sentences run concurrent, and imposed 30 years' imprisonment for the production charges. However, after reading the PSR, it tacked on an additional five years by running Count 6 consecutive to the 30 years imposed on the other charges.

Trial counsel was also ineffective in failing to present any mitigating information to the district court, and in failing to argue for any sentencing variances, adjustments, or departures under the Sentencing Guidelines. For instance, trial counsel never requested an independent psychiatric examination, even though it could have provided some insight into Cotterman's behavior, and Cotterman had asked that one be conducted. (Ex. AG, Letter

from Donau to Cotterman, 5/23/08). Had the examination been favorable, it might have persuaded the district court to impose a reduced sentence. Trial counsel also failed to submit Cotterman's earlier, favorable psychological reports until after sentencing—and only for purposes of determining where he would serve out his sentence—even though they also contained mitigating information. Trial counsel also should have highlighted for the Court Cotterman's substantial assistance to the government—both in prosecuting himself and aiding in the potential prosecution of others—and his impressive work history and ongoing financial contributions to his family.

Next, trial counsel argued that fifteen years was an appropriate sentence because Cotterman's age made it likely that he would die in prison, but said nothing further on this factor. *See* U.S.S.G. § 5H1.1 (age may be reason to depart downward if defendant is elderly and infirm); *see also United States v. Hildebrand*, 152 F.3d 756 (8th Cir. 1998) ("age may be a reason to impose a sentence below the guidelines range when defendant is elderly and where he may be infirm."). Cotterman was 67 years old when he was charged, and was 74 years old when he was sentenced. Trial counsel should have argued that his age and condition warranted a downward departure. *See* § 5H1.1. He also should have explored whether Cotterman had any medical issues or physical condition that warranted departure. *See* § 5H1.4. These factors were not raised by trial counsel.

Trial counsel submitted letters from Cotterman, his wife, and son, but he never scrutinized Cotterman's letter, and should not have allowed it to be filed in its submitted form. As submitted, the letter was more harmful than helpful because it attempted to explain matters that should have been raised at trial, but that were irrelevant for sentencing

purposes. Trial counsel produced no letters of reference or information on Cotterman's long and successful employment record, which was worthy of consideration pursuant to § 5H1.5. (Ex. E, ¶ 13). Further, trial counsel never made a proportionality argument to other similar situated defendants. *See, e.g.*, *United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996) (defendant received 70 months under similar circumstances to facts presented here); *see also United States v. Ray*, 930 F.2d 1368, 1373 (9th Cir. 1990) ("Disparity was said to be one of the most important evils the guidelines were intended to cure.").

**CONCLUSION**

Cotterman requests a new trial based on claims II, III, and IV. As to claim I, he asks that the original plea agreement be reinstated so he could plead anew, and as to claim V, he asks that Counts 1 and 2 be dismissed. As to claim VI and the sentencing claim in VII, he requests that the case be remanded for resentencing. Finally, as to the other claims in claim VII, he requests a new trial. For the foregoing reasons, Cotterman requests that this Court grant him a hearing pursuant to § 2255(b) and grant him the requested relief.

RESPECTFULLY SUBMITTED this 6th day of April, 2020.

Law Office of
HERNANDEZ & HAMILTON, PC

By *s/CLAY HERNANDEZ*
CLAY HERNANDEZ
Attorney for Defendant/Petitioner

## <u>CERTIFICATE OF SERVICE</u>

I, Clay Hernandez, do hereby certify that on this 6th day of April, 2020, I electronically transmitted the forgoing documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing was sent to the following recipients:

The Honorable Raner C. Collins
United States District Court

Carmen F. Corbin, Assistant
United States Attorney's Office

Clay Hernandez
Attorney for Defendant/Petitioner

By *s/Clay Hernandez*
    CLAY HERNANDEZ