# EXHIBIT E

**AFFIDAVIT**

STATE OF OREGON :
                :   ss.
COUNTY OF _____ :

1.      My name is Howard Cotterman and I was the defendant in CR07-01207 TUC RCC in the United States District Court, District of Arizona. During all matters in district court, I was represented by retained counsel Alfred (Skip) Donau. During the appellate process, I was represented by court appointed attorney Darla Mondou. My attorney has asked me to attest to facts without argument in support of the claims that he intends to make on my behalf in a 28 U.S.C. § 2255 motion.

2.      Prior to trial, my attorney, Skip Donau, apparently entered into plea negotiations on my behalf. He did this prior to the pretrial motion to suppress evidence in September 2008. I was not aware of the specific negotiations until receiving the entire file after the appeal in October 2015. Upon perusing the file, I noticed that Mr. Donau had been informed by Assistant United States Attorney Judson Mihok of a 12 to 20 year plea offer. I never received knowledge of this plea offer.

3.      Mr. Donau made it very clear on May 23, 2008, that he did not believe it was a good idea for me to have written materials in my cell. He ultimately explained that it could possibly compromise my case or jeopardize my safety should other individuals, particularly inmates, have an opportunity to

view any correspondence and therefore he would not be sending me any correspondence. When I learned of the 12 to 20 year plea offer, I can state that had I known of this offer, I would have accepted it at the time knowing that Mr. Donau had told me that I was facing a potential great deal of time although he was never really specific as to the time. In accepting the sentence, it is clear that I would have hoped for a 12 year sentence and that Mr. Donau would be able to effectively represent me at sentencing and obtain this minimum sentence afforded by the government's plea offer. I never instructed Mr. Donau to terminate plea negotiations at any time, he did this without my consent. I wanted the best plea I could obtain in this case.

4.      I had made numerous inquiries of Mr. Donau as to whether or not my case would be submitted to a judge or to a jury. Mr. Donau, on many occasions, indicated to me that the decisions in the courtroom would be his and not mine and proceeded as if the decision whether the matter would be a jury or a bench was up to him. He never discussed the risk-benefit analysis with me other than suggesting that a jury trial would be a circus. Again, he stated that once in the courtroom, the attorney operates independently. On February 26, 2014, a status conference was held in this case. Mr. Donau originally informed me that the trial date of June 10 was going to be continued at the 2/26/14 hearing. However, what happened was that Mr. Donau did not continue the

trial date and told the judge that this matter was going to be a bench trial. This was the first knowledge I had of Mr. Donau's decision and when I objected, he told me that I need not worry and that if we needed to take a jury trial, we could do that at a later time. In a letter on March 8, 2014  prior to my May 21st letter , I informed Mr. Donau that I had a bad experience in a previous trial and it "seemed to me that a jury could find specific charges less relevant than would a judge." (Exhibit AJ). When he visited me on May 16, 2014, May 30, 2014, and June 4, 2014, before trial, he would not discuss whether this would be a jury trial or a bench trial and whether I would be testifying at my trial. On May 21, 2014, I inquired of Mr. Donau as to when he was going to visit with me to prepare me for my testimony at trial. On the three meetings on the dates above prior to trial, he refused to discuss these matters, and simply read me the government's stipulation and asked me to sign the stipulation. I initially refused because I felt that it was an inaccurate stipulation and inquired why I needed to stipulate. Mr. Donau then became angry and demanded that I sign the stipulation

5.     I had no knowledge that a jury had to be composed of 12 members that had to reach a unanimous verdict. I had no knowledge that I could take part in a jury selection and was never advised of this information by my attorney or by the court prior to signing a jury waiver. I was aware that if I took

a bench trial, that the court would decide my guilt or innocence. Further, had I known these facts, I would not have taken a bench trial and waived a jury trial. As well, if my lawyer had effectively represented and filed proper pretrial motions (motion to dismiss, motion to suppress prior bad acts, motion regarding guideline information, etc.), and I was possessed of the knowledge that these motions would have afforded, I would not have ever taken a bench trial. (Claim II). I would have known that it was a foregone conclusion that it was more than likely the court was going to find me guilty on all charges.

6.     Mr. Donau never informed me that it was my decision, and my decision alone, to testify at my trial. (Claim III).  I accepted my attorney's admonitions that he would operate independently once we were in the courtroom. I truly believed that it was his decision as to whether or not I would testify. I did send him correspondence indicating my desire to testify and to refute many of the issues that might be raised at the time of trial. I informed him that I wanted to testify regarding the alleged "grooming" testimony that was to be offered by the government and that I would explain that I had helped my son and his wife and his family financially years before the time the photographs were taken and this financial aid was not given for the purpose of any sexual activity. I wanted to testify about the 1991 conviction and that there were only possibly two photographs taken, one of the burns on the back of a

young boy who claimed he was abused, and a second photograph of a young

girl who claimed she had some problems in her groin area that may have

included her pubic area which I photographed. I never touched the female's

vagina with my finger and would have denied and explained this to the court or

jury. I would have explained how these photographs were taken and I would've

explained that the three mental health experts that provided reports stated I was

not a pedophile and a danger to society. I would have also explained why I took

the photographs of the complaining witness and the circumstances surrounding

the photographs. This would have included the fact that I never undressed her

and that she usually wore a diaper and had a bedwetting problem and when that

happened and when she went to the bathroom, she never put her clothes back

on and that I never removed them to do any photographing. I would have

testified that the photographs were not for a sexual purpose and that I never

touched her pubic area to remove sand after an outing at the beach. (During the

trial, when this false information was presented and I told Mr. Donau that this

allegation was untrue, he simply stated "it doesn't matter."). I would testify that

this was not true. I would have testified to matters suggested by Agent Owen

and I would have indicated that I did not download any images and texts from

the internet and explained the source of these files. As well, I would have

indicated that I had maintained a log of all my emails and had sent to all the

sources of spam and unsolicited porn demanding that I be dropped from their mailing list and not be sent anything to my computer. Mr. Donau informed me on June 6, 2014, although I had repeatedly asked him to discuss whether I would be testifying, that I would only be testifying if the case was not going well and he would make that decision after the government rested. During the course of the trial, he informed me that the complaining witness's mother did not hurt us. After the government rested, my trial attorney asked for a break to do some further research or to obtain his file, but later returned to the court indicating that he wanted to have the matter continued to the next day and then without any notice to me, simply rested on behalf of the defense. He never gave me any indication whether I was going to testify or not. I can state that he never came to my place of incarceration to discuss my testimony at trial. He has readily admitted in his own statement that he did not prepare me to testify for trial and I can state without reservation or qualification that he never prepared me to testify.

7.     I had made multiple inquiries of Mr. Donau about testifying because I believed it was his decision to determine if I testified. I had always wanted to testify because of the bad experience I encountered in a previous bench trial where I did not testify. During the course of the trial, Mr. Donau informed that the way the case was proceeding, I would probably have the most

serious charges such as production and transportation dismissed but if not dismissed, I would probably be found not guilty of the more serious charges.

8.   I did not address the court at that time because Mr. Donau had repeatedly told me that he operated independently in the courtroom and not to talk in the courtroom as he made it clear that he would do the talking and that's why I have an attorney. Had I known it was my decision whether to testify, I would have testified. In my testimony, I would have further testified that all during the photographing, the complainant was asleep, unaware, and not engaged.

9.   As I indicated earlier, Mr. Donau visited me on three occasions shortly before the trial on 5/16/14, 5/30/14, and 6/4/14, and was there for the express purpose of having me sign the stipulation provided by the government. I did not agree with the stipulation or understand why I needed to sign it and informed him on the first two occasions that I would not sign it. Some minor changes were made and on the third occasion, he insisted that I sign the stipulation. He told me it wouldn't make any difference but I needed to sign it. I was never told what benefit I would receive by signing the stipulation because it appeared to make the government's ability to convict me a lot easier as stated in Claim IV.

10.   As to Claim V, I would have testified that the four photographs

7

were not taken for sexual purposes and were not taken in the context of sexually explicit conduct. I would have also explained that the complaining witness was not engaged in the taking of the photographs as argued in Claim V.

11.   As to Claim VI, it is my view that I expressed my contrition and my remorse to the court and was sincere in doing so. I was also under the impression that Mr. Donau would argue the acceptance of responsibility but it appears that he made no objection to the denial of any acceptance of responsibility points by the probation officer in her written presentence report. To my knowledge, Mr. Donau did not address this matter at the time of sentencing which I believe would have had an effect on my sentencing as argued in Claim VI.

12.   Claim VII makes other ineffective assistance of counsel claims and I can state that I was not aware that these were ineffective assistance of counsel conduct at the time of my trial and relied on by Mr. Donau to make the proper objections and to obtain the proper disclosure for cross examination and all the other claims suggested in Claim VII.

13.   Mr. Donau never discussed with me my employment for purposes of the presentence report. I have always been employed working while in college at Purdue University and for IBM, Terminal Communications, Inc., Leads and Northrup, NCR, Intel, Rockwell International, Logical Business

Systems until 1988 when I started my own real estate company as a real estate broker. As well, I wrote textbooks from 1990 to 1994. From 1994 through 2005, I worked for Center for Systems Management which included the position of president of that company. I also started several other companies and have always been gainfully employed during my whole life.

14.   Further, my son Scott, the father of the complainant, offered to assist in my release and sentencing by speaking to the Assistant U.S. Attorney assigned to the case or whomever he needed to speak with if I helped him obtain a dependable van and a basic two bedroom apartment for himself and his son, Wes. I declined this offer and thought it improper.

15.   I did assist and cooperate with the Australian authorities and gave them information that led to the investigation of individuals that had committed crimes of forgery and falsifying documents.

16.   My passport which was easily obtainable and my testimony would have established that I did not frequently travel. At best, I averaged one vacation a year.

17.   Mr. Donau has indicated in his interview that he never liked me or my wife. I was not aware of his feelings, but in hindsight, it does appear that he was sarcastic and abrupt during all my intercourse with him. After the Ninth Circuit Court of Appeals reversed this Court and I returned, I did have a phone

call with Mr. Donau on February 11, 2014. In that phone call, I believed that he was still my attorney since I had a retainer agreement with him and that he was going to charge me some additional funds for trial. I called him to tell him that I was now incarcerated at CCA and needed to discuss the case with him. He asked me at that point, who will represent you in the district court? I was surprised stating that I assumed that he was still on the case. He informed me that the judge would probably appoint a public defender for me since I'm out of funds. When I asked him if he wanted off the case, he indicated to me that we would have to discuss that further before the February 26, 2014, status conference. He indicated he would move to continue the status conference. He did not talk to me about representation but just appeared in court and did not continue the status hearing but set the matter for a bench trial. When I objected, he told me he would change it later.

Further affiant sayeth not.

_Howard Cotten_____

HOWARD COTTERMAN

SUBSCRIBED AND SWORN TO before me this 29 day of September 2016, by HOWARD COTTERMAN.

_____

NOTARY PUBLIC

My Commission Expires: May 12, 2017

OFFICIAL SEAL
TANYA C BISHOP
NOTARY PUBLIC-OREGON
COMMISSION NO. 477210
MY COMMISSION EXPIRES MAY 12, 2017

10