# EXHIBIT K

JOHN S. LEONARDO
United States Attorney
District of Arizona
CARIN C DURYEE
Assistant U.S. Attorney
CARMEN F. CORBIN
Assistant U.S. Attorney
State Bar No. 025422
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: carmen.corbin@usdoj.gov
Attorneys for Plaintiff

'JUN - 9 2014

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 07-1207-TUC-RCC (CRP) |
|---|---|
| Plaintiff, | |
| vs. | TRIAL BRIEF |
| | **(UNDER SEAL)** |
| Howard Wesley Cotterman, | |
| Defendant. | |

## I.    CHARGES AGAINST THE DEFENDANT

Defendant is charged by indictment with two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1); one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and one count of importation of obscene material in violation of 18 U.S.C. §1462(a). [1]

---

[1] Counts Four and Seven of the Indictment charge the defendant with Receipt of Child Pornography and with Transportation of Obscene Material for sale or distribution, respectively.  The government hereby moves to dismiss counts Four and Seven of the Indictment.

II.   STIPULATIONS

The parties have entered into stipulations which have been filed with this Court. Among other facts, the stipulations establish the following:

1.   On April 6, 2007, the defendant entered the United States from Mexico with a Dell laptop computer, a Pentax Optio MX4 camera, and a FujiFilm FinePIX camera, all of which belonged to him;

2.   That his computer had been manufactured with materials that had traveled in interstate and foreign commerce, and had itself traveled in foreign commerce by virtue of the fact that it traveled into Mexico and then back into the United States with the defendant;

3.   That the Pentax Optio MX4 camera, the FujiFilm FinePIX E510 camera, and an Olympus Optical Co. Ltd., C2Z, D520Z, C220Z were all manufactured with materials that had traveled in interstate and foreign commerce;

4.   That the images and video files charged in the indictment were all located on the hard drive of the defendant's computer in allocated, password-protected space;

5.   That the images and videos depict actual children under the age of 18;

6.   That the images and videos were produced with materials that had traveled in interstate and foreign commerce, and had themselves traveled in foreign commerce by virtue of the fact that the hard drive containing the files had traveled into Mexico and then back into the United States with the defendant;

7.   That stored on the computer were 300 stories describing sexual conduct with children and incest, and that the defendant knew these stories were on his computer;

8.   That metadata on Exhibit 3 indicates it was taken with a Pentax Optio MX4 camera;

9.   That there are images of children on the defendant's computer with metadata indicating they were created with a FujiFilm FinePIX E510 camera, and also

1   images with metadata indicating they were created with an Olympus Optical Co. Ltd.,

2   C2Z, D520Z, C220Z (many of which are charged in the indictment);

3       10.   That three days after ICE seized his computer for examination, the

4   defendant left to Australia, where he was ultimately arrested with false identification and

5   false passport documents, in September 8, 2007.

6       The parties also have stipulated that the transcripts of the Motion to Suppress and

7   Evidentiary Hearing held in the matter on August 27, 2008 shall be received in evidence,

8   along with the exhibits received in evidence at that hearing.  Copies of the transcripts and

9   the exhibits referenced within are attached hereto as Exhibit "A."

10

11   **III.   STATEMENT OF FACTS**

12       1.   <u>Events at the Port of Entry</u>

13       At approximately 10:00 a.m. on Friday, April 6, 2007, the defendant, Howard

14   Cotterman, a United States citizen, and his wife, Maureen Cotterman, arrived at the

15   Lukeville POE in Arizona in their personal vehicle.  Based on information they received

16   from an intelligence unit that targets convicted and registered sex offenders who travel

17   abroad regularly, Customs and Border Protection (CBP) Officers referred the Cottermans

18   to secondary inspection, where record checks confirmed that the defendant had multiple

19   felony sex offense convictions out of California, in Santa Clara County.  Specifically,

20   Cotterman had been convicted in 1992 of, among other charges, two counts of use of a

21   minor in sexual conduct, two counts of lewd and lascivious conduct upon a child, and

22   three counts of "annoy/molest" a child, all in violation of California Penal Codes.

23       A search at secondary inspection revealed that the defendant and his wife

24   possessed two Dell laptop computers, a Pentax Optio digital camera, a SONY video

25   camera, and a Fuji Film E510 camera.  A preliminary search of one of the Dell laptop

26   computers by CBP Officer Alvarado revealed that several files were password protected.

27

28

1   The Immigration and Customs Enforcement (ICE) duty agent was notified and responded
2   to investigate further.

3        The defendant and his wife left the Lukeville POE late in the afternoon on April 6,
4   2007.   The video camera and Fuji camera were reviewed and released to them before
5   their departure.   Both Dell laptops and the Pentax digital camera were retained for
6   forensic examinations and transferred from the Lukeville POE to the ICE Office in
7   Tucson.   There, ICE agent and computer forensic examiner John Owen began his
8   forensic examination on Saturday, April 7, 2007.

9        2.   <u>Preliminary Forensic Examination</u>

10       Over the course of the weekend, there was repeated telephonic contact between
11  ICE agents and the Cottermans about the status of the examinations.   On Saturday, the
12  forensics examination of the Pentax Optio digital camera was completed with negative
13  results.   The Cottermans responded to the ICE office in Tucson on Saturday afternoon,
14  and the defendant signed the property receipt form and took possession of the digital
15  camera.   The forensic examinations were still in progress on the Dell laptop computers at
16  that time, so they were not released.

17       On Sunday, April 8, 2007, the forensic examination of the Dell laptop computer
18  belonging to the defendant resulted in the discovery of approximately 75 child
19  pornographic images in unallocated clusters.   There were also numerous password
20  protected .zip files in folders on that same hard drive.   ICE agents contacted the
21  defendant on his cell phone and asked him to come to the ICE office the next day, on
22  Monday, April 9, 2007, at 9:30 a.m., to assist the forensics examiner in completing the
23  examination to return his laptop to him.   Agents did not mention the images of child
24  pornography that had been discovered.   The defendant agreed to come to the office on
25  Monday morning.

26       3.   <u>Defendant's Flight from the United States</u>

27
28                                    - 4 -

1     The defendant did not appear at the ICE office on Monday morning as agreed.

2    Instead, Mrs. Cotterman arrived at the ICE office that morning and her laptop was

3    returned to her.  Meanwhile, the defendant boarded an Aeromexico flight on Monday

4    from Tucson to Hermosillo, Mexico.  His intended destination was Sydney, Australia, via

5    Ciudad Juarez, Vancouver and Tokyo.  Cotterman arrived at the Sydney International

6    Airport on the morning of April 12, 2007.

7

8    4.    <u>Further Examination of the Laptop & Discovery of More Child</u>

9    <u>Pornography</u>

10    On April 11, 2007, Agent Owen was able to access the 23 password protected .zip

11    files on one of the hard drives on Cotterman's computer.  He found approximately 378

12    images and eleven video files of child pornography.  Approximately 360 of the 378

13    images of child pornography and all eleven videos depicted the same nude or partially

14    nude female, approximately seven to ten years old.  In a number of the images, an older

15    man, who appeared to be the defendant, was touching and manipulating the child's

16    genitals and pubic area.  Further analysis revealed the presence of an additional 1206

17    images of child pornography on the same hard drive, as well as approximately 309 stories

18    of sexual abuse and acts of incest involving minors.

19

20    5.    <u>California Search Warrant</u>

21    On or about April 13, 2007, a search warrant was executed at the defendant's

22    residence in Truckee, California.  A number of items, including 415 CDs, 202 3.5' floppy

23    diskettes, zip disks, back-up tapes and a number of computers were seized.  Examination

24    of those items revealed over 330 images and eighteen videos of child pornography that

25    appeared to involve the same victim being abused by the defendant.

26    6.    <u>Identification of the Victim & Defendant's Extradition from Australia</u>

27

28    <center>- 5 -</center>

On April 25, 2007, U.S. law enforcement authorities identified and interviewed the minor female victim who was being abused in the images and videos. During the interview, the minor victim confirmed that Howard Cotterman was her grandfather, that she had been on trips with him, that he had sexually abused her, and that he had memorialized that abuse in photographs and videos. The victim's mother also confirmed that the defendant was her father-in-law and the victim's grandfather, that her daughter had been on trips with him, and that (after looking at some of the images found on the defendant's computer) her daughter was the female victim depicted in the images.

On September 8, 2007, Australian law enforcement authorities arrested the defendant in Coffs Harbour, Australia, pursuant to a United States provisional arrest warrant, and the defendant was returned to Arizona. At the time of his arrest, the defendant had in his possession five California Driver Licenses, four of which were in false names. In addition, the defendant had in his possession three U.S. passports, two of which were in a false name. (*See* Stipulations of Fact, doc. #117, paragraph 18.)

## IV.   ELEMENTS OF THE OFFENSES

### A.   *Production of Child Pornography [18 U.S.C. § 2251(a)]*

Counts one and two of the indictment charge the defendant with production of child pornography, in violation of 18 U.S.C. § 2251(a). To establish that offense, the government must prove the following elements beyond a reasonable doubt: (1) at the time of the offense, the victim was under the age of eighteen; (2) defendant employed, used, persuaded, induced, or enticed her to engage in sexually explicit conduct as defined in 18 U.S.C. § 2256(2) for the purpose of producing a visual depiction of such conduct; and (3) the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or was actually transported or transmitted using any

1  means or facility of interstate or foreign commerce, or in or affecting interstate or foreign

2  commerce.  18 U.S.C. § 2251(a); Model Jury Instructions for the Ninth Circuit, § 8.181

3  (2014).

4      The term "sexually explicit conduct" means actual or simulated sexual intercourse

5  (including  genital-genital,  oral-genital,  anal-genital,  or  oral-anal),  bestiality,

6  masturbation, sadistic or masochistic abuse, and the lascivious exhibition of the genitals

7  or pubic area of any person.  18 U.S.C. § 2256(2).  In determining what constitutes a

8  "lascivious exhibition," courts generally look to six factors:

9      1)  whether the focal point of the visual depiction is on the child's genitalia or

10         pubic area;

11     2)  whether the setting of the visual depiction is sexually suggestive, i.e., in a

12         place or pose generally associated with sexual activity;

13     3)  whether the child is depicted in an unnatural pose, or in inappropriate attire,

14         considering the age of the child;

15     4)  whether the child is fully or partially clothed, or nude;

16     5)  whether the visual depiction suggests sexual coyness or a willingness to

17         engage in sexual activity;

18     6)  whether the visual depiction is intended or designed to elicit a sexual

19         response in the viewer.

20  United States v. Overton, 573 F.3d 679, 686 (9th Cir. 2009); United States v. Dost,

21  636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Weigand, 812

22  F.2d 1239 (9th Cir. 1987).  The factors "are neither exclusive nor conclusive, but operate

23  as merely 'a starting point' for determining whether a particular image is 'so presented by

24  the photographer as to arouse or satisfy the sexual cravings of a voyeur.'"  Overton, 573

25  F.3d at 686 (citation omitted).  The fact-finder should not be made to rely on the so-called

26  Dost factors "with precision to reach a mathematical result, or to weigh or count them, or

27

28                                       - 7 -

1    to rely on them exclusively." *Id.* at 686-87 (internal quotation marks and citation

2    omitted). *Dost* itself recognizes that a visual depiction "need not involve all of these

3    factors to be a 'lascivious exhibition of the genitals or pubic area.'" 636 F. Supp. at 832.

4    Rather, the determination is made "based on the overall content of the visual depiction,

5    taking into account the age of the minor." *Id.*[2]

6            Section 2251 prohibits "the inducement of children into sexual conduct for the

7    purpose of creating visual depictions of that conduct." *United States v. Smith*, 795 F.2d

8    841, 845 (9th Cir. 1986). Section 2251 does not require "that the defendant's ultimate

9    goal be distribution of the visual depiction." *Id; See also United States v. McCalla*, 545

10   F.3d 750, 755 (9th Cir. 2009) (§ 2251(a) "criminalizes the production of 'homegrown'

11   child pornography"); *United States v. Griffith*, 284 F.3d 338, 347 (2d Cir. 2002) ("§

12   2251(a) does not require that a defendant produce the sexually explicit depiction for

13   commercial gain"). Nor is a completed visual depiction even required; § 2251 "does not

14   require the actual production of a visual depiction, merely the enticement of minors '*for*

15   *the purpose of producing'* a visual depiction of sexually explicit conduct." *Smith*, 795

16   F.2d at 846 (emphasis in original).

17           Interstate nexus under § 2251(a) can be proved in any of three ways: by proof that

18   the defendant "knows or has reason to know" that the visual depiction "will be

19   transported or transmitted using any means or facility of interstate or foreign commerce";

20   by proof that the visual depiction "was produced or transmitted using materials that have

21   been mailed, shipped, or transported in or affecting interstate or foreign commerce by any

22   means, including by computer"; or by proof that the visual depiction "has actually been

23

24   _____

25           [2] The term "visual depiction" includes "undeveloped film and videotape, and data
     stored on computer disk or by electronic means which is capable of conversion into a
26   visual image." 18 U.S.C. § 2256(5). It expressly includes such things as graphic image
     files stored on a computer disk or electronic storage medium. *United States v. Hockings*,
27   129 F.3d 1069, 1071-72 (9th Cir. 1997).

28                                                   - 8 -

1   transported or transmitted using any means or facility of interstate or foreign commerce

2   or in or affecting interstate or foreign commerce." *United States v. Sheldon*, 730 F.3d

3   1128, 1131 (9th Cir. 2013). In this case, counts one and two allege the second and third

4   alternatives. The government can establish interstate nexus either by proof that the visual

5   depictions were produced or transmitted using materials that had been shipped or

6   transported in or affecting interstate or foreign commerce, or that the visual depictions

7   were actually transmitted or transported using any means or facility of interstate or

8   foreign commerce, or in or affecting interstate or foreign commerce. For example, the

9   stipulation between the parties that the Pentax Optio and Fujifilm FinePIX cameras were

10  used to take the photographs at issue, or that the child pornography photos and videos

11  were stored and maintained on the Dell laptop computer, will suffice to prove this

12  element of the offense. (*See* Stipulations of Fact, doc. #117, paragraph 6); *Id.* at 1132 (to

13  satisfy the jurisdictional element of § 2251(a), the government was only required to prove

14  "that the child pornography was produced with materials that had traveled in interstate

15  commerce"); *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002) (evidence

16  that the defendant copied images of child pornography "onto computer disks that had

17  been manufactured abroad" was sufficient to prove that the images were produced using

18  materials that had been shipped or transported in interstate commerce). The government

19  need not establish defendant's knowledge "of the interstate nature of the materials used to

20  produce the sexually explicit images." *Sheldon*, 730 F.3d at 1131.

21      Likewise sufficient to prove the jurisdictional element and proper venue[3] is the

22  proof that the images themselves in fact traveled in interstate commerce. Here,

23  _____

24      [3] As the court noted in *United States v. Sullivan*, "[u]nder 18 U.S.C. § 3237(a),

25  offenses begun in one district and completed in another, or committed in more than one
    district, may be inquired of and prosecuted in any district in which such offense was

26  begun, continued, or completed." --- F.3d ----, 2014 WL 2199316, at *4 (9th Cir. May
    28, 2014) (internal quotation marks omitted). "Venue is proper under § 3237 when an

27  'essential conduct element' of the offense continues into the charging district." *Id.*

28                                      - 9 -

1   Cotterman brought the images into Arizona from Mexico by way of his laptop computer.

2   Further, the testimony at trial in this matter will establish that the images were created

3   outside of the state of Arizona, which again establishes that the images were actually

4   transported in interstate commerce.

5       B.    *Transportation of Child Pornography [18 U.S.C. § 2252(a)(1)].*

6       Count three of the indictment charges defendant with transportation of child

7   pornography, in violation of 18 U.S.C. § 2252(a)(1).  In order to establish that offense,

8   the government must prove the following elements beyond a reasonable doubt:   (1)

9   defendant knowingly mailed, transported, or shipped child pornography using any means

10  or facility of interstate or foreign commerce, or in or affecting interstate or foreign

11  commerce by any means, including by computer; and (2) he knew the material he mailed,

12  shipped, or transported contained child pornography.  18 U.S.C. § 2252A(a)(1); *United*

13  *States v. Lacy*, 119 F.3d 742, 747 (9th Cir. 1997) (in light of the Supreme Court's

14  decision in *United States v. X-Citement Video, Inc.,* 513 U.S. 64 (1994), a defendant may

15  be convicted of possessing child pornography "only upon a showing that he knew the

16  matter in question contained an unlawful visual depiction").

17      The term "child pornography" is defined in pertinent part as "any visual depiction,

18  including any photograph, film, video, picture, or computer or computer-generated image

19  or picture, whether made or produced by electronic, mechanical, or other means, of

20  sexually explicit conduct," where "the production of such visual depiction involves the

21  use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2256(8).  The term

22  "sexually explicit conduct" is defined in § 2256(2)(A), as discussed above in subsection

23  IV(A).  The term "minor" means "any person under the age of eighteen years."  18

24  U.S.C. § 2256(1).

25  _____

26

27  (quoting *Rodriguez-Moreno*, 526 U.S. at 280–82).

28                              - 10 -

1       Here, defendant obviously knew his own granddaughter was a pre-pubescent

2  minor when he began to photograph and videotape her nude, and to touch and photograph

3  her genitals.  In fact, no reasonable person viewing the pictures and videos charged in the

4  indictment would have any doubt that they depict a minor.  Moreover, there can be no

5  reasonable doubt that the photographs depict sexually explicit conduct, since the primary

6  focus of the majority of the images show T.C.'s vagina, often spread by Cotterman's

7  hand.  Cotterman even went so far as to create a collage solely out of pictures of T.C.'s

8  genitals, showing nothing of her face.  That the images are child pornography would be

9  and will be patently obvious to any fact-finder.  No expert is needed to prove that the

10  images depict an actual minor. *U.S. v. Salcido*, 506 F.3d 729 (9th Cir. 2007), *cert denied*,

11  128 S.Ct. 1918 (2008).  In addition, the defendant stipulates that he knew the images and

12  videos were on his laptop computer at the time he re-entered the United States into

13  Arizona from Mexico on April 6, 2007.  (*See* Stipulations of Fact, doc. #117, paragraph

14  6.)

15

16      *C.*    *Possession of Child Pornography [18 U.S.C. § 2252(a)(4)(B)].*

17       Count five of the indictment charges defendant with possession of child

18  pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Section 2252(a)(5)(B) makes it

19  an offense to knowingly possess any book, magazine, periodical, film, videotape,

20  computer disk, or any other material that contains an image of child pornography that has

21  been mailed, shipped, or transported using any means or facility of interstate or foreign

22  commerce, or in or affecting interstate or foreign ~~commerce by~~ any means, including by

23  computer, or that was produced using materials that have been mailed, shipped, or

24  transported in or affecting interstate or foreign commerce by any means, including by

25  computer.  Thus, to sustain a conviction under § 2252(a)(4)(B), the government must

26  prove the following beyond a reasonable doubt:

27

28

1.   Defendant knowingly possessed material that contained an image of child pornography, that is, a visual depiction of a minor engaged in sexually explicit conduct;

2.   He knew the visual depiction(s) showed a minor engaged in sexually explicit conduct; and

3.   The visual depiction(s) had either been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.  Model Jury Instructions for the Ninth Circuit, § 8.185 (2014) (modified for 18 U.S.C. § 2252(a)(4)(B)).

To establish possession, the government must prove "a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over [it]."  *United States v. Romm,* 455 F.3d 990, 999 (9th Cir. 2006) (bracketed material in original; internal quotation marks and citations omitted).  To establish knowledge, the government must prove that the defendant knew the material he possessed "contained an unlawful visual depiction."  *Lacy,* 119 F.3d at 747.

Interstate nexus can be established in different ways.  For example, proof that an image was created in one state but possessed in another is sufficient to establish that it has been shipped or transported in or affecting interstate commerce.  *United States v. Lynn,* 636 F.3d 1127, 1135 (9th Cir. 2011).  It is sufficient to show that the image "had previously moved in interstate commerce," even if it did so before being downloaded onto the defendant's computer.  *Id.* at 1135-36.  The government can also establish interstate nexus by showing that the image was downloaded or copied onto a computer disk or other data storage medium that was manufactured outside of the state.  *See United States v. Guagliardo,* 278 F.3d 868, 871 (9th Cir. 2002) (images were produced using

- 12 -

1    materials that had been shipped or transported in interstate or foreign commerce when

2    they were copied onto computer disks that were manufactured abroad); *Lacy,* 119 F.3d at

3    750 (the government established the jurisdictional element where it offered "undisputed

4    evidence" that the computer hard drive, monitor, and disks the defendant used to

5    download the images had traveled in interstate commerce).

6         Here, in addition to the images of T.C. he produced, defendant possessed a host of

7    other images depicting actual children engaged in a variety of sexually explicit conduct,

8    as defined above.  The images were found on defendant's computer, which he brought

9    into Arizona from Mexico.  There is no dispute as to Cotterman's ownership and

10   possession of the computer. (*See* Stipulations of Fact, doc. #117, paragraph 3.)  The hard

11   drive in defendant's computer was manufactured abroad, and, just as with the images he

12   produced of his own granddaughter, Cotterman brought the images through interstate

13   commerce by moving them out of and then into the United States via Mexico.  Finally,

14   just as with the images the defendant created by victimizing his own granddaughter, the

15   other images he collected and kept also depict children and sexually explicit conduct.

16        **D.    *Importation of Obscene Material  [18 U.S.C. § 1462(a)].***

17        Count six of the indictment charges the defendant with importation of obscene

18   material, in violation of 18 U.S.C. § 1462(a). In order to prove the defendant's guilt on

19   this count, the government must prove beyond a reasonable doubt that (1) the defendant

20   knowingly brought into the United States, (2) obscene material.  The Stipulations of Fact

21   filed with this court establish that the defendant knowingly brought the 300 charged

22   stories from Mexico into the United States by way of Arizona on his Dell laptop

23   computer. (*See* Stipulations of Fact, doc. #117, paragraph 9).  Thus, the only remaining

24   issue for this court to decide is whether the stories constitute obscenity.

25        Just as child pornography is not subject to First Amendment protection, neither is

26   obscene material.  *Roth v. United States,* 354 U.S. 476, 484-85 (1957).  The test for

27

28                                        - 13 -

1   determining whether material is obscene was set forth in *Miller v. California*, 413 U.S. 15

2   (1973). The *Miller* test consists of three prongs, all of which a fact-finder must determine

3   before material can be found obscene. The test is whether:

4         1.   an average person, applying contemporary community standards,

5   finds that the material taken as a whole appeals to the prurient interest;

6         2.   an average person, applying contemporary community standards,

7   finds that the work depicts sexual conduct in a patently offensive manner; and

8         3.   a reasonable person, viewing the material as a whole, finds that the

9   material lacks serious literary, artistic, political or scientific value.

10       *Id.* at 24-25.

11       The three-pronged *Miller* test contains several terms that carry distinct meanings,

12   and are addressed below:

13         a. The Average Person

14       In prongs one and two of the *Miller* test, the average person represents an

15   amalgamation of "the entire community, including persons of all sexes, religions, . . .

16   ages and et cetera . . . ." *United States v. Hamling,* 481 F.2d 307 (9th Cir. 1973) (quoting

17   jury instruction), aff'd, 418 U.S. 87 (1974). The average person is equated with "the

18   collective view of the community," *Pinkus v. United States,* 436 U.S. 293, 300-01 (1978),

19   which includes both "particularly susceptible or sensitive person[s]" as well as "totally

20   insensitive one[s]." *Roth*, 354 U.S. at 489. Thus, persons of all views are to be

21   considered in arriving at the average. *See Pinkus*, 436 U.S. at 300, (stating that "the

22   community includes all adults who constitute it, and a jury can consider them all in

23   determining relevant community standards.")

24         b.   Community Standards

25       The prosecution is not required to place any testimony or other proofs concerning

26   community standards into evidence. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56

27

28                           - 14 -

1  (1973).   Rather, "[A] juror is entitled to draw on his knowledge of the views of the

2  average person in the community or vicinage from which he comes for making the

3  required determination, just as he is entitled to draw on his knowledge of the propensities

4  of a 'reasonable' person in other areas of the law." *Hamling*, 418 U.S. at 104-05.

5       Although finders of fact are entitled to rely on their own knowledge, it should be

6  emphasized that the fact-finders are to apply the standards of the community rather than

7  their own personal views of the material in question.   The Court has explained this

8  principle as follows:

9

10      This Court has emphasized on more than one occasion that a principle concern in
        requiring that a judgment be made on the basis of "contemporary community
11      standards" is to assure that the material is judged neither on the basis of each
        juror's personal opinion, nor by its effect on a particularly sensitive or insensitive
12      person or group.

13

14  *Id.* at 107.   Simply put, the finder of fact is to "determine the collective view of the

15  community, as best as it can be done." *Pinkus,* 436 U.S. at 300-01.

16       Community standards only apply to prongs one and two of the Miller test,

17  and the third prong, "lacking in serious value," is based upon the reasonable person

18  standard.   *See Pope v. Illinois*, 481 U.S. 497, 500-01 (1987).   Therefore, the third prong

19  represents a universal standard not based on locality. The community standard is that

20  which is acceptable in the community.   Although it has frequently been argued that the

21  proper standard is that which the community tolerates, the case law supports community

22  acceptance as the litmus test. *See Smith*, 431 U.S. at 297-98; *United States v. Various*

23  *Articles of Merchandise, Seizure 170*, 750 F.2d 596, 599-600 (1984); *United States v.*

24  *ABC, Inc.,* 952 F.2d 155 (8th Cir.), cert. denied, 112 S.Ct. 193 (1991)(upholding jury

25  instruction which stated that "patent offensiveness" is to be measured by what the adult

26  community will accept); *United States v. Pryba*, 900 F.2d 748, 758-59 (4th Cir.

27

28                                      - 15 -

1  1990)(holding that community acceptance not community tolerance is correct test);

2  *Hoover v. Byrd*, 801 F.2d 740, 741-42 (5th Cir. 1986)(same).

3              c.     Prurient Interest

4        In prong one of the *Miller* test, the focus is on "prurient interest." In *Roth v.*

5  *United States*, 354 U.S. 476, 484-85 (1957), the Court stated that case law was consistent

6  with the then draft Model Penal Code's definition of prurient interest, which was a

7  shameful or morbid interest in nudity, sex or excretion that goes substantially beyond

8  customary limits of candor.  354 U.S. at 487 n.20 (citing the 1957 draft of the A.L.I.

9  Model Penal Code, 207.10(2)).  Juries also may consider the manner in which the

10  material was pandered to determine if it was intended to appeal to the prurient interest

11  and, therefore, whether it does appeal to the prurient interest.  *See Pinkus*, 436 U.S. at

12  303-04; *Ginsburg v. United States*, 383 U.S. 463, 470-71 (1966); *Dost*, 575 F.2d 1303.

13  Extremely perverse material also qualifies as appealing to the prurient interest.  In

14  *Mishkin v. New York*, the Supreme Court held that material designed to appeal to a

15  "clearly defined deviant sexual group," satisfies the prurient interest portion of the Miller

16  test.  383 U.S. 502, 508-09 (1966).  While pedophiles are a deviant sexual group, courts

17  have generally held that the materials at issue are not so far removed from the realm of

18  recognizable sexuality as to render normal jury evaluation inappropriate, and have

19  therefore rejected arguments by defendants that expert testimony was required to prove

20  that the evidence appealed to the prurient interest of pedophiles.  *See United States v.*

21  *Thoma*, 726 F.2d 1191, 1200 (7th Cir. 1984); *United States v. Bagnell*, 679 F.2d 826, 833

22  (11th Cir. 1982); and *United States v. Thomas*, 613 F.2d 787, 790 91, 793 94 (10th Cir.

23  1980) (expert evidence as to the prurient interests of pedophiles not required).

24              d. Patently Offensive

25       "Patently offensive" is the focus of prong two of the *Miller* test.  The patent

26  offensiveness prong requires a two-part inquiry.  The first part requires that the material

27

28                          - 16 -

1    at issue depict certain sexual conduct.  In *Miller*, the Court gave several examples of

2    sexual conduct that could be found to be patently offensive: "representations or

3    descriptions of ultimate sexual acts, normal or perverted, actual or simulated" and

4    "representations or descriptions of masturbation, excretory functions, and lewd exhibition

5    of the genitals."  *Id.* at 24-25.  Once this "substantive component" is satisfied, the

6    question becomes whether, as a matter of fact, the portrayal is "patently offensive" in

7    light of "contemporary community standards."  *Id.* at 24; *see also United States v.*

8    *Various Articles of Obscene Merchandise,* 600 F.2d 394, 406 (2d Cir. 1979).  No expert

9    testimony, or other form of evidence, is required to establish that the materials in question

10   are obscene because the materials themselves "are the best evidence of what they

11   represent "  *Paris Adult Theatre I,* 413 U.S. at 121.  Finders of fact should have the

12   discretion to consider the age of the person depicted in an image in deciding whether the

13   image is "patently offensive" under contemporary community standards.

14                        e.      Serious Value

15          In prong three of the *Miller* test, the focus is on serious value or lack thereof.  It is

16   imperative to understand that "serious" is the operative word in this term.  In *United*

17   *States v. Gundlach*, the court held that, "merely giving an intellectual gloss to trash

18   cannot automatically render the courts powerless to act." 345 F. Supp. 709, 717 (M.D.

19   Pa.1972).  Likewise, in *Kaplan v. California* the Supreme Court indicated that the "mere"

20   existence of a plot does not save the work from a finding of obscenity.  413 U.S. 115,

21   118-19 (1973).

22                        f.      Work Taken as a Whole

23          A final term from the three-pronged *Miller* test is "work, taken as a whole."  This

24   term only applies to prongs one and three.  The courts have said the trier of fact must

25   look to the intent of the work and discover its overall dominant theme.  In *Penthouse*

26   *International, Ltd. v. McAuliffe*, the insertion of obscene photographs between the pages

27

28                                                                    - 17 -

1  of a Bible was insufficient to save the work from being found obscene. 610 F.2d 1353,

2  1368 (5th Cir. 1984).   Nonetheless, the entire content of the work and its actual intent

3  must be scrutinized by the fact-finders. *See Kois v. Wisconsin*, 408 U.S. 229, 231-32

4  (1972).  This requires that the trier of fact be afforded the opportunity to examine the

5  entire work. There is, however, some dispute as to whether the entire work must be seen

6  in the courtroom.  In *Alexander v. United States,* 271 F.2d 140, 144-45 (8th Cir. 1959),

7  the trial court ruled that the two books charged as obscene material would not be read in

8  open court, but rather in the jury deliberation room.

9                              g.    Scienter Requirement

10         It is not necessary for the government to establish that the defendant knew the

11  material was obscene. *Hamling*, 418 U.S. at 119-20.  In *Hamling*, the Supreme Court

12  held that the district court properly instructed the jury on scienter by telling them they

13  must find the defendants "had knowledge of the character of the materials."  All that is

14  necessary is to prove the character and nature or content of the material.  In other words,

15  there must be proof that defendant knew that it was sexually explicit material. *Ripplinger*

16  *v. Collins*, 868 F.2d 1043, 1055-56 (9th Cir. 1989).

17         Here, a review of even only a few of the stories that Cotterman brought into

18  Arizona with him on April 6, 2007, confirms that they constitute obscenity.  They are

19  clearly designed to appeal to the prurient interest, and detailed stories about child sexual

20  abuse are without question patently offensive and lacking in any serious value

21  whatsoever.

22

23  **VI.   EVIDENTIARY ISSUES**

24       *A.    Other Acts Evidence.*

25         The government intends to introduce evidence of defendant's prior California state

26  convictions of Use of a Minor in Sexual Conduct, in violation of California Penal Code

27

28                                        - 18 -

1    Section 311.4(c), under Fed. R. Evid. 414.  The facts underlying those convictions and

2    the basis for its admission under Rule 414 were discussed in a notice filed by the

3    government in this matter, and in a stipulation between the parties, which has also been

4    filed in this case.  That evidence is highly probative as to defendant's sexual interest in

5    children, and specifically, to his desire and efforts to photograph the genitalia of small

6    children.

7          The evidence regarding the defendant's past convictions and other videos,

8    photographs and child pornography images and videos not listed in the indictment that

9    were found on the defendant's Dell laptop, should also be admitted under Rule 404(b),

10   which provides that evidence of other crimes, wrongs, or acts "is not admissible to prove

11   the character of a person in order to show action in conformity therewith," but may be

12   admissible for other purposes, such as proof of identity, preparation, plan, motive,

13   knowledge, intent, or lack of mistake or accident.  Evidence is admissible under Rule

14   404(b) if "(1) the evidence tends to prove a material point;" (2) the other act is not too

15   remote in time; (3) the evidence is sufficient to support a finding that defendant

16   committed the other act; and (4) (in certain cases) the act is similar to the offense

17   charged."  *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008) (internal

18   quotation marks and citations omitted).  If the evidence satisfies Rule 404(b), the court

19   must then determine whether its probative value "is substantially outweighed by the

20   prejudicial impact under Rule 403."  *Id.*  (internal quotation marks and citation omitted).

21          Rule 404(b) "is a rule of inclusion – not exclusion."  *United States v. Curtin*, 489

22   F.3d 935, 944 (9th Cir. 2007) (en banc).  Once it has been established that the evidence

23   offered serves a permissible purpose, "the 'only' conditions justifying the exclusion of

24   the evidence are those described in Rule 403: unfair prejudice, confusion of the issues,

25   misleading the jury, undue delay, waste of time, or needless presentation of cumulative

26   evidence[.]"  *Id.* (internal citation omitted).  Because Rule 403, by definition, results in

27

28                                              - 19 -

the exclusion of relevant and otherwise admissible evidence, it should be used sparingly. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence may be excluded under FRE 403 only if its probative value is substantially outweighed by one or more of the articulated dangers or considerations;" Rule 403 "favors admissibility"); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("[b]ecause Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly").

Finally, given the strength of the evidence in this case, the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice to the defendant. *See Hankey*, 203 F.3d at 1172 (virtually all evidence offered at trial is prejudicial, but it is "only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403"). Evidence of the defendant's sexual interest in and history of photographing children's genitalia is admissible at trial. *See United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (evidence of prior sexual contacts with minors admissible in prosecution for transportation of a minor with intent to engage in criminal sexual activity). This is particularly true given the similarities of the images the defendant created in both instances, and the similar age range of his past victims with his last one.

In addition, the other videos, photographs and child pornography images and videos not listed in the indictment that were found on the defendant's Dell laptop are admissible because they are inextricably intertwined with the charged offenses. When the facts relating to a charged offense are inextricably intertwined with other uncharged acts, the uncharged acts are generally admissible. *United States v. Daly*, 974 F.2d 1215 (9th Cir. 1992). In *Daly*, the defendant, charged with illegal possession of a firearm, was involved in an 11 hour shootout with the authorities prior to his apprehension. The defendant argued on appeal following his conviction that evidence of the shootout should

- 20 -

have been excluded at the trial.  The court rejected the argument, stating, "[a] jury is entitled to know the circumstances and background of a criminal charge.  It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances which form the basis of the charge." *Id.,* at 1217, citing *United States v. Moore,* 735 F.2d 289,292 (8th Cir. 1984).  The *Daly* court further noted that evidence regarding the shootout was necessary to put his illegal conduct into context.

In *United States v. Vizcarra Martinez,* 57 F.3d 1506, 1512 (9th Cir. 1995), the Ninth Circuit again clarified that "other act" evidence that is inextricably intertwined with the crime charged need not meet the requirements of Rule 404(b).  "Other act" evidence does not fall under Rule 404(b) where the evidence is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.*

## VI.    ANTICIPATED DEFENSE

In the event that the defendant intends to claim that he took the pictures not for sexual purposes but for research or science, this defense must fail.  Even apart from the complete lack of factual support or evidence to suggest such a defense, the "research" defense is not supported by law, either.

Child pornography enjoys no First Amendment protection. *New York v. Ferber,* 458 U.S. 747 (1982).  In *Ferber,* the Supreme Court dismissed the possibility that prohibitions on child pornography might affect genuine literary, artistic, political, or scientific expression, deeming the value of such expression "exceedingly modest, if not de minimis." *Id.* at 762.  The Court noted it to be:

> [U]nlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work. . . . [I]f it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be utilized.

1   *Id.* at 762-3.   The Court also reasoned: "It is irrelevant to the child [who has been

2   abused] whether or not the material . . . has a literary, artistic, political or social value."

3   *Id.* at 761. The Court in *Ferber* also pointed out that 18 U.S.C. Section 2252, "contains

4   no exception for transmission or receipt of child pornography with artistic, scientific,

5   literary, journalistic, or other legitimate value." *Id.* (internal quotation marks omitted).

6   Further support for that conclusion is found in the legislative history of the Child

7   Protective Act, which reveals that Congress rejected a proposed affirmative defense for

8   serious literary, artistic, scientific, social, or educational value to prosecution under child

9   pornography laws, 18 U.S.C. 2251 et seq.  H.R.Rep. No. 98-538, 98th Cong., 2nd Sess.,

10  at 4 (1983).

11      Other courts have rejected the relevance of the possessor's motives.  In *United*

12  *States v. Matthews*, 209 F.3d 338 (4th Cir. 2000), for instance, the court accepted as fact

13  that the defendant was a bona fide researcher, and that he possessed child pornography

14  solely for the sake of legitimate research.   The court nevertheless rejected a literary

15  defense, finding that child pornography caused the same harms to the children depicted,

16  and to society as a whole, whether the possessor had good motive or bad.

17      In addition to rejecting literary and scientific defenses, courts have also dismissed

18  attempts by "researchers" to impose on the prosecution the burden of disproving good

19  motive.  In *Matthews, supra,* the court found no Constitutional mandate that the child

20  pornography statute "be interpreted to require proof that a defendant acted with a bad

21  motive or evil intent...." *Id.* at 351.  The court wrote: "The scienter requirement that

22  Congress did choose – "knowingly" - evidences no intent to exempt 'innocent' use of

23  child pornography from prosecution." *Id.*

24      The Fifth Circuit reached a similar result in *United States v. Fox*, 248 F.3d 394,

25  408 (5th Cir. 2001), where the defendant argued that the government could not convict

26  him without proof of a "guilty mind" when he was claiming to have been investigating

- 22 -

1    have been excluded at the trial.  The court rejected the argument, stating, "[a] jury is
2    entitled to know the circumstances and background of a criminal charge.  It cannot be
3    expected to make its decision in a void without knowledge of the time, place and
4    circumstances which form the basis of the charge." *Id.*, at 1217, citing *United States v.*
5    *Moore*, 735 F.2d 289,292 (8th Cir. 1984).  The *Daly* court further noted that evidence
6    regarding the shootout was necessary to put his illegal conduct into context.

7       In *United States v. Vizcarra Martinez*, 57 F.3d 1506, 1512 (9th Cir. 1995), the
8    Ninth Circuit again clarified that "other act" evidence that is inextricably intertwined with
9    the crime charged need not meet the requirements of Rule 404(b).  "Other act" evidence
10   does not fall under Rule 404(b) where the evidence is necessary "to permit the prosecutor
11   to offer a coherent and comprehensible story regarding the commission of the crime." *Id.*

12

13   **VI.    ANTICIPATED DEFENSE**

14      In the event that the defendant intends to claim that he took the pictures not for
15   sexual purposes but for research or science, this defense must fail.  Even apart from the
16   complete lack of factual support or evidence to suggest such a defense, the "research"
17   defense is not supported by law, either.

18      Child pornography enjoys no First Amendment protection. *New York v. Ferber*,
19   458 U.S. 747 (1982).   In *Ferber*, the Supreme Court dismissed the possibility that
20   prohibitions on child pornography might affect genuine literary, artistic, political, or
21   scientific expression, deeming the value of such expression "exceedingly modest, if not
22   de minimis." *Id.* at 762.  The Court noted it to be:

23
24
25
26

> [U]nlikely that visual depictions of children performing sexual acts or lewdly
> exhibiting their genitals would often constitute an important and necessary part of
> a literary performance or scientific or educational work. . . . [I]f it were necessary
> for literary or artistic value, a person over the statutory age who perhaps looked
> younger could be utilized.

27
28                                      - 21 -

1   *Id.* at 762-3.    The Court also reasoned: "It is irrelevant to the child [who has been

2   abused] whether or not the material . . . has a literary, artistic, political or social value."

3   *Id.* at 761. The Court in *Ferber* also pointed out that 18 U.S.C. Section 2252, "contains

4   no exception for transmission or receipt of child pornography with artistic, scientific,

5   literary, journalistic, or other legitimate value." *Id.* (internal quotation marks omitted).

6   Further support for that conclusion is found in the legislative history of the Child

7   Protective Act, which reveals that Congress rejected a proposed affirmative defense for

8   serious literary, artistic, scientific, social, or educational value to prosecution under child

9   pornography laws, 18 U.S.C. 2251 et seq. H.R.Rep. No. 98-538, 98th Cong., 2nd Sess.,

10  at 4 (1983).

11       Other courts have rejected the relevance of the possessor's motives.  In *United*

12  *States v. Matthews*, 209 F.3d 338 (4th Cir. 2000), for instance, the court accepted as fact

13  that the defendant was a bona fide researcher, and that he possessed child pornography

14  solely for the sake of legitimate research.   The court nevertheless rejected a literary

15  defense, finding that child pornography caused the same harms to the children depicted,

16  and to society as a whole, whether the possessor had good motive or bad.

17       In addition to rejecting literary and scientific defenses, courts have also dismissed

18  attempts by "researchers" to impose on the prosecution the burden of disproving good

19  motive.  In *Matthews, supra,* the court found no Constitutional mandate that the child

20  pornography statute "be interpreted to require proof that a defendant acted with a bad

21  motive or evil intent...." *Id.* at 351.  The court wrote: "The scienter requirement that

22  Congress did choose – "knowingly" - evidences no intent to exempt 'innocent' use of

23  child pornography from prosecution." *Id.*

24       The Fifth Circuit reached a similar result in *United States v. Fox*, 248 F.3d 394,

25  408 (5th Cir. 2001), where the defendant argued that the government could not convict

26  him without proof of a "guilty mind" when he was claiming to have been investigating

27

28                                        - 22 -

child pornography only to turn offenders over to law enforcement. Fox's argument, the court wrote, "seriously mischaracterizes the statute's scienter element: the government must prove that the defendant *knowingly,* i.e., voluntarily and intentionally, received child pornography, not that he had some degree of *mens rea.*" *Id.* at 407 (emphasis in original).

The above cases make it clear that there is no kind of literary, scientific or innocent motive defense to the possession of child pornography. Appropriately so, since it is no less traumatic for a child to be sexually abused and to have it photographed when the images produced are allegedly used for a "scientific" purpose than when the images are used to satisfy the deviant and dangerous sexual desires of the producer and possessor. Any such defense must fail, even *were* it supported by facts, which in this matter, it is not.

## VIII.  CONCLUSION

The evidence at trial in this matter will establish each and every element of the offenses beyond a reasonable doubt. For that reason, the government will ask, at the end of trial, that this Court find the defendant guilty on all counts.

Respectfully submitted this 9th day of June, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona

s/Carmen F. Corbin
s/Carin. C. Duryee

CARIN C. DURYEE
CARMEN F. CORBIN
Assistant U.S. Attorneys

- 23 -