# EXHIBIT S



U.S. Department of Justice

United States Attorney
District of Arizona

United States District Courthouse
405 West Congress Street, Suite 4800
Tucson, Arizona 85701-5040



April 10, 2008

Alfred S. Donau III, Esq.
Donau & Bolt
3505 North Campbell, Suite 501
Tucson AZ  85719-2003

Re:  U.S. v. Howard Wesley Cotterman

Dear Skip:

I am in receipt of your letter dated April 8, 2008. While there is never a guarantee how legal issues will resolve either at the District or Circuit Court level, I respectfully disagree with your legal analysis.

First, *United States v. Arnold*, 454 F.Supp.2d 999 (CDCA 2006), is not yet binding and factually distinguished. Your client was a convicted and registered sex offender, facts known when he applied for admission into the United States from the Republic of Mexico. Further, initial forensic previewing led to the discovery of encrypted files and images depicting the sexual abuse of children.

Second, binding precedent supports the border search that took place and the current trend favors more expansive border search authority, not less. In *United States v. Flores-Montano*, 541 U.S. 149, 152-153 (2004), the Supreme Court recently stated:

> The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border. Time and again, we have stated that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey*, 431 U.S. 606, 616 (1977). Congress, since the beginning of our Government, "has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537

(1985). The modern statute that authorized the search in this case, 46 Stat. 747, 19 U.S.C. § 1581(a), derived from a statute passed by the First Congress, the Act of Aug. 4, 1790, ch. 35, § 31, 1 Stat. 164, *see United States v. Villamonte Marquez*, 462 U.S. 579, 584 (1983), and reflects the "impressive historical pedigree" of the Government's power and interest, *id.* at 585. It is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity.

The Ninth Circuit, likewise, has expanded border search authority. *United States v. Okafor*, 285 F.3d 842, 845-46 (9th Cir. 2002); *United States v. Romm*, 455 F.3d 990, 996 (9th Cir. 2006). The only Circuit Court I could find that addressed the precise issues you have raised is the Fourth in *United States v. Ickes*, 393 F.3d 501, 504 (4th Cir. 2005). The Fourth Circuit soundly rejected the defendant's challenge to the border search of his computer and noted:

> [w]e are unpersuaded that these particular transported goods are somehow exempt from the ordinary definition of 'cargo.' To hold otherwise would undermine the long-standing practice of seizing goods at the border even when the type of good is not specified in the statute …. the ramifications of accepting Ickes' First Amendment argument would be quite staggering. Ickes suggests that the border search doctrine does not apply when the item being searched is something "expressive." But this cannot be the case. The border search doctrine is justified by the "longstanding right of the sovereign to protect itself." *Flores-Montano*, 124 S.Ct. 1582, 1585 (2004), *quoting Ramsey*, 431 U.S. 606, 616 (1972). Particularly in today's world, national security interests may require uncovering terrorist communications, which are inherently "expressive." Following Ickes' logic would create a sanctuary at the border for all expressive material-even for terrorist plans. This would undermine the compelling reasons that lie at the very heart of the border search doctrine. Ickes' argument, at bottom, proves too much.

Regarding the necessity of a warrant, I also disagree. The encrypted files and images and movies depicting the sexual abuse of children obviated the need for one. In addition, your client effectively abandoned his computer shortly after it had been preliminarily detained. The defendant had no intention of returning for it once he knew the agents had located the encrypted files. While representing he was on his way to the ICE office, he was actually on his way to Australia by way of Mexico, Canada and Japan.

We can agree to disagree about the merits of the legal issues. While I appreciate the contents of your letter outlining your position on the legal issues, I was really more interested in what your client would be willing to plead to: which counts, what range of imprisonment, length of supervised release, and whether there was any interest in resolving both the Arizona and Eastern District of California matters universally.

We can both agree that the statutory ranges for your client are lengthy. Given his prior convictions, a conviction on the first two counts would likely carry a mandatory life sentence. Those same prior convictions also mandate lengthy minimum sentences on all of the other child pornography related offenses. The same holds true for the charges in the Eastern District of California, along with a required consecutive sentence of 10 years for the commission of a sex offense by a registered sex offender.

Please advise if there is a plea with a range that would be acceptable to your client. Before any offer can be extended by me, a case of this magnitude would require approval through three levels of management, the United States Attorney, and the victim. If the proposed disposition contemplates the charges pending in the Eastern District of California, I would assume the same procedure applies. I point that out only to emphasize that the procedure is quite consuming and only done one time.

Please call me with any questions. I look forward to hearing from you.

Sincerely,
DIANE HUMETEWA
United States Attorney
District of Arizona

JUDSON T. MIHOK
Assistant U.S. Attorney