Law Office of
**HERNANDEZ & HAMILTON, PC**
The Johnson House Offices
455 West Paseo Redondo
Tucson, Arizona 85701-8254
CLAY HERNANDEZ (AZ 010917)
Email: Clay@Hernandez-Hamilton.com
CAROL LAMOUREUX (AZ 031262)
Email: Carol@Hernandez-Hamilton.com
Telephone: (520) 882-8823
Fax: (520) 882-8414
Attorneys for Defendant

# IN THE UNTED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

4:16-CV-00667-TUC-RCC-1

United States of America,

       Plaintiff/Respondent,

       v.

Howard Wesley Cotterman,

       Defendant/Petitioner.

**AMENDED REPLY TO GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

      The Petitioner, HOWARD WESLEY COTTERMAN, by and through undersigned counsel, hereby replies to the government's amended response and asks the Court to order an evidentiary hearing and grant him the requested relief.

1

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I. LAW AND ARGUMENT

#### A. Cotterman's Amended § 2255 Motion Raises Numerous Colorable Claims of Ineffective Assistance of Counsel That Warrant an Evidentiary Hearing and Entitle Him to Relief

Cotterman's Amended § 2255 Motion ("Motion") raises several cognizable claims under 28 U.S.C. § 2255(a) and alleges facts demonstrating that (1) his trial and appellate counsel's representation fell below an objective standard of reasonableness and (2) he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984) (defendant must show deficient performance and prejudice to obtain relief from ineffective assistance of counsel). The first prong—constitutional deficiency—is linked to the legal community's practice and expectations: "'[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), *quoting Strickland*, 466 U.S. at 688. In contrast, the second prong—prejudice—is more fluid and dependent upon the nature of a petitioner's claim. *See, e.g.*, *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (prejudice inquiry differs in cases where attorney error occurred "*during* the course of a legal proceeding"—e.g., counsel's failure to raise objection at trial—as opposed to cases where attorney error *caused* defendant to forfeit entire

---

[1]Cotterman incorporates and relies upon his Statement of Facts set forth in his Motion. (*See* Motion (Doc. 49) at 3-9.)

proceeding) (emphasis added); *see also United States v. Kayode*, 777 F.3d 719, 739-40 (5th Cir. 2014) (noting prejudice inquiry itself changes depending on contours of petitioner's Sixth Amendment claims) (Dennis, J., dissenting).

Though demonstrating some form of prejudice is usually a necessary part of a *Strickland* claim, the concept of prejudice has been defined in different ways depending on the context in which it appears and is "not meant to be applied in a 'mechanical' fashion." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017), *quoting Strickland*, 466 U.S. at 696. The Supreme Court has construed *Strickland*'s traditional prejudice requirement—a showing that but for counsel's unprofessional errors "the *result* of the proceeding would have been different"— far more liberally in certain contexts. 466 U.S. at 696 (emphasis added).

For instance, where a defendant alleges counsel's ineffective assistance caused him to reject a plea agreement and resulted in a more serious conviction or severe sentence, he satisfies *Strickland*'s prejudice prong by simply showing that, but for counsel's deficient advice, he would have accepted the plea offer. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012); *see also Lee*, 137 S. Ct. at 1965 (where deficient performance causes defendant to forfeit jury trial, defendant need not show he would have been "better off" going to trial; instead, he establishes prejudice by demonstrating reasonable probability that, but for counsel's errors, he would not have waived proceeding he was otherwise entitled to). In some limited

contexts, counsel's deficient performance is deemed so likely to prejudice the accused that prejudice is presumed. *See United States v. Cronic*, 466 U.S. 648 (1984) (prejudice presumed where accused denied counsel at critical stage in proceedings or where counsel fails to subject prosecution's case to meaningful adversarial testing).

In this case, the evidence clearly demonstrates that trial and appellate counsel's performances were so constitutionally defective and prejudicial that they "undermine[d] the confidence in the outcome[s]" of Cotterman's trial and appeal. *Strickland*, 466 U.S. at 694; *cf. Boyde v. Brown*, 404 F.3d 1159, 1176 (9th Cir. 2005), *amended by* 421 F.3d 1154 (9th Cir. 2005). Relief is therefore required.

### 1. *Cotterman's Claims Warrant an Evidentiary Hearing*

At an absolute minimum, Cotterman's Motion raises several colorable claims of ineffective assistance of counsel that entitle him to an evidentiary hearing.[2] *See United States v. Rodriguez-Vega*, 797 F.3d 781, 792 n. 11 (9th Cir. 2015) ("A district court *may not summarily dismiss* a [§ 2255] petition *without holding an evidentiary hearing* unless the petitioner fails to allege facts which, if true, would entitle him to relief, or the petition, files and record of the case

---

[2]Alternatively, if the Court believes the issues can be resolved without a hearing, it should order supplemental briefs, expand the record as necessary, and grant Cotterman relief. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 792 (9th Cir. 2015) (evidentiary hearing required *unless* expansion of record accompanied by supplemental briefs allows district court to adequately resolve all questions presented in § 2255 motion).

conclusively show that he is entitled to no relief.") (emphasis added).  A claim is colorable when: (1) the petitioner alleges "specific facts which, if true, would entitle him to relief"; and (2) "the [§ 2255 motion], files and record of the case cannot conclusively show that he is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (evidentiary hearing *required* unless claim is "'so palpably incredible or patently frivolous as to warrant summary dismissal'"), *quoting United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003).

Here, Cotterman has alleged facts establishing multiple colorable claims of ineffective assistance of counsel by demonstrating that trial and appellate counsel's performances fell below an objective standard of reasonableness and caused him prejudice.  *Cf. Leonti*, 326 F.3d at 1121 (standard for granting evidentiary hearing in § 2255 proceeding entails assuming truth of petitioner's factual allegations).  For instance, he has established ineffective assistance during the plea negotiation process, along with resulting prejudice, by asserting that: (1) trial counsel's ineffective failure to inform him of the government's 12- to 20-year plea offer caused him prejudice because there was a reasonable probability that, had the more favorable offer been conveyed, he would have accepted it; and (2) trial counsel's ineffective failure to investigate and discover that his 1992 prior convictions were *not* predicate offenses for the government's asserted mandatory-life enhancement prejudiced him because it placed him in significantly weaker bargaining position

throughout the entire plea negotiations process. *See Missouri v. Frye*, 566 U.S. 134, 145, 147 (2012) (trial counsel ineffective in failing to convey plea offer to defendant before it expires; defendant establishes prejudice by showing reasonable probability that he would have accepted earlier, more favorable plea had it been conveyed); *Johnson v. Uribe*, 700 F.3d 413, 425-27 (9th Cir. 2012) (trial counsel ineffective for failing to identify and correct inaccurate sentencing enhancements; defendant prejudiced because error fundamentally altered bargaining position during plea negotiation period), *amending and superseding*, 682 F.3d 1238 (9th Cir. 2012).

Cotterman's Motion, accompanying affidavit, and exhibits present precisely the type of colorable ineffective assistance claims and factual allegations that must be resolved through an evidentiary hearing. *See United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) (evidentiary hearings particularly appropriate when petitioner "raise[s] facts which occurred out of the courtroom and off the record"); *cf. Sawyer v. United States*, 874 F.3d 276, 279-80 (7th Cir. 2017) (district courts may not discount petitioner's declaration simply because it may be self-serving; where allegations, if true, could support finding that counsel's performance was objectively unreasonable, details and veracity of allegations should be determined through evidentiary hearing).

Cotterman's claims are based on specific factual allegations, rather than conclusory legal conclusions, and are supported by documentary evidence. His affidavit and declaration of facts—which contain a narrative of his dealings with his trial and appellate counsel—and his exhibits support his claims, and nothing in the record conclusively shows his attorneys' performances were not defective under prevailing professional norms. *Cf. Burrows*, 872 F.2d at 917 (when § 2255 motion raises claims of ineffective assistance of counsel, Court should hold evidentiary hearing unless record conclusively shows petitioner's attorney was not ineffective). (Motion at <u>Ex. E</u>; *see also* Howard Cotterman Declaration of Facts, <u>Ex. AH</u>, filed herewith.)

Furthermore, the government submitted an affidavit from trial counsel in response to Cotterman's second amended motion. (*See* Government's Amended Opposition ("Opp."), <u>Ex. 1</u>, Affidavit of Alfred S. Donau III.) Several of trial counsel's recollections of events conflict with Cotterman's claims, the documentary evidence, and even trial counsel's own earlier admissions and responses to the interrogatories. (*Compare* Opp., <u>Ex. 1,</u> *with* Motion, <u>Ex. E</u>, <u>Ex. X</u>; *see also* <u>Ex. AH</u>.) For these reasons, the reasons stated in Cotterman's Motion, and the reasons that follow, this Court should hold an evidentiary hearing and grant him relief.

## 2. *Requested Relief*

Because trial counsel's most egregious deficiencies occurred during plea negotiations—failing to inform Cotterman of the 12- to 20-year plea offer or to investigate whether his 1992 prior convictions qualified as predicate offenses for an 18 U.S.C. § 3559(e) sentencing enhancement—the most appropriate relief is to order reinstatement of the government's 12- to 20-year offer. *See Lafler*, 566 U.S. at 174 (proper remedy for trial counsel's ineffective assistance during plea negotiations includes ordering government to reoffer plea agreement). Cotterman therefore requests that this Court order reinstatement of the plea offer or, alternatively, grant him a new trial.

## B. Cotterman Received Ineffective Assistance Throughout the Entire Plea Negotiation Process

The government attempts to dismiss Cotterman's argument that he received ineffective assistance during plea negotiations as nothing more than a "flat assert[ion] that his trial counsel failed to inform him of a plea offer" and a complaint that "his trial counsel did not work hard enough throughout the pretrial litigation phase of the case to obtain a better offer." (Opp. at 13.) In doing so, it completely mischaracterizes his claims and misconstrues his burden in establishing a colorable ineffective assistance claim.

As noted above, the government has recently obtained an affidavit from trial counsel, wherein he now disputes Cotterman's claim that he was unaware of the

12- to 20-year offer. (Opp. at 13, Ex. 1 at ¶¶ 6-8.) Trial counsel does not recall whether or when he conveyed the 12- to 20-year offer to Cotterman but assumes he would have because "[i]t is [his] practice to fully explain any plea offer to a client." (Opp., Ex. 1 at ¶ 7.) In other words, though couched differently, trial counsel still admits he does not specifically remember discussing the 12- to 20-year offer with Cotterman. (*Id.* at ¶¶ 7-9.) He simply assumes he must have because he "always conveyed to Mr. Cotterman, and fully explained, every offer made." (*Id.* at ¶ 7.) Trial counsel's conjecture that he informed Cotterman of the offer is far from conclusive evidence that the offer was, in fact, conveyed. It is also insufficient to overcome Cotterman's long-maintained assertion that he was never advised of that plea offer and that, had it been conveyed, he would have accepted it. *See Leonti*, 326 F.3d at 1121; *see also Frye*, 566 U.S. at 147-48 (defendant establishes ineffective assistance by demonstrating trial counsel failed to convey plea offer and, had earlier offer been conveyed, there was reasonable probability he would have accepted it). (Motion, Ex. E at ¶¶ 2-3; Ex. AH at ¶ 9.)

At most, trial counsel's assumption that he informed Cotterman of the plea offer because he "always" did and that he "declined the 12 to 20 year plea offer at [Cotterman's] request" creates factual disputes for the Court to resolve. (Opp., Ex. 1 at ¶¶ 6-8.) Because it is not readily apparent from the record whether Cotterman was so advised, and because the success of this colorable ineffective assistance

claim depends on a resolution of the factual dispute, a hearing is warranted. *Leonti*, 326 F.3d at 1121; *see also Frazer v. United States*, 18 F.3d 778, 784 (9th Cir. 1994) ("Because all of these factual allegations were outside the record, this claim on its face should have signaled the need for an evidentiary hearing.").

The government also points out that Cotterman "was not entitled to any plea offer at all, much less so after the government had extensively litigated this matter." (Opp. at 13.) But the government's argument misses the mark. The right that Cotterman claims he lost was not the right to a plea bargain, "but the right to participate in the decision as to, and to decide, his own fate—a right also clearly found in Supreme Court law." *Nunes v. Mueller*, 350 F.3d 1045, 1053 (9th Cir. 2003), *quoting Strickland*, 466 U.S. at 688. Trial counsel interfered with that right when he failed to convey the government's offer to Cotterman. *Id.* ("During all critical stages of a prosecution, which must include the plea bargaining process, it is counsel's 'dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'"); *Lafler v. Cooper*, 566 U.S. 156, 174 (2012) (duty to provide adequate assistance of counsel applies during plea negotiation stage).

Next, contrary to the government's bald assertion, Cotterman is not complaining that trial counsel was ineffective because "he did not work hard enough" to obtain a better plea offer, or that his mistaken belief that he was facing

a mandatory life sentence "caused him to not seek or consider plea offers with lower sentences." (Opp. at 13.) Instead, Cotterman specifically alleges that *trial counsel's failure to discover and challenge the error* substantially weakened his bargaining position throughout the entire plea negotiation process because the parties were operating under the mistaken belief that he faced mandatory life if convicted. *See Johnson*, 700 F.3d at 425-27 (trial counsel ineffective where failure to identify and correct inaccurate sentencing enhancements fundamentally altered bargaining position of parties for entire plea negotiation period).

Trial counsel's failure to investigate whether Cotterman's prior convictions qualified as predicate offenses for an 18 U.S.C. § 3559(e) sentencing enhancement constituted ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003) (failure to conduct reasonable investigation satisfies *Strickland* performance prong). Had trial counsel adequately investigated whether Cotterman's 1992 convictions subjected him to a § 3559(e) enhancement, he would have discovered that *the convictions were not predicate offenses*.[3] And

---

[3] A state sex offense only qualifies as a predicate offense under § 3359(e) if the underlying conduct "would be" a qualifying federal sex offense. *United States v. Gallenardo*, 579 F.3d 1076 (9th Cir. 2009); *see also* § 3359(e)(2) (listing offenses that qualify as "federal sex offenses" for sentence enhancement purposes). None of the conduct underlying Cotterman's 1992 convictions qualified as a federal sex offense. *See* Cal. Penal Code §§ 311.4(c), 647.6 (West 1987); Cal. Penal Code § 288(A) (West 1989); *see also* 1987 Cal. Stat., ch. 1394, §§ 2, 4.1-4.3; 1989 Cal. Stat., ch. 1402, § 3. (Motion at 15-17, Ex. M at 8.) Thus, his convictions were not predicate offenses for a § 3359(e) enhancement.

given that the government filed its notice in July 2008, the parties were operating under the mistaken belief that Cotterman was facing mandatory life for the *vast majority*—if not the entirety—of the plea negotiation period. Trial counsel's error absolutely prejudiced Cotterman because it placed him in a less advantageous position and resulted in the "government extend[ing] plea offers . . . which were most likely less desirable than they would have been had the erroneous enhancement[] been removed." *Johnson*, 700 F.3d at 427 (concluding plea bargaining process would have been different but for counsel's inadequate investigation into applicability of sentencing enhancements); *see also Lafler*, 566 U.S. at 163 (in context of pleas, defendant establishes prejudice by showing outcome of plea process would have been different with competent advice).

In response to Cotterman's requests for admissions and interrogatories, trial counsel admitted that he initially thought that Cotterman's "prior conviction in California qualified as a predicate felony" that exposed him to a life sentence. (Motion, Ex. X at Resp. to RA #1-2.) As of March 3, 2020, trial counsel "ha[d] no recollection . . . as to what efforts [he] made to determine whether the 1992 prior qualified as a predicate offense." (*Id.* at Ans. to Int. #1.) Trial counsel now claims that he believed as much based on "the modified categorical approach in place at the time charges were filed." (Opp., Ex. 1 at ¶ 14.) That claim is simply not credible in light of trial counsel's previous inability to recall what, if any, efforts he

made to determine whether Cotterman's priors subjected him to a § 3559(e) enhancement. (*Id.*)

Trial counsel also asserts that, at some point, he "was no longer sure the prior convictions subjected [Cotterman] to mandatory life, but [he] knew the guidelines were life." (*Id.* at ¶ 15.) Tellingly, trial counsel does not indicate when he began to question the applicability of § 3559(e) or explain what caused him to question his purported previous assessment. (*Id.*) Nor does he indicate that he made any efforts to determine whether Cotterman was, in fact, facing mandatory life after he "was no longer sure" about § 3559(e)'s applicability to his priors. In any event, it is clear from trial counsel's correspondence with the government that he was still under the mistaken impression that Cotterman's prior convictions subjected him to mandatory life as late as 2014, when he was negotiating with the government to "withdraw the enhancement" in exchange for Cotterman's agreement to submit to a bench trial. (Motion at 21, <u>Ex. AC</u>, <u>AD</u>.)

Relatedly, the government argues that Cotterman's claim that trial counsel failed to advise him of the 12- to 20-year plea offer is a "red herring" because "the focus is on whether or not trial counsel conveyed any of the plea offers, not trial counsel's advice on whether or not to accept the offers." (Opp. at 14.) It is unclear what the government means by that assertion, particularly given that Cotterman's ineffective assistance of counsel claims are cognizable under either theory. *See*

*Frye*, 566 U.S. at 145, 147-48 (failure to communicate content of plea offer triggers ineffective assistance claim); *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) (same); *see also Lafler*, 566 U.S. at 162 (improper advice to reject plea may constitute ineffective assistance).

The government also alleges that Cotterman "suffered no harm even if the attorneys were mistaken because, even without the prior conviction invoking an enhancement, Cotterman's U.S.S.G. calculated sentence was 'life.'" (Opp. at 15.) That argument is disingenuous. Even though the guideline calculation recommended life imprisonment, such a sentence was unavailable because of the applicable statutory maximums. (*See* Motion at <u>Ex. M</u> at 15-16.) A life sentence was not statutorily authorized for any of the convictions. *See* 18 U.S.C. § 2251(a), (e) (thirty-year maximum sentence for producing child pornography); § 2252(a)(1), (b)(1) (twenty-year maximum for transporting child pornography); § 2252(a)(4)(B) (ten-year maximum for possessing child pornography); § 1462(a) (five-year maximum for importing obscene material). Moreover, that Cotterman did in fact receive a sentence less than natural life refutes the government's implied argument that he ended up in the same position regardless of the mistake.

Without a doubt, Cotterman *was* harmed by the attorneys' error—and prejudiced by trial counsel's ineffective assistance—because there is a reasonable probability that he would have received a more favorable plea offer but for trial

counsel conducting negotiations under the mistaken belief that he was facing mandatory life. *See Lafler*, 566 U.S. at 163; *Johnson*, 700 F.3d at 426-27. Similarly, Cotterman was prejudiced by trial counsel's failure to inform him of the government's 12- to 20-year plea offer; had the offer been conveyed, he would have accepted it and received a sentence far less severe than the 35-year sentence that was imposed. *See Frye*, 566 U.S. at 145, 147-48; *see also Blaylock*, 20 F.3d at 1467. (*See* Motion at Ex. E at ¶ 3; Ex. D.) Moreover, given that the offer still required a substantial amount of prison time, was within the sentencing range for the proposed possession charge, and was not far more lenient than his sentencing exposure if he lost at trial, there is a reasonable probability that the Court would have accepted the plea. *See Frye*, 566 U.S. at 148-49. (*See id.* at Ex. D.)

Trial counsel's errors throughout the entire plea negotiation process unambiguously amounted to ineffective assistance and, because Cotterman was prejudiced by his deficient performance, he is entitled to relief. Re-instatement of the government's 12- to 20-year plea offer is the appropriate remedy for trial counsel's ineffective assistance during plea negotiations. *See Chioino v. Kernan*, 581 F.3d 1182, 1184 (9th Cir. 2009) (remedy should put defendant back in position he would have been in had Sixth Amendment violation never occurred); *see also Blaylock*, 20 F.3d at 1468-69 (proper remedy for ineffective assistance during plea negotiations includes requiring government to reinstate original plea offer).

### C. Trial Counsel Was Ineffective in Advising Cotterman to Waive His Constitutional Right to a Jury Trial and the Waiver Was Invalid Because It Was Executed with Insufficient Awareness of the Actual Relevant Circumstances

Trial counsel's mistaken belief that Cotterman was facing mandatory life not only impacted plea negotiations; it contaminated a number of his critical strategic decisions, including his decisions to agree to a bench trial and to enter into a number of trial stipulations. Trial counsel negotiated a deal wherein he would agree to a bench trial and several damaging stipulations in exchange for the government's agreement to withdraw its notice of prior conviction. (Motion at 20-22; Ex. AC.) He then convinced Cotterman to waive his right to a jury trial by incorrectly advising him that the sentencing enhancement could only be avoided by waiving a jury trial.

1. *Trial Counsel Was Ineffective in Advising Cotterman to Waive His Right to a Jury Trial*

Had Cotterman's prior convictions actually qualified as predicate offenses for a § 3559(e) enhancement, trial counsel's decision to submit to a bench trial with a number of stipulations in exchange for dismissal of the government's notice might have made sense; however, because Cotterman's priors never exposed him to a § 3559(e) enhancement and he was never facing mandatory life, the agreement was worthless. In effect, trial counsel advised and convinced Cotterman to give up

something for nothing. His jury waiver decision cannot be regarded as a reasonable tactic decision under these circumstances.

Cotterman was prejudiced by trial counsel's error because it caused him to forego his right to a jury trial; but for trial counsel's professionally deficient advice, he would not have waived his right to a jury trial. *See Hill*, 474 U.S. at 57-59 (when defendant claims counsel's deficient performance deprived him of trial and caused him to accept plea, defendant establishes prejudice by demonstrating "reasonable probability that, but for counsel's errors, he would . . . have insisted on going to trial"); *see also Torres v. Small*, 2008 WL 1817243, *23-24 (D. Cal. 2008) (applying *Hill*'s prejudice analysis to counsel's unreasonable advice to waive jury trial and submit to a bench trial). (*See* Motion at 27-28; Ex. E at ¶¶ 4-5; Ex. AC; Ex. AH at ¶¶ 16, 18.) In cases where counsel's "'deficient performance arguably led not to a judicial proceeding of disputed reliability but rather to the forfeiture of a proceeding itself,'" as was the case here, a defendant establishes prejudice by demonstrating he would have insisted that the judicial proceeding occur. *Lee*, 137 S. Ct. at 1965 (when defendant alleges counsel's deficient performance caused him to relinquish proceeding, courts do not consider whether *result* would have been different and instead consider whether defendant was prejudiced "by the 'denial of the entire judicial proceeding'"), *quoting Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Miller v. State*, 548 S.W.3d 497,

499, 502 (Tex. Crim. App. 2018) (applying *Hill* and *Lee* in bench trial context). Thus, Cotterman need not show that he would have been better off with a jury trial; instead, he only needs to show that but for counsel's errors, he would have insisted on a jury trial. He has made such a showing.

Cotterman would have demanded a jury trial if it were not for trial counsel's errors. He was understandably reluctant to relinquish that important constitutional right and repeatedly expressed his reservations to trial counsel. (*See* Motion at <u>Ex. E</u> & <u>AC</u>; Opp., <u>Ex. 1</u> at ¶ 15; <u>Ex. AH</u> at ¶¶ 16, 18.) He ultimately did so because trial counsel led him to believe he was receiving a significant benefit—avoiding a mandatory life sentence—in exchange for his waiver of his constitutional right when, in fact, he derived no benefit at all. *Cf. Lee*, 137 S. Ct. at 1968-69 (defendant satisfied burden of proving counsel's errors caused him to waive trial where uncontroverted evidence showed he only pled guilty after counsel's erroneous assurance regarding plea term). Thus, Cotterman was prejudiced.

Furthermore, the record does not establish that trial counsel's decision to pursue a bench trial was otherwise a sound strategic decision; instead, it appears that the decision was largely motivated by inappropriate personal concerns and preferences. His correspondence with the government supports Cotterman's contention that trial counsel was dead set on a bench trial and unilaterally decided early on that the case would not be presented to a jury. Though trial counsel later

claimed he had not considered a bench trial until after the Ninth Circuit reversal, he conveyed his intention to the government and the trial court as early as 2008. (*See* Motion at 20-21; <u>Ex. X</u>, <u>Z</u>, <u>AA</u> & <u>AB</u>.) Moreover, he was overly focused on his concern that a jury trial would be a "waste of [the government's] time and [his] time," as opposed to whether a bench trial was in Cotterman's best interest. (*See* Motion at 21, 24, 27; <u>Ex. AC</u>.)

Trial counsel now claims that, before Cotterman "waived jury trial," he "fully explained his rights to him" and that he was "fully aware of the ramifications of a jury waiver." (Opp., <u>Ex. 1</u> at ¶ 11.) Even if trial counsel had "explain[ed]" the general ramifications of a jury waiver, a claim which Cotterman disputes, Cotterman could not have been "fully" informed of the decision because trial counsel was operating under a false impression of the facts when he provided that advice, given his erroneous understanding of § 3559(e)'s applicability.

Trial counsel avoided discussing the jury trial decision with Cotterman, despite Cotterman's multiple requests for a meeting and/or a response to his questions about the bench trial decision. (<u>Ex. AH</u> at ¶ 16.) Cotterman recalls writing trial counsel on March 8, 2014 and noting that "it seems plausible that a jury could find specific charges less relevant than would judge . . . *I want us to make a fully-informed choice here*. I'm guessing that if we decide to go jury, the June 10 date is at risk. So I'm hoping we can meet soon to resolve open issues,

especially this choice." (*Id.*) (emphasis added). Trial counsel did not respond to Cotterman's letter and did not further advise him regarding the jury waiver issues. (*Id.*)

The government attempts to attack Cotterman's claim that trial counsel unilaterally elected a bench trial by pointing out that those early "communications were merely discussions of the bench trial option" that "did not operate as any kind of waiver." (Opp. at 21.) Obviously, those discussions did not waive Cotterman's right to a jury, but they *do* establish that trial counsel had conveyed his intention to try the case by bench to the government and the Court early on—*long before* he and Cotterman had even begun discussing trial decisions. Those conversations were also far more than "mere[] discussions" of the bench trial option. (*Id.*) Instead, they reveal that trial counsel had repeatedly assured the government that the case would not be tried by jury before he had even conferred with his own client about relinquishing his critical constitutional right. (*See* Motion at <u>Ex. Z</u>, <u>AA</u> & <u>AB</u>.) Those conversations also contradict trial counsel's recent assertion that he did not recommend a bench trial until after the case came back from the Ninth Circuit. (Opp., <u>Ex. 1</u> at ¶ 10.)

The government also points out that the letters were exchanged "[a]round the same time that the Government filed its notice of prior conviction" in attempt to show the discussion of a bench trial with stipulated facts was not tied to an

agreement that the government would not seek the sentencing enhancement. (Opp. at 21.) This argument is unpersuasive and unsupported by the record. Not only did all of the relevant discussions occur *after* the notice was filed, trial counsel himself indicated that the discussion of a bench trial with stipulated facts was directly tied to an agreement that the government would not seek the sentencing enhancement. (Motion at Ex. AD.) And though he now claims that the government's "dismiss[al of] the enhancement . . . was not in exchange for waiving a jury trial," at the same time, he admits he used Cotterman's "wavering" to "encourage" the government to "dismiss[] the enhancement regarding the prior." (Opp., Ex. 1 at 15.) Ultimately, trial counsel's letter to the probation officer says it all: "prior to trial, the government withdrew its Notice of Prior Conviction—*that was part of the agreement for a bench trial*." (Motion at Ex. AD.) (emphasis added.)

Finally, trial counsel's ex post facto attempt at rationalizing his decision by claiming the bench trial option would provide an opportunity to present the legal argument about what constituted pornography necessarily fails. (Opp., Ex. 1 at ¶ 10.) This explanation does not provide a reasonable tactical basis for waiving a jury trial because trial counsel could have presented the legal arguments to the district court without waiving a jury trial. (*See* Motion at 43, 45-46.) Trial counsel's bench trial decision was not a sound tactical decision; instead, it was

motivated by his own personal preference to save time by avoiding a "full blown jury trial" and his mistaken belief that it was necessary for Cotterman to avoid a mandatory-life sentence.  (Motion at <u>Ex. Z</u>, <u>Ex. AC</u>.)

2. *Cotterman's Jury Waiver Was Invalid Because He Was Inadequately Advised of His Right to a Jury Trial and the District Court's Colloquy Was Insufficient to Ensure His Waiver Was Voluntary, Knowing and Intelligent*

Relatedly, Cotterman's waiver was invalid because it was not knowing, voluntary, and intelligent.  He only acquiesced to trial counsel's strong preference for a bench trial because he was incorrectly advised that it was a necessary concession in order to avoid a mandatory life sentence and because he believed the decision ultimately rested with trial counsel.  (Motion, <u>Ex. E at</u> ¶¶ 4, 9.)  And though the government correctly notes that Cotterman's written waiver conferred onto it the presumption that it was made knowingly and intelligently, the written waiver is not dispositive since he has presented additional facts rebutting that presumption.[4]  *See United States v. Cochran*, 770 F.2d 850, 851, 851 n.1 (9th Cir.

---

[4]To the extent the government suggests that Cotterman may have "waived" any challenge to the bench trial by failing to personally "object to trial counsel's assertions that they were requesting a bench trial" at a pretrial conference, that claim is meritless.  (*See* Opp. at 18.)   A defendant is not required to affirmatively—or personally—object to his counsel's request for a bench trial in order to preserve his constitutional right to a jury trial.  *See Solis v. County of Los Angeles*, 514 F.3d 946, 953 (9th Cir. 2008) (right to jury trial is fundamental right and "'courts should indulge every reasonable presumption against waiver'"), *quoting Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981); *United States v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004) ("'[C]ourt's indulge every

1985) (written waiver only creates presumption of voluntary, knowing, and intelligent waiver, which can be overcome by additional facts). (*See* Motion at 29-30.)

Cotterman's contemporaneous divulgence to trial counsel that he regretted not electing a jury trial in his previous case, together with trial counsel's comment to the government that Cotterman was teetering on demanding a "full-blown jury trial" and his warning that a jury waiver was necessary to avoid mandatory life—which ultimately proved false—establish his reluctance to waive a jury trial. (Motion, Ex. E at ¶¶ 4-5; Ex. X, Resp. to RA #7; Ex. AC; *see also* Opp., Ex. 1 at ¶ 15.) These uncontroverted facts rebut the presumption of the written waiver's validity and show it was not executed with sufficient awareness of the actual relevant circumstances. Cotterman's jury waiver was not made voluntarily, knowingly, and intelligently. *See Brady v. United States*, 397 U.S. 742, 749 (1970) (waivers of constitutional rights must be voluntary, knowing, *and* intelligent acts made with sufficient awareness of relevant circumstances and likely consequences); *see also United States v. Hamilton*, 391 F.3d 1066, 1071 (9th Cir. 2004) (waiver is "'intentional relinquishment or abandonment of a known right'"), *quoting United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997).

---

reasonable presumption against waiver of fundamental constitutional rights' and 'do not presume acquiescence in the loss of fundamental rights'"), *quoting Carnley v. Cochran*, 369 U.S. 506, 514 (1962); *see also* Fed. R. Crim. P. 23(a) (jury trial presumed *unless* several criteria are satisfied).

A waiver of a constitutional right is voluntary *only if* "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and is knowing and intelligent *only if* "made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Though Cotterman was not coerced into a bench trial, his waiver was obtained by deception because he was repeatedly told that he needed to waive a jury trial to avoid facing a mandatory-life sentence, despite never facing such a sentence in the first place. (*See* Motion at 30-31.) Because his 1992 convictions were not predicate offenses for a § 3559(e) sentencing enhancement, trial counsel's advice was incompetent and improperly induced his jury waiver. *Cf. Hill*, 474 U.S. at 56 (where defendant enters guilty plea upon counsel's advice, voluntariness of plea depends upon whether advice was within range of competence demanded of attorneys in criminal cases). Cotterman faced a significant amount of pressure to waive a jury trial and was misleadingly led to believe the decision ultimately rested with trial counsel. (Motion, Ex. E at ¶¶ 4-5; Ex. AH at ¶¶ 16, 18.) Thus, the waiver was involuntary.

Nor was Cotterman's waiver knowing or intelligent because it was based on incorrect advice and a mistaken understanding of his legal exposure. *See Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). Moreover, trial counsel did not properly advise Cotterman that the decision to waive a jury trial belonged to him alone or

discuss with him the critical benefits he would be giving up by submitting to a bench trial. (*See* Motion at 26-28; Ex. E at ¶¶ 4-5; Ex. AH at ¶ 18.) Neither trial counsel nor the district court informed him that "twelve members of the community compose a jury," that he could have "take[n] part in jury selection" or that the "jury verdicts must be unanimous." *Cochran*, 770 F.2d at 853. (*See id.*) And though the government cites Cotterman's previous court experience as "proof" that his waiver in this case was knowingly, it actually suggests the opposite. *Cf. United States v. Mack*, 215 Fed. Appx. 649 (9th Cir. 2006) (suggesting defendant's previous *jury* trial suggested "specific and personal knowledge" of the jury structure and process). The fact that Cotterman has never been tried by jury makes it more likely that he has never been adequately advised of the critical benefits he gave up by waiving a jury trial.

Next, though the Ninth Circuit has declined to impose "an absolute requirement" for a colloquy in every case, it has deemed it to be a critical component of establishing the necessary precondition that a defendant's jury waiver is voluntary, knowing, and intelligent. *United States v. Duarte-Higareda*, 113 F.3d 1000, 1003 (9th Cir. 1997). Here, in light of trial counsel's failure to accurately inform Cotterman of the relevant circumstances surrounding his decision, the district court's incomplete colloquy was insufficient to ensure Cotterman's waiver was made voluntarily, knowingly, and intelligently. *Id.* at

1002; *see also Cochran*, 770 F.2d at 853.  (*See* Motion at 30.)  The district court's examination did not establish that he was fully aware of the scope of the right he was waiving, *see United States v. Lyons*, 895 F.2d 210, 215 (1st Cir.), *cert. denied*, 498 U.S. 920 (1990), nor did it elaborate upon the right to a jury trial or question Cotterman as to his "reasoning for waiving the right."  *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995).  Thus, Cotterman's jury waiver was invalid and requires a new trial.  *See United States v. Shorty*, 741 F.3d 961, 969 (9th Cir. 2013) (invalid jury waiver is structural error that requires reversal regardless of prejudice).

The government also argues that Cotterman "cannot establish that any prejudice resulted from the bench trial because "the overwhelming strength of the evidence of the case" provided "no reason to expect that a jury verdict would have been anything other than guilty."  (Opp. at 23.)  In support, it cites *Revels v. United States*, No. C14-5896BHS, 2016 WL 4799701 at *5 (W.D. Wash. Oct. 5, 2016) for the proposition that the defendant must show that the result of a jury trial "would have been different."  (*Id.*)  But a defendant need not show that the result of a jury trial would have been different in order to obtain relief.  As Cotterman explained in his Motion and above, *see supra* at 17, a defendant establishes prejudice when counsel's performance caused him to forego a jury trial by demonstrating that, but for counsel's errors, he would have insisted on electing a jury trial.  *See Hill v. Lockhart*, 474 U.S. 52, 57-59 (1984); *Torres*, 2008 WL 1817243, *23-34; *Lee*, 137

S. Ct. at 1965 (prejudice inquiry differs in cases where attorney error caused defendant to forfeit entire proceeding). (Motion at 27-28.)  He has met that burden here.  (Motion, <u>Ex. E</u> at ¶¶ 4-5, <u>Ex. X</u> at Ans. to RA # 1-2, 10; Opp., <u>Ex. 1</u> at ¶¶ 14-15.)

Finally, the government contends Cotterman's claim that he was not adequately informed of his right to a jury trial is procedurally defaulted under *United States v. Frady*, 456 U.S. 152, 168 (1982) because it was not raised on direct appeal.  (Opp. at 24.)  The crux of Cotterman's jury waiver claim pertains to his trial counsel's inadequate and inaccurate advice surrounding his jury waiver.  Because that claim concerns trial counsel's actual performance and requires consideration of facts and circumstances outside the trial record, it is properly asserted in this § 2255 proceeding.  *See Cronic*, 466 U.S. at 667 n.42 (claims attacking actual performance of trial counsel not ordinarily reviewable through direct appeal and should be asserted in § 2255 motion); *United States v. Reyes-Meza De Polanco*, 422 F.2d 1304, 1305 (9th Cir. 1970) (if, contrary to recitations in waiver signed by defendant and counsel, defendant claims she was not fully informed of right to jury trial and did not knowingly and intelligently yield that right, those facts can be developed and reviewed in § 2255 proceeding).

Likewise, the record as to Cotterman's related claim that the trial court's colloquy was inadequate because of trial counsel's deficiencies was similarly

insufficiently developed for appellate review. *See Reyes-Meza De Polanco*, 422 F.2d at 1305; *see also Cochran*, 770 F.2d at 851 n.1 (if defendant wishes to pursue claim that waiver was not made voluntarily, knowingly, or intelligently by introducing facts outside the record, *he must do so in a habeas corpus proceeding*); *United States v. Saadya*, 750 F.2d 1419, 1420 (9th Cir. 1985). Thus, his jury waiver claim is not procedurally defaulted and is reviewable in this proceeding.[5]

### D. Cotterman Was Deprived of His Fifth and Sixth Amendment Right to Testify, and Received Ineffective Assistance of Counsel When Trial Counsel Failed to Inform Him that His Right to Testify Was His Alone

A defendant has a "fundamental constitutional" right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); *see also United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995) (convicted defendant may assert ineffective assistance claim based on counsel's failure to advise of right to testify). Cotterman contends that trial counsel did not inform him that the decision to testify

---

[5]Even if the Court concludes Cotterman was required to raise the invalid jury waiver issue on appeal, it is structural error and is therefore reviewable in this collateral proceeding, subject to a prejudice showing. *See Shorty*, 741 F.3d at 969 (invalid jury waiver is structural error); *Neder v. United States*, 527 U.S. 1, 7 (1999) (properly preserved structural error claim ordinarily requires automatic reversal regardless of error's effect on outcome); *but see Weaver*, 137 S. Ct. at 1905, 1914 (structural error not preserved at trial or raised on appeal is reviewable in context of ineffective-assistance claim in habeas proceeding, but requires showing of prejudice to obtain relief). Cotterman's invalid jury waiver was prejudicial because he would not have signed it and would have insisted upon a jury trial had trial counsel adequately explained the nature of the right he was giving up. *Cf. Lee*, 137 S. Ct. at 1965.

ultimately rested with him and, had he received such advice, he would have elected to testify. *United States v. Owens*, 483 F.3d 48, 58-59 (1st Cir. 2007) (recognizing that failure to inform defendant of right to testify constitutes performance outside objective standard of reasonable competence and could be prejudicial), *abrogated on other grounds by Weaver*, 137 S. Ct. 1899; *see also United States v. Aileman*, 710 F. Supp. 2d 960 (D. Cal. 2008) (acknowledging defendant may assert ineffective assistance of counsel claim where trial counsel denied him right to testify). (*See* Motion at 33-34, Ex. E at ¶ 6; Ex. AH at ¶¶ 12-13.)

Trial counsel now alleges Cotterman was "well aware of his right to testify, but I did advise him of this right and that it was his right alone, and his decision to testify or not." (Opp., Ex. 1 at ¶¶ 17-19.) Cotterman vehemently disputes trial counsel's claim and is adamant that he "expected to testify" and his "position did not waiver throughout the 6 years." (Ex. AH at ¶¶ 12-13.) Because the record raises a factual issue regarding whether Cotterman voluntarily waived his right to testify, he is entitled to an evidentiary hearing to resolve that claim.[6] *See Owens*, 483 F.3d at 60-61 (permitting habeas court to assess credibility of defendant's

_____

[6]Cotterman's claim that trial counsel was ineffective in informing him of that right is not defaulted because it concerns trial counsel's actual performance and requires consideration of facts and circumstances outside the trial record; it is therefore properly asserted in this § 2255 proceeding. *See Cronic*, 466 U.S. at 667 n.42; *Reyes-Meza De Polanco*, 422 F.2d at 1305; *cf. Massaro v. United States*, 538 U.S. 500, 505 (2003) (ineffective assistance of counsel claim may be brought in § 2255 proceeding regardless of whether petitioner could have raised claim on direct appeal).

"assertion that he would have testified" had trial counsel properly communicated that decision to testify rested with defendant).

The government notes that the Ninth Circuit has concluded that district courts have no obligation to ensure a defendant knows of his right to testify, *see United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990), but the Circuit has not extended that principle to trial counsel or conclusively foreclosed claims of ineffective assistance based on counsel's failure to advise a defendant of the right. *Cf. Aileman*, 710 F. Supp. 2d at 968 (applying Sixth Amendment principles to claim that trial counsel unfairly denied defendant right to testify under *Strickland*).

It is well-established that the right to testify is personal and may only be surrendered by defendant's *knowing and intentional* relinquishment of the right. *Edwards*, 897 F.2d at 446. In order for this fundamental right to bear any significance, it follows that a defendant must first be *aware* of his right to testify in order to then "knowingly" relinquish it.   When a defendant insists his trial counsel's failure to inform him of the right to testify caused him to unwittingly waive that right, that claimed ineffective assistance must be subject to some form of review.  *Cf. Owens*, 483 F.3d at 58 (if defendant is unaware of right to testify and counsel, without consultation, unilaterally declines to call defendant as witness, defendant's right to make informed decision has been nullified); *cf. Strickland*, 466 U.S. at 697 (focus of habeas corpus is fundamental fairness).

Because Cotterman asserts he was never informed that the decision to testify ultimately rested with him, and he was unaware of how to execute his right, this Court should not deem his silence at trial as a voluntary waiver of that right.[7] *Cf. United States v. Nohara*, 3 F.3d 1239 (9th Cir. 1993); *see also Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001) (silence alone cannot support inference of waiver of right to testify). (*See* Motion, <u>Ex. E</u> at ¶¶ 6-8).

Other Circuits that have addressed this issue have determined that trial counsel's waiver or failure to advise defendant of the right may constitute ineffective assistance of counsel and is reviewable in habeas proceedings. *See Owens*, 483 F.3d at 58-59 (failure to inform defendant of right to testify constitutes performance outside of objective standard of reasonable competence and could be prejudicial); *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997) (trial counsel has burden of ensuring defendant is informed of nature and existence of right to testify, and failure to do so may constitute ineffective assistance of counsel); *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010); *United States v. Mullins*, 315 F.3d

---

[7]In his sworn affidavit, Cotterman alleges: "Donau never informed me that it was my decision, and my decision alone to testify at my trial. . . . *I truly believed that it was his decision as to whether or not I would testify*." (Motion, <u>Ex. E</u> at ¶ 6) (emphasis added.) He also avows that he "did not address the court at [trial] because Mr. Donau had repeatedly told [him] that he operated independently in the courtroom" and "[h]ad he known it was [his] decision whether to testify, [he] would have testified. (*Id.* at ¶ 8.) Furthermore, trial counsel's recent claim that he advised Cotterman of his right to testify contradicts his responses during an informal interview with Cotterman's former habeas counsel. This contradiction should be addressed at an evidentiary hearing.

449, 452 (5th Cir. 2002); *Foster v. Delo*, 11 F.3d 1451, 1454-59 (8th Cir. 1993) (evaluating whether counsel failed to inform defendant of right to testify and, thus failed to protect that right, as ineffective assistance claim); *Cannon v. Trammell*, 796 F.3d 1256, 1270-72 (10th Cir. 2015) (whether defense counsel informed defendant of right to testify reviewable in collateral proceeding); *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) ("[b]ecause it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected," habeas proceeding is appropriate vehicle for claims that trial counsel violated defendant's right to testify).

Finally, to the extent this Circuit's caselaw suggests that a waived right to testify is unreviewable in *any* proceeding, this case is distinguishable and warrants review. *Cf. Nohara*, 3 F.3d at 1243-44 (in concluding defendant's argument that counsel ineffectively waived his right to testify was precluded, court focused entirely on trial court's duty and did not consider whether defendant could assert claim premised on defense counsel's duty). Cotterman urges the Court to conclude that trial counsel's failure to adequately advise him of the right to testify resulted in the default of that right. *Owens*, 483 F.3d at 58-59; *Brown*, 124 F.3d at 79; *Foster*, 11 F.3d 1451; *see also United States v. Barron*, 2006 WL 3337497 (D. Cal. 2006) (in acknowledging *Nohara* concluded waiver precluded ineffective assistance claim, noting that court was ambiguously focused on trial court's lack of duty to

advise defendant, as opposed to evaluating any duty of trial counsel).  At the very least, an evidentiary hearing must be held to determine whether trial counsel adequately informed Cotterman of his fundamental right to testify.[8]  *Cf. United States v. Johnson*, 820 F.2d 1065, 1074 (9th Cir. 1987) (issue of fact as to whether defendant knowingly and voluntarily waived right to testify suitable for § 2255 review).

### E. Trial Counsel's Decision to Enter into Multiple Stipulations of Fact Was Objectively Unreasonable and Amounted to Ineffective Assistance of Counsel

As discussed in the Motion, trial counsel entered into numerous stipulations of fact that effectively established ownership, possession, and identity, and provided the government with—as he predicted—"all that [wa]s necessary for a conviction."  (Motion at Ex. AB.)  Thanks to counsel's stipulations, the prosecution was left with the relatively simple burden of proving that the images constituted pornography as to the possession claim.  Trial counsel agreed to the stipulations in exchange for the government's agreement that it would not introduce Cotterman's prior conviction as a sentencing enhancement.  (Motion at Ex. AD.)

---

[8]Cotterman relies on his Motion to establish prejudice as to this claim and for specific examples of trial counsel's repeated attempts to block his testimony and his failure to properly explain the right. (*See* Motion at 35-36, 38; Ex. E at ¶¶ 6-8.; Ex. AH at ¶¶ 12-13.)

The government engages in an exhaustive analysis of the stipulations' validity, but Cotterman is not challenging their validity; instead, he contends that trial counsel was ineffective in counseling him to enter into them. *Cf. Strickland*, 466 U.S. 668. (Opp. at 28-29.) As the government notes, entering into stipulations ordinarily falls within the realm of an attorney's strategic decision-making and he can waive a defendant's constitutional rights. *See*, *e.g.*, *United States v. Gamba*, 541 F.3d 895, 900 (9th Cir. 2008). But a defendant may challenge trial counsel's decision to enter into stipulations that relieved the government of its burden of proving several elements of the charges in a § 2255 motion. *Cf. Hensley*, 67 F.3d at 185 (objectively unreasonable tactical decisions constitute ineffective assistance of counsel).

Furthermore, stipulated-facts proceedings are subject to additional constitutional restrictions to ensure due process. *United States v. Larson*, 302 F.3d 1016, 1021 (9th Cir. 2002). A defendant's agreement to those stipulations are knowing and intelligent *only if* entered into with "'sufficient awareness of the relevant circumstances and likely consequences.'" *Id.*, *quoting Adams v. Peterson*, 968 F.2d 835, 844 (9th Cir. 1992) (en banc). A defendant enters into a stipulation knowingly only if he "'weighed the costs and benefits of the stipulated-facts trial procedure and made a rational decision to pursue that route.'" *Id.*

Here, trial counsel's decision to enter into the stipulations was objectively unreasonable in light of the surrounding circumstances. *See Strickland*, 466 U.S. 668; *Hensley*, 67 F.3d at 185. Trial counsel convinced Cotterman that he was avoiding a mandatory life sentence by submitting to a bench trial and stipulating to several critical facts when, in reality, mandatory life was never on the table. He also pressured Cotterman into signing the stipulations even though he "did not agree with the stipulation or understand why [he] needed to sign it." (Motion, <u>Ex. E</u> at ¶ 9.) Though Cotterman initially rejected the government's proposed stipulations—and even proffered his own stipulation, which was ignored—he ultimately signed a revised version under pressure, "with the trial just a few days away and [trial counsel] insisting that the courtroom would be a circus without it." (<u>Ex. AH</u> at ¶ 19.)

Cotterman was also prejudiced by trial counsel's errors because there is a reasonable probability that the results of the trial would have been different but for the stipulations. *Strickland*, 466 U.S. at 687-88, 694. For instance, had trial counsel not stipulated to the facts surrounding the destroyed hard drive, the government would have had to prove that the hard drive—which contained *all* of the incriminating evidence against Cotterman—was inadvertently destroyed and that its destruction did not prejudice him. *See Illinois v. Fisher*, 540 U.S. 544, 547 (2004); *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). The government also

would have had to prove authenticity, *see United States v. Hock Chee Koo,* 700 F. Supp. 2d 1115 (D. Or. 2011) (proponent of evidence must make prima facie showing of authenticity); chain of custody, *see United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) (prosecution "must introduce sufficient proof" that evidence is in substantially same condition as when it was seized); as well as identity and possession. (*See* Motion at 39-41.)

Because the evidence on the hard drive was "absolutely critical and determinative" to the prosecution's case," trial counsel's stipulation that its destruction was inadvertent and that chain of custody was established was a *major concession* to the government. *United States v. Belcher*, 762 F. Supp. 666, 672 (D. Va. 1991). Under these circumstances, trial counsel's decision to enter into the stipulations cannot be regarded as a reasonable tactical one and instead amounted to ineffective assistance. *Hensley*, 67 F.3d at 185.

**F. Cotterman Received Ineffective Assistance Throughout His Trial Proceedings, During Sentencing, and on Appeal**

1. *Pre-trial*

Cotterman relies primarily upon his Motion to support these claims but briefly responds to the government's specific contentions. (*See* Motion at 55-59.) While it is true that trial counsel's motion to suppress held the case in litigation for several years, that is not conclusive proof that he effectively litigated the issues. He failed to make an adequate record on the reasonable suspicion issue, which was

the central issue in the Ninth Circuit's decision. *See United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc). (*See* <u>Ex. AH</u> at ¶ 5.) Had the record been adequately developed by trial counsel below, Cotterman's appellate counsel could have made a more specific showing regarding the lack of reasonable suspicion, giving the government and the Circuit less room to argue that reasonable suspicion existed. Had trial counsel adequately filled in the gaps in the trial record, there is a reasonable likelihood that the outcome of the appeal would have been different; the Circuit likely would not have found reasonable suspicion, given that the *en banc* panel deemed the issue to be extremely close. *See id.* (describing majority's application of reasonable suspicion requirement to Cotterman as troubling because of "exceedingly weak facts of this case" with respect to reasonable suspicion) (Smith, J., dissenting); *see also Strickland*, 466 U.S. at 687-88.

Moreover, the motion to suppress was just about the *only* pre-trial motion trial counsel filed. Once the suppression issue was exhausted, he essentially gave up on the case. He should have filed a pre-trial motion to dismiss Counts 1 and 2 as not depicting sexually explicit conduct. Had he done so, and had the motion been denied, Cotterman would have gained significant insight into his likelihood of success at a bench trial and could have instead elected to fully present his case in a "full blown trial." (Motion at 43, 48.) Trial counsel was similarly ineffective for the additional reasons set forth in Cotterman's Motion. (*See id.* at 43-48, 58-59.)

## 2. *Trial*

Trial counsel's decision not to file a trial memorandum was completely illogical and ineffective, particularly since he indicated he believed his strongest arguments were legal ones.[9]  Had he submitted a detailed memorandum outlining his legal positions, he would have significantly increased the likelihood of persuading the district court to adopt his position.  In contrast, the government submitted a persuasive 23-page memorandum outlining its positions and arguments to the district court, which trial counsel did not even bother to respond to.  (*See* Motion at Ex. K.)  This was plainly ineffective.

Trial counsel was similarly ineffective in failing to move for a directed verdict at the close of the government's case.  Had he done so and had the motion been denied, trial counsel would have been on notice that it was necessary for Cotterman to testify or otherwise put on additional evidence in his defense.  This also would have helped further ensure his right to testify was protected.  *See supra*, section I.D at 32.

Moreover, trial counsel was wholly ineffective in challenging the sexually explicit conduct.  (*See* Motion at 42-48 (Claim V).)  According to trial counsel, "[o]ur defenses in this matter included that the defendant had not 'used' the child

---

[9]Trial counsel now denies stating he believed the strongest defenses were legal ones, making this issue ripe for an evidentiary hearing.  (*See* Motion, Ex. X at. Resp. to RA #19.)

to produce child pornography because she had been asleep at the time he touched and photographed her." (Opp., Ex. 1 at ¶ 20.) One of the scantly few reasons trial counsel cited in support of a bench trial was his belief that his strongest issues were whether the images located on Cotterman's computer "depicted sexually explicit conduct," *see* 18 U.S.C. § 2256(2), and whether the victim was "used" or "engaged." He reserved the legal argument for the close of trial, but then did a poor job arguing the issues; he did nothing more than raise a couple of vague points without informing the district court why it should adopt his position, either factually or legally.

Perhaps even more egregious than trial counsel's ineffective arguments themselves was his decision to wait until closings to present them instead of asserting the arguments in a pretrial motion to dismiss or in a trial memorandum. (Motion at 7, 43-45.) Had trial counsel filed a pretrial motion, he would have had the legal issues determined by the Court *before* deciding whether it was in Cotterman's best interest to proceed with a jury or bench trial. As noted in the Motion, effective trial counsel would have raised several of the issues—including whether the victim was "used" or "engaged"—before trial or, at the very least, fully briefed the issues in a trial memorandum. (Motion at 45-46.)

Next, to the extent the government claims Cotterman's arguments as to whether the photographs constituted pornography were "meritless," its own

exhaustive analysis of those issues prove otherwise. (*See* Opp. at 34.) The government largely relies on out-of-circuit cases to challenge Cotterman's assertions, which suggests the issues are more novel and less clear than it leads on. (*Id.* at 35-41.) The lack of established Ninth Circuit precedent, together with the position the government had taken as to this issue in other cases, rendered this issue ripe for appellate review. (*See* Motion at 48-49, discussing government's concession in *United States v. Carroll*, 227 F.3d 486 (5th Cir. 2000) that minor himself must "engage" in actual or simulated conduct). Trial counsel's failure to adequately develop the record and appellate counsel's failure to raise the issue on appeal constituted ineffective assistance of counsel. Cotterman otherwise refers the Court to Claim V of his Motion in response to the government's sexually explicit conduct arguments but elaborates on one specific point. (*See* Motion at 42-49.)

The government cites *United States v. Laursen*, 847 F.3d 1026 (9th Cir. 2017) for its claim that the Ninth Circuit has decided that "use" does not require participation by the minor, but *Laursen*'s holding is not so broad. (Opp. at 37-38.) Though the Circuit concluded that "active conduct alone suffices to sustain a conviction under § 2251(a)," it declined to adopt the broader definition of "use" adopted by other circuits. *Id.* at 1033; *see also United States v. Theis*, 853 F.3d 1178 (10th Cir. 2017) (interpreting *Laursen*'s holding as deviating from other

circuits' broader interpretation of "use" element). Thus, unlike its sister circuits, which have held that "use" is fully satisfied by showing a child was photographed to create pornography, the Ninth Circuit requires some proof "of active or coercive conduct" to sustain a conviction. *Laursen*, 847 F.3d at 1032-33, *citing Overton*, 573 F.3d at 692. Here, because there was arguably no "active" conduct, the argument should have been asserted at trial and on appeal.

In any event, as noted above, the heart of Cotterman's claim as to trial counsel's ineffectiveness pertains to *when* and *how* he chose to present these arguments. Because most of his "legal" arguments actually concerned questions of fact, an effective presentation would have significantly increased the likelihood of the district court acquitting him of Counts 1 and 2. *See United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009) (whether pictures fall within statutory definition is question of fact); *see also United States v. Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990) (whether photo is lascivious is question of fact).

Cotterman otherwise relies on the arguments set forth in his Motion to rebut the government's claim that trial counsel provided effective assistance throughout the case. (Motion at 42-49, 55-62.) Trial counsel's multiple errors before and during trial constituted ineffective assistance of counsel and prejudiced Cotterman because they substantially reduced the likelihood of obtaining acquittals on any of the charges.

### 3. *Sentencing*

Cotterman's trial counsel was also ineffective in failing to advocate for a sentencing adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 because there was sufficient evidence supporting such a reduction. He submitted to a limited bench trial, stipulated to critical incriminating facts and evidence that helped establish his guilt, and did not testify. The only significant issue he contested at trial was whether the photographs depicted sexually explicit conduct and violated the statutory elements of § 2251. He also voluntarily "waived extradition from Australia" and "did not contest the evidence or deny factual guilt." (Motion at 50.)

Contrary to the government's assertion, this *is* one of "rare situations" where a defendant who proceeds to trial was eligible for an acceptance of responsibility reduction. (Opp. at 42.) Note 2 to U.S.S.G. § 3E1.1(a) makes clear that defendants who go to trial to assert issues unrelated to factual guilt qualify for the reduction. This includes going to trial to make "a challenge to the applicability of a statute to his conduct." § 3E1.1(a), n.2. This is precisely what Cotterman did. Because Cotterman only contested legal guilt, he absolutely qualified for a sentencing adjustment for acceptance of responsibility, and it should have been argued to the Court.

The PSR writer did not conclude Cotterman "had done nothing to demonstrate acceptance of responsibility prior to trial." (Opp. at 43.) Instead, the probation officer noted that it did "not *appear* that [Cotterman] did anything to *clearly* demonstrate acceptance of responsibility," but also noted that he was remorseful and acknowledged there were no excuses for his actions. (Motion, <u>Ex. M</u> at ¶ 20 (emphasis added).) He also fully admitted to the charged conduct at sentencing; he simply struggled to understand why the agents acted to further victimize the victim and maintained he did not take the photographs for sexual gratification. He also wanted to submit to an independent psychiatric examination, in part, to better understand his own behavior, and repeatedly asked trial counsel that he be permitted to undergo further psychological evaluation, but trial counsel refused those requests. (<u>Ex. AH</u> at ¶ 23.) It would not have been frivolous to argue for acceptance of responsibility and the argument should have been made. *United States v. McKinney*, 15 F.3d 849 (9th Cir. 1994); *State v. Ochoa-Gaytan*, 265 F.3d 837 (9th Cir. 2001).

Trial counsel also failed to object to the guideline calculations, to correct the presentence report regarding the factual claims surrounding the 1992 convictions, to investigate the facts underlying the 1992 convictions, as Cotterman had requested, or to raise several mitigating facts to the district court. (*See* Motion at 63-66; <u>Ex. M</u>; <u>Ex. AH</u> at ¶ 22.) He should have objected to the PSR's factual

description of the convictions because it was never established that Cotterman penetrated one of the victim's vaginal opening with his finger; that unestablished "fact" was highly prejudicial to Cotterman because it was similar to the conduct charged in this case and likely impacted the district court's sentencing decision. Trial counsel was ineffective in failing to object to the PSR and appellate counsel was ineffective for not raising it on appeal. *Cf. United States v. Castillo-Marin*, 684 F.3d 914, 919-20 (9th Cir. 2012) (district court may not rely on PSR's factual description of prior offense in sentencing decisions and doing so constitutes plain error); *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 432-33 (9th Cir. 2011) (sentencing court may not turn to PSR for narrative description of underlying facts of prior conviction notwithstanding lack of objection to PSR).

Trial counsel was similarly ineffective in failing to argue for a variant sentence based on Cotterman's advanced age, *see* U.S.S.G. §§ 5H1.1, to inform the district court of his admirable work history, or to raise any policy arguments about the severity of sentences in pornography cases or proportionality to similarly situated defendants. *See United States v. Henderson*, 649 F.3d 955, 963-64 (9th Cir. 2011) (to account for controversial harshness, district courts may vary from child pornography Guidelines, U.S.S.G. § 2G2.2, based on policy disagreement and to avoid unreasonable sentences); *see also United States v. Mota*, 434 Fed. Appx. 636 (9th Cir. 2011) (discussing severity of oft-criticized child pornography

Guideline, § 2G2.2) (unpublished decision); *United States v. Sawyer*, 672 Fed. Appx. 63 (2d Cir. 2016) (concluding thirty-year sentence for production of child pornography was substantively unreasonable where, as here, defendant shared no images with others, possessed fewer images than in typical cases, and did not have sex with victims) (unpublished decision); *see also* Fed R. App. P. 32.1 & Ninth Cir. R. 36-3; *cf. United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996) (elderly defendant sentenced to seventy months in prison for one production count under 18 U.S.C. § 2251(a) and three aiding and abetting counts in violation of 18 U.S.C. § 2422 under similar circumstances).[10]

### 4. *Appeal*

Cotterman relies primarily on his Motion for his claim that appellate counsel was ineffective. (*See* Motion at 19, 31-32, 42, 46, 48-49, 52-54; <u>Ex. W</u>.) She failed to raise several colorable arguments on appeal and waived Cotterman's ability to challenge certain issues in later proceedings. *See supra* at n.5-6. For instance, appellate counsel did not consider raising the § 3E1.1 issue because she incorrectly believed Cotterman was precluded from receiving the adjustment since he elected to go to trial and contested that his conduct met the "basic elements" of the charged offenses. (Motion at 52-53; <u>Ex. W</u> at ¶ 4.) A defendant is not barred

---

[10]Cotterman otherwise relies on the arguments in his Motion to rebut the government's claim that trial counsel provided effective assistance during sentencing. (Motion at 49-54.)

from obtaining a § 3E1.1 adjustment when he exercises his constitutional right to trial and contests legal guilt, *see* n.2 to § 3E1.1; appellate counsel was ineffective for failing to be aware of its availability. *McKinney*, 15 F.3d 849 (9th Cir. 1994); *Ochoa-Gaytan*, 265 F.3d 837 (9th Cir. 2001).

Furthermore, by failing to raise the jury waiver colloquy issue on appeal, Cotterman must now jump an additional hurdle and prove prejudice, where proof of the error alone would have entitled him to relief had the issue had been raised on appeal. *Cf. Weaver*, 137 S. Ct. at 1912 (evaluating structural error depends on whether it is raised on direct review or in claim alleging ineffective assistance of counsel). Cotterman has made a colorable showing of ineffective assistance of appellate counsel, entitling him to an evidentiary hearing.

## G. The Cumulative Effect of Counsel's Errors Resulted in Substantial Prejudice

The government attacks and attempts to diminish specific incidents of ineffective assistance of counsel but does not address Cotterman's alternative claim of cumulative error. (*See* Motion at 55-56.) Trial counsel's individual errors were highly prejudicial on their own for the reasons discussed above. Without conceding that specific individual errors were somehow insufficiently prejudicial to warrant habeas relief, it is undeniable that that the cumulative effect of trial counsel's significant errors, deficient advice, and omissions undermined the confidence in the proceedings and amounted to prejudice. *See Boyde*, 404 F.3d at

1176 (though Court analyzes each ineffective assistance claim separately to determine whether counsel was deficient, "prejudice may result from the cumulative effect of multiple deficiencies"); *see also Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (even where no single error resulted in prejudice, cumulative effect of "several substantial errors" may nevertheless be so prejudicial as to require remedy); *Ceja v. Stewart*, 97 F.3d 1246, 1254 (9th Cir. 1996) (multiple errors, even if harmless individually entitle petitioner to habeas relief if cumulative effect prejudiced him).

The collective presence of the errors further prejudiced Cotterman and undermined the confidence that he received a fair trial. *Killian*, 282 F.3d at 1211. Appellate counsel's cumulative errors were similarly prejudicial. Thus, the Court should grant Cotterman relief by ordering the government to reinstate its 12- to 20-year plea offer or, alternatively, granting him a new trial.

## II. CONCLUSION

For the foregoing reasons, together with the reasons presented in his § 2255 Motion, affidavit, and exhibits, Cotterman has presented colorable claims of ineffective assistance of counsel at both the trial and appellate levels and therefore requests that this Court grant a hearing pursuant to 28 U.S.C. § 2255(b) and, ultimately, grant him the requested relief.

RESPECTFULLY SUBMITTED this 26th day of April, 2021.

Law Office of
HERNANDEZ & HAMILTON, PC


By s/*CLAY HERNANDEZ*
CLAY HERNANDEZ
Attorney for Defendant/Petitioner

# **CERTIFICATE OF SERVICE**

I, Clay Hernandez, do hereby certify that on this 26th day of April, 2021, I electronically transmitted the foregoing documents to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Electronic Filing was sent to the following recipients:

The Honorable Raner C. Collins
United States District Court

Carin Duryee, Assistant
United States Attorney's Office

Shelley K.G. Clemens, Assistant
United States Attorney's Office

Clay Hernandez
Attorney for Defendant/Petitioner

By s/*Clay Hernandez*
    CLAY HERNANDEZ